Anne L. Weismann
D.C. Bar No. 298190
Melanie Sloan
D.C. Bar No. 454584
Citizens for Responsibility
and Ethics in Washington
11 Dupont Circle, N.W.
2ⁿᵈ Floor
Washington, D.C. 20036
202-588-5565

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————
CITIZENS FOR RESPONSIBILITY AND        :
ETHICS IN WASHINGTON                   :
11 Dupont Circle, N.W.                 :
Washington, D.C. 20036                 :
                                       :
            Plaintiff,                 :
                                       :
      v.                               :   Civil Action No.
                                       :
U.S. DEPARTMENT OF INTERIOR            :
1849 C Street, N.W.                    :
Washington, D.C. 20240                 :
                                       :
            Defendant.                 :
———————————————————:

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, as

amended, as well as agency FOIA regulations, challenging the failure of the U.S. Department of

Interior ("DOI") and DOI's Bureau of Indian Affairs ("BIA") to fulfill the requests of Plaintiff

for documents relating to contacts between DOI and specified individuals and entities that have

been linked to the lobbying activities of Jack Abramoff at DOI on behalf of specific Indian tribes, as well as DOI records related to six Indian tribes on this subject.

2.  This case seeks declaratory relief that Defendant is in violation of the FOIA for failing to fulfill Plaintiff's requests for records, and injunctive relief that Defendant immediately and fully comply with Plaintiff's requests under the FOIA.

## JURISDICTION AND VENUE

3.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331.  Venue lies in this district under 5 U.S.C. §552(a)(4)(B).

4.  Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code.  CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials.  CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process.  CREW uses a combination of research, litigation, and advocacy to advance its mission.

5.  CREW has invested considerable organizational resources in pushing the U.S. government to take ethics issues seriously.  CREW monitors closely the laws and rules applicable to government agencies.

6.  CREW is harmed by DOI's failure to comply with the FOIA, because that failure

harms CREW's ability to provide full, accurate, and current information to the public.  5 U.S.C. §552(a)(6)(C).

7.  Defendant DOI is an agency within the meaning of 5 U.S.C. §552(f).  DOI is the federal agency with possession and control of the requested records and is responsible for fulfilling Plaintiff's FOIA requests.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

8.  The FOIA, 5 U.S.C. §552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

9.  An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination whether or not to fulfill the request, and of the requester's right to appeal the agency's determination to the agency head.  5 U.S.C. §552(a)(6)(A)(i).

10.  An agency must respond to a FOIA appeal within 20 working days, notifying the appealing party of the agency's determination to either release the withheld records or uphold the denial.  5 U.S.C. §552(a)(6)(A)(ii).

11.  In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide "the date on which a determination is expected to be dispatched."  5 U.S.C. §552(a)(6)(B).

12.  This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. §552(a)(4)(B).

13.   The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records.  Specifically, when requiring the release of improperly withheld records, if the Court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered.  5 U.S.C. §552(a)(4)(F).

### FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

14.   In the fall of 2004, *The Washington Post* disclosed that high-powered GOP lobbyist Jack Abramoff, together with public relations executive and former staffer to Congressman Tom DeLay (R-TX) Michael Scanlon, had received millions of dollars from Indian tribes that operate gambling casinos.  Susan Schmidt, <u>Ex-Lobbyist is Assailed at Hearing; Senators Say Pair Influenced Indian Tribes to Bilk Them</u>, *The Washington Post*, September 30, 2004 (attached as Exhibit A).  The payments to Messrs. Abramoff and Scanlon by the tribes were made in exchange for Mr. Abramoff's promise to use his close connections with Republican congressional leaders and power brokers in the conservative movement, to secure legislative results favorable to the tribes' gaming interests.  Thomas B. Edsall, <u>Abramoff Allies Keeping Distance; Lobbyist Under Scrutiny for Dealings With Indian Tribes</u>, *The Washington Post*, November 8, 2004 (attached as Exhibit B).

15.   Together Messrs. Abramoff and Scanlon were able to scam the Indian tribes out of huge sums of money.  During a Senate Indian Affairs Committee hearing on the subject, Senator John McCain (R-AZ) testified that Mr. Abramoff "systematically sought out impressionable tribal leaders and representatives, seduced them with promises of power and prestige, and helped them attain positions of power within their tribes . . . Once in power, their allies on the tribal council

steered multimillion-dollar contracts to Mr. Abramoff's lobbying firm and Mr. Scanlon's PR

company." Schmidt, *The Washington Post*, September 30, 2004 (Exhibit A).

16.  In one of the most egregious actions to come to light, Mr. Abramoff paid Christian

activist Ralph Reed $4.2 million to mobilize Christian groups to work for the closure of  the

Tigua Tribe's casino, and then convinced the Tigua Tribe to hire him and Mr. Scanlon, at a cost

of $4.2 million, to persuade Congress to pass legislation re-opening the casino.  Edsall, *The*

*Washington Post*, November 8, 2004 (Exhibit B); Kamman and House, GOP Group Caught up in

Missing Tribal Contributions, *The Arizona Republic*, February 27, 2005 (attached as Exhibit C).

Neither Mr. Scanlon nor Mr. Abramoff ever disclosed to the Tigua Tribe their role in the

campaign to close the Tigua casino or the lucrative relationship between the two men.  *Oversight*

*Hearing on Lobbying Practices Involving Indian Tribes Before the Committee on Senate Indian*

*Affairs*, November 17, 2004 (statement of Senator John McCain), Congressional Testimony by

Federal Document Clearing House (attached as Exhibit D).

17.  Once hired by the Tigua, Mr. Abramoff enlisted the help of Congressman Bob Ney

(R-OH) to assist the tribe in getting its casino re-opened.  Congressman Ney's former Chief-of-

Staff, Neil Volz, who also worked for Mr. Abramoff, contacted Congressman Ney's office about

the Tigua casino, even though Mr. Volz was subject to the one-year lobbying ban.  Peter H.

Stone, NRCC Lawyer Advising Ney, *National Journal*, December 11, 2004 (attached as Exhibit

E).  At Mr. Abramoff's direction, the Tigua contributed $32,000 to Congressman Ney in 2002

($30,000 to his PAC and $2,000 to his campaign), just days after Congressman Ney sponsored

legislation sought by the tribe.  Susan Schmidt and Jeffrey Birnbaum, Tribal Money Linked to

GOP Fundraising: Skybox Events were not Always Reported to FEC, *The Washington Post*,

December 26, 2004 (attached as Exhibit F).

18.  Documents released to Plaintiff by DOI in partial response to one of the FOIA requests at issue reveal that Ralph Reed used his connections to the White House to further the interests of Mr. Abramoff's clients.  Italia Federici, head of the Council of Republicans for Environmental Advocacy ("CREA") – a group co-founded by Secretary of Interior Gale Norton and Americans for Tax Reform President Grover Norquist –  reported that Mr. Reed's involvement with the effort to stop the Jena Band of Choctaws from opening a second reservation casino included "bending the ear of Karl Rove and possibly even the President about land-in-trust and gaming issues."  Memorandum from Italia Federici to Eric Ruff, February 21, 2001 (attached as Exhibit G).

19.  Six tribes paid Messrs. Abramoff and Scanlon a total of $82 million between 2001 and 2004.   Kamman and House, *The Arizona Republic*, February 6, 2005 (Exhibit C).  The Agua Caliente Tribe of Palm Springs, California, alone paid the two men $10 million over a two-year period.  Doug Abrams, Indian Lobbying Probe Resumes Today, *The Desert Sun*, November 17, 2004 (attached as Exhibit H).

20.  Documents released by the Senate Indian Affairs Committee, which has been investigating the Indian gaming scandal, show that Mr. Abramoff and Mr. Scanlon funneled millions of dollars through their foundations and side businesses in an effort to obscure the amount and sources of the money the pair was collecting.  Kate Ackley and Andy Metzger, More Woes for Greenberg Traurig in Fees Scandal, *The Legal Intelligencer*, October 21, 2004 (attached as Exhibit I).  For example, after Mr. Abramoff became their lobbyist, three Indian tribes – the Saginaw Chippewa Tribe of Michigan, the Mississippi Band of Choctaw Indians, and the

6

Coushatta Tribe of Louisiana – contributed over $3 million to a foundation of which Mr.

Abramoff and his wife are the sole directors, the Capital Athletic Foundation, and to a nonprofit

group for which Mr. Abramoff is a board member, the National Center for Public Policy

Research. R. Jeffrey Smith, Foundation's Funds Diverted From Mission; Records Detail

Spending GOP Lobbyist Abramoff, *The Washington Post*, September 28, 2004 (attached as

Exhibit J). The Agua Caliente contributed $201,000 to political candidates in the 2004 cycle,

$457,000 in the 2002 cycle, $36,000 to political advocacy groups in 2000 and 2004, and paid

$300,000 to Mr. Abramoff for sky boxes he maintained at Washington area arenas. Abrams, *The*

*Desert Sun*, November 17, 2004 (Exhibit H); Schmidt and Birnbaum, *The Washington Post*,

December 26, 2004 (Exhibit F).

     21. In addition to his collaboration with Mr. Scanlon, a former staffer for Congressman

Tom DeLay, Mr. Abramoff had a close personal relationship with Congressman DeLay himself.

Congressman DeLay once referred to Mr. Abramoff as "one of his closest and dearest friends,"

and Mr. Abramoff was a member of Congressman DeLay's "Congressional Council," which

DeLay described as a "special group of supporters." Smith, *The Washington Post*, September 28,

2004 (Exhibit J). According to one former GOP House leadership aide, Mr. Abramoff "raised

money for DeLay's pet projects" and "took care of his top staff. In turn, they [DeLay's staff]

granted him tremendous access and allowed him to freely trade on DeLay's name." Peter H.

Stone, Abramoff's and DeLay's Foreign Adventures, *National Journal*, February 26, 2005

(attached as Exhibit K).

     22. Toward that end, Mr. Abramoff's tribal clients contributed money to fund personal

trips Congressman DeLay took with his family and top aides. For example, Abramoff client the

Mississippi Choctaw Indians sent $25,000 to the National Center for Public Policy Research which, in turn, paid for a week-long trip Congressman DeLay and his wife, two of his aides and two lobbyists took to Britain.  James V. Grimaldi and R. Jeffrey Smith, <u>Gambling Interests Funded DeLay Trip</u>, *The Washington Post*, March 12, 2005 (attached as Exhibit L).  Mr. Abramoff accompanied them on the trip, which included a golf outing at St. Andrews in Scotland. *Id*.  Just two months after this trip, Congressman DeLay voted against the Internet Gambling Prohibition Act, which would have criminalized internet betting and which was opposed by the Choctaws.  *Id*.  According to GOP operatives, "[f]oreign trips were part of the work-hard, play-hard DeLay philosophy.  To that end, Jack Abramoff was director of travel for DeLay Inc." Stone, *The National Journal*, February 26, 2005 (Exhibit K).

23.  In June 2003, Mr. Abramoff persuaded Congressman DeLay to organize a letter, co-signed by Speaker of the House J. Dennis Hastert (R-IL), Majority Whip Roy Blunt (R-MO), and Chief Deputy Whip Eric Cantor (R-VA), and sent to Secretary Norton, that endorsed a view of gambling law benefitting Mr. Abramoff's client, the Louisiana Coushatta Tribe, in its effort to block gambling competition by another tribe.  Smith, *The Washington Post*, September 28, 2004 (Exhibit J).  The letter specifically opposed a plan by the Jena Choctaw tribe to open a casino not far from that of the Coushatta Tribe.  <u>Id</u>.  *See* <u>Letter from J. Dennis Hastert, Speaker, Tom DeLay, Majority Leader, Roy Blunt, Majority Whip,  and Eric Cantor, Chief Deputy Whip, to The Honorable Gale A. Norton, Secretary, DOI</u> (June 10, 2003) (attached as Exhibit M).

24.  Mr. Abramoff also enlisted the help of Grover Norquist, President of Americans for Tax Reform, to block efforts to tax the Mississippi Choctaw Tribe on casino earnings.  Edsall, *The Washington Post*, November 8, 2004 (Exhibit B).  A coalition of anti-tax organizations

formed by Mr. Norquist lobbied lawmakers and wrote letters opposing the tax on Indian casino gambling.  In turn, the Choctaw Tribe contributed hundreds of thousands of dollars to Americans for Tax Reform.  *Id.*

25.  On August 28, 2005, *The Washington Post* published an article detailing the involvement of J. Steven Griles, former Deputy Secretary of DOI, in an effort by Mr. Abramoff to block the Gun Lake Indian tribe from building a casino that would have competed with one of Mr. Abramoff's tribal clients.  Susan Schmidt, Abramoff Cited Aid of Interior Official, *The Washington Post*, August 28, 2005 (attached as Exhibit N).  The article cited to emails that documented Mr. Griles' involvement with the Gun Lake casino, as well as emails "indicating the lobbyist enlisted Griles to stop a Louisiana tribe's proposed casino, which threatened another Abramoff client."  Id.  According to the article, "[c]opies of Abramoff's e-mails referencing Griles and Federici were obtained from a variety of sources, including the Interior Department." Id.

26.  In advance of Mr. Griles' testimony before the Senate Indian Affairs Committee, the committee circulated a memo which stated: "Documents in the Committee's possession also raise a question of whether Mr. Abramoff had improper contact with senior Interior Department officials regarding tribal issues that were before the Department."  John Bresnahan, Abramoff's Interior Ties at Issue, *Roll Call*, November 1, 2005 (attached as Exhibit O).  It was also reported that Mr. Griles, on behalf of Mr. Abramoff, brought a binder of materials prepared by Mr. Abramoff into a high-level DOI meeting regarding the efforts of the Jena Choctaw to open a casino that would have threatened the Coushatta's own gaming interests.  Id.  DOI's Inspector General is reviewing Mr. Abramoff's contacts with DOI officials, including Mr. Griles.  Id.

27. Despite this evidence, during his testimony before the Senate Indian Affairs Committee Mr. Griles denied intervening on behalf of Mr. Abramoff in DOI decisions affecting Mr. Abramoff's tribal clients.  Susan Schmidt and James V. Grimaldi, <u>Former Officials Face Off Over Abramoff Contact</u>, *The Washington Post*, November 3, 2005 (attached as Exhibit P).  This testimony was contradicted, however, by Michael G. Rossetti, former legal counselor to Secretary Norton, who accused Mr. Griles of improperly meddling in decisions affecting Mr. Abramoff's tribal clients.  <u>Id</u>.

28.  A wealth of email collected by the Senate Indian Affairs Committee also documents Mr. Abramoff's efforts to enlist Mr. Griles' help, through the assistance of Italia Federici.  <u>Id</u>. *See also* Josephine Hearn, <u>Abramoff Fire Hits DOI</u>, *The Hill*, November 3, 2005 (attached as Exhibit Q) (referencing emails presented by aides during the Indian Affairs Committee hearing that "appeared to call some of Griles' assertions into question.").

29.  On November 17, 2005, Ms. Federici testified before the Senate Indian Affairs Committee.  She was questioned intently about emails Mr. Abramoff sent her to enlist her help in contacting Mr. Griles as part of Mr. Abramoff's efforts to defeat applications for casinos from Indian tribes that threatened the gaming interests of his tribal clients.  Mary Curtius, <u>Abramoff Ally Clashes With Senators</u>, *The Los Angeles Times*, November 18, 2005 (attached as Exhibit R). During the hearing, Senator McCain stated: "Any objective observer would see that there is a clear connection between contributions to your organization and work that you would have been doing on behalf of Mr. Abramoff with the Department of the Interior."  <u>Id</u>.  Senators on the Committee demanded an explanation from Ms. Federici about the "stacks of e-mails that suggest she exploited a personal relationship with former deputy Interior secretary J. Steven Griles to

secretly help Abramoff lobby the department and obtain inside information affecting Abramoff's

tribal clients."  Susan Schmidt, <u>Head of Republican Environmental Group Spars With Senators</u>,

*The Washington Post*, November 18, 2005 (attached as Exhibit S).

**Plaintiff's FOIA Requests**

30.  On  March 18, 2005, CREW sent a FOIA request to DOI that sought records,

regardless of format and including electronic records and information, relating to the following:

> [A]ny contact, dating from January 1, 2001, to the present, that any office
> of the Department of the Interior may have had, including any and all field
> offices, with Jack Abramoff, any employee of the firm Greenberg Traurig,
> any employee of the firm Preston Gates, Michael Scanlon, any officer or
> employee of Capitol Campaign Strategies, James Dobson, Ralph Reed,
> Scott Reed, Italia Federici, any officer or employee of the Council of
> Republicans for Environmental Advocacy, any officer or employee of
> the National Center of Public Policy Research, Grover Norquist, any
> officer or employee of Americans for Tax Reform, General Services
> Administration Chief of Staff David Safavian, Congressman Robert Ney,
> any employee in the office of Congressman Ney, Congressman Tom DeLay,
> any employee in the office of Congressman Tom DeLay or in the office of
> the Majority Leader, Speaker of the House Dennis Hastert, any employee
> in the office of Congressman Hastert or in the office of the Speaker of the
> House, Senator Conrad Burns, any employee in the office of Senator
> Burns, concerning any matter within the jurisdiction of the Bureau of Indian
> Affairs.

<u>Letter from Melanie Sloan to Sue Ellen Sloca, Office of the Secretary, DOI</u>, March 18, 2005

(attached as Exhibit T).  CREW's March 18, 2005 FOIA request also sought:

> [A]ny records, dating from January 1, 2001, to the present, from any office
> of the Department of the Interior, including but not limited to the Office
> of the Secretary, the Office of the Deputy Secretary and the Bureau of
> Indian Affairs regarding the Agua Caliente Tribe of Palm Spring,
> California, the Tigua Tribe of El Paso, Texas, the Saginaw Chippewa
> Tribe of Michigan, the Mississippi Band of Choctaw Indians, the
> Coushatta Tribe of Louisiana, and the Jena Band of Choctaw
> Indians.

<u>Id</u>.

31. By letter dated March 21, 2005, DOI made a partial initial response to CREW's March 18, 2005 FOIA request, producing 218 documents. <u>Letter from Sue Ellen Sloca, Office of the Secretary, DOI, to Melanie Sloan</u>, March 21, 2005 (attached as Exhibit U). These documents included calendars for some of the Interior officials designated in CREW's March 18, 2005 FOIA request, including Secretary Norton and former Deputy Secretary Griles. <u>Id</u>. DOI withheld information from some of the documents pursuant to Exemption 2 of the FOIA, 5 U.S.C. §552(b)(2), Exemption 5 of the FOIA, 5 U.S.C. §552(b)(5), Exemption 6 of the FOIA, 5 U.S.C. §552(b)(6), Exemption 7(E) of the FOIA, 5 U.S.C, §552 (b)(7)(E), and Exemptions 7(C) and 7(F) of the FOIA, 5 U.S.C. §§552(b)(7)(C) and (7)(F). <u>Id</u>.

32. DOI made a second partial response to CREW's March 18, 2005 FOIA request by letter dated April 12, 2005. <u>Letter from Sue Ellen Sloca, Office of the Secretary, DOI, to Melanie Sloan</u>, April 12, 2005 (attached as Exhibit V). This second partial response consisted of indices generated as a result of the searches of the Secretary's Automated Correspondence Indexing System. DOI withheld information from some of the documents pursuant to FOIA Exemption 6. <u>Id</u>.

33. DOI made a third and final response to CREW's March 18, 2005 FOIA request by letter dated April 27, 2005. <u>Letter from Sue Ellen Sloca, Office of the Secretary, DOI, to Melanie Sloan</u>, April 27, 2005 (attached as Exhibit W). This response consisted of additional calendar information for Secretary Norton and former Deputy Secretary Griles. Portions of some documents were deleted pursuant to FOIA Exemptions 5 and 6. <u>Id</u>. In addition, DOI's final response also stated the following: "This concludes the response within the Office of the Secretary." <u>Id</u>.

34. On April 5, 2005, CREW sent a follow-up FOIA request to DOI by email requesting: "all electronic records relating to any contact, dating from January 1, 2001, to the present, that any of the following individuals may have had with the individuals and entities outlined in [CREW's] March 18, 2005 FOIA request relating to any matter within the jurisdiction of the Bureau of Indian Affairs, and all contacts the following individuals had with the six Indian Tribes listed in [CREW's] earlier request:

Secretary Gale Norton
William D. Betterberg, Director, Office of Policy Analysis
James E. Carson, Associate Deputy Secretary
Tom Fulton, Deputy Assistant Secretary, Land and Minerals Management
J. Steven Griles, former Deputy Secretary
Kit Kimball, Director, Office of External and Intergovernmental Affairs
Ann Klee, Counselor to the Secretary
Michael Rossetti, Counselor to the Secretary
Lynn Scarlett, Assistant Secretary for Policy, Management and Budget
Brian Waidmann, Chief of Staff
Sue Ellen Woolridge, Deputy Chief of Staff
William G. Myers, III, Solicitor
Lawrence Jensen, Counsel, Office of the Solicitor
Mathew E. McKeown, Special Assistant, Office of the Solicitor
David W. Anderson, Assistant Secretary, Indian Affairs
Ross Swimmer, Special Trustee for Indian Affairs
George T. Skibine, Director, Office of Indian Gaming Management
Aurene Martin, Principal Deputy Assistant Secretary, Indian Affairs"

Email from Anne L. Weismann to Linda Thomas, Office of the Secretary, DOI, April 5, 2005 (attached as Exhibit X).

In addition, CREW sought all electronic records relating to the above-delineated contacts for the individuals who occupied the following positions in DOI's Bureau of Indian Affairs from January 1, 2001, to the present:

Director, IIT Office of American Indian Trust
Director, IAE Office of Audit and Evaluation
Deputy Director, IAE Office of Audit and Evaluation

13

Director, ISC Office of Self Governance
Compact Negotiation Manager, ISC Office of Self Governance
Compact Negotiation Specialist, ISC Office of Self Governance
Director, OIE Office of Indian Education Programs
Deputy Director, OIE Office of Indian Education Programs
Chief, 13 Branch of Management Information Services
Chief, 30 Division of Planning/Oversight and Evaluation
Chief, 30 Branch of Planning
Deputy Commissioner of Indian Affairs
Director, 120 Congressional and Legislative Affairs
Legislative Coordinator, 120 Congressional and Legislative Affairs
Director, 130 Indian Gaming Management Staff
Secretary, 130 Indian Gaming Management Staff
Management Analyst, 130 Indian Gaming Management Staff
Director, Office of Trust Responsibilities
Director, Office of Information Resources Management
Director, Office of Tribal Services
Secretary, Division of Tribal Government Services
Chief, Branch of Tribal Enrollment
Chief, Branch of Tribal Relations
Director, Office of Management and Administration
Director, Office of Economic Development

Id. Finally, CREW's April 5, 2005 FOIA request sought "all documents, regardless of format, medium or physical characteristics, that relate in any way to a meeting Secretary Norton had on November 8, 2002, with Clint Bolick, Grover Norquist, Chip Mellor and Sue Ellen Wooldridge." Id.

35. DOI responded to CREW's April 5, 2005 FOIA request by letter dated July 29, 2005. Letter from Willie S. Chism, Office of the Secretary, DOI, to Anne L. Weismann, July 29, 2005 (attached as Exhibit Y). According to DOI, it had "reviewed [its] files and w[as] unable to locate any records responsive to [CREW's] request." Id.

36. At the time of this response CREW had no reason to doubt DOI's assertions that it had produced to CREW all non-exempt documents responsive to CREW's FOIA requests. It was not until *The Washington Post* published an article, on August 28, 2005, detailing the

involvement of former Deputy Secretary Griles in Mr. Abramoff's efforts to influence DOI's decisions on Indian gaming – and based on a variety of sources, including documents from DOI – that CREW realized DOI had not fully satisfied its obligations under the FOIA. *See* ¶25, supra. None of the documents DOI provided CREW included any of the email referenced in *The Washington Post* article.

37. CREW accordingly contacted Linda Thomas, the FOIA Officer who had handled CREW's FOIA requests. As a result of that conversation and at the recommendation of Ms. Thomas, CREW filed a third FOIA request with DOI on September 26, 2005, requesting documents that were provided to other FOIA requesters (but not CREW) in response to four FOIA requests: OS-2005-00-228, OS-2005-00-249, OS-2005-00-272, and OS-2005-00-413. Email from Anne Weismann to Linda Thomas, DOI, September 26, 2005 (attached as Exhibit Z).

38. DOI responded to this third FOIA request on September 27, 2005, and produced a total of 146 documents. Letter from Sue Ellen Sloca, Office of the Secretary, DOI, to Anne L. Weismann, September 27, 2005 (attached as Exhibit AA). DOI withheld some portions of the documents pursuant to FOIA Exemptions 2, 4, 5, and 6. Id. Of note, none of these documents was an e-mail.

39. By letter dated October 20, 2005, CREW filed an appeal of DOI's responses to CREW's FOIA requests of March 18, 2005, April 5, 2005, and September 26, 2005, on the ground that Interior had failed to conduct an adequate search. Letter from Anne L. Weismann to FOIA Appeals Officer, DOI, October 20, 2005 (attached as Exhibit BB). As CREW explained in its appeal, the information made public in *The Washington Post* article of August 28, 2005 documents that there are existing email exchanges between Interior Department officials,

including former Deputy Secretary Griles, concerning the very subjects of CREW's three FOIA requests. This conclusion is reinforced by the multiple references of the Senate Indian Affairs Committee to email demonstrating that Mr. Griles, at the behest of Ms. Federici, attempted to intervene in DOI decisions that could affect Mr. Abramoff's tribal clients. *See, e.g.*, ¶¶ 26-28, supra. Yet, despite three separate requests and, presumably, three separate searches, DOI has not produced, or otherwise accounted for, these email exchanges. Under these circumstances, DOI's searches were clearly inadequate. Letter from Anne L. Weismann to FOIA Appeals Office, DOI, October 20, 2005. This is particularly the case given that DOI had the benefit of *The Washington Post* article when it searched for documents responsive to CREW's FOIA request of September 26, 2005, yet still failed to locate the missing emails. Id.

40. CREW also explained in its appeal that it had no reason to doubt the adequacy of DOI's prior searches until *The Washington Post* August 28, 2005 article. At that time CREW acted diligently by filing a third FOIA request aimed at capturing those emails. Id. Under these circumstances, CREW clearly acted in as expeditious manner as possible. Id. As relief, CREW requested that DOI be directed to conduct another search to locate the missing emails. Id.

41. By letter dated November 28, 2005, DOI advised CREW that DOI had denied CREW's appeal. Letter from Darrell R. Strayhorn, FOIA Appeals Office, DOI to Anne L. Weismann, November 28, 2005 (attached as Exhibit CC). DOI summarily denied CREW's appeal of DOI's responses to CREW's FOIA requests of March 18, 2005 and April 5, 2005, as untimely. Id. DOI also denied CREW's appeal of DOI's response to CREW's FOIA request of September 26, 2005, based on DOI's conclusion that "it conducted an adequate search of its files and the OS [Office of the Secretary] does not have any further documents that are responsive to

your September 26, 2005, FOIA request to disclose to you." Id.

42.  By letter dated April 21, 2005, CREW sent a separate FOIA request to DOI's Bureau of Indian Affairs.  This request was made at the suggestion of Sue Ellen Sloca, FOIA Officer for the Office of the Secretary, and was similar to CREW's April 5, 2005 FOIA request of the Office of the Secretary.  Letter from Anne L. Weismann to Willie Chism, April 21, 2005 (attached as Exhibit DD).

43.  To date, CREW has received no response to this request.

44.  The statutory time for BIA to respond to Plaintiff's April 21, 2005 FOIA request has run out and Plaintiff has constructively exhausted the applicable administrative remedies.  5 U.S.C. §552(a)(6)(C).

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE (Failure to Conduct an Adequate Search)

45.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

46.  Plaintiff properly asked for records within the custody and control of DOI.

47.  DOI has failed to conduct an adequate search, and has failed to use search methods reasonably expected to produce all documents responsive to Plaintiff's three FOIA requests.

17

48.  As a result of Defendant's inadequate searches, Plaintiff has not received access to all records it requested under the FOIA.

49.  Therefore, by failing to release the records as Plaintiff specifically requested, Defendant violated FOIA's mandate to release agency records to the public.  5 U.S.C. §§552(a)(3)(A), 552(a)(4)(B).

### CLAIM TWO (BIA'S Failure to Produce Records)

50.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

51.  Plaintiff properly asked for records within the BIA's control.

52.  Plaintiff is entitled by law to access to the records requested under the FOIA, unless Defendant makes an explicit and justified statutory exemption claim.

53.  Therefore, by failing to release the records as Plaintiff specifically requested of BIA, Defendant violated FOIA's mandate to release agency records to the public.  5 U.S.C. §§552(a)(3)(A), 552(a)(4)(B).

### CLAIM THREE (BIA's Failure to Respond)

54.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

55.  On April 21, 2005, Plaintiff filed a FOIA request with the BIA.

56.  To date, Plaintiff has not received a response from the BIA and the BIA has exceeded the 20-working-day statutory time limit for such a response.  5 U.S.C. §552(a)(6)(A)(i).

57.  Therefore, the BIA has violated the FOIA's mandate to respond to Plaintiff's FOIA request within the statutory time period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that DOI has violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's FOIA requests of March 18, 2005, April 5, 2005, April 21, 2005, and September 27, 2005;

(2) Order DOI to respond to Plaintiff's FOIA requests immediately;

(3) Order DOI to conduct an adequate search immediately for all records responsive to Plaintiff's FOIA requests;

(4) Order DOI to release immediately all records responsive to Plaintiff's FOIA requests;

(5) Declare that DOI has violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's FOIA requests of March 18, 2005, April 5, 2005, April 21, 2005, and September 27, 2005;

(6) Declare that the circumstances surrounding DOI's processing of Plaintiff's three FOIA requests raise questions whether agency personnel acted arbitrarily or capriciously;

(7) Award Plaintiff reasonably attorney fees and litigation costs in this action, pursuant to 5 U.S.C. §552(a)(4)(E); and

(8) Grant such other and further relief as the Court may deem just and proper.


Respectfully submitted,


_____
Melanie Sloan
(D.C. Bar No. 434584)
Anne L. Weismann
(D.C. Bar No. 298190)
Citizens for Responsibility and Ethics
  in Washington
11 Dupont Circle, N.W.
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated: December 5, 2005