# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON<br>11 Dupont Circle, N.W.<br>Washington, D.C. 20036<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR<br>1849 C Street, N.W.<br>Washington, D.C. 20240<br><br>Defendant. | Civil Action No. 05-02339 (RBW) |

**DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND PARTIAL SUMMARY JUDGMENT**

Pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, Defendant the Department of the Interior hereby respectfully moves this Court for partial judgment on the pleadings and partial summary judgment. The reasons for this motion are set forth in Defendant's Memorandum of Points and Authorities in Support of the Motion for Partial Judgment on the Pleadings and Partial Summary Judgment filed herewith.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney
for the District of Columbia

Dated: April 21, 2006

ELIZABETH J. SHAPIRO (D.C. Bar 418925)
HANNAH Y.S. CHANOINE
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7340
Washington, D.C. 20001
(202) 305-2318
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND** | ( | |
| **ETHICS IN WASHINGTON** | ( | |
| 11 Dupont Circle, N.W. | ( | |
| **Washington, D.C. 20036** | ( | |
| | ( | |
| **Plaintiff,** | ( | |
| | ( | |
| v. | ( | **Civil Action No. 05-02339 (RBW)** |
| | ( | |
| **UNITED STATES DEPARTMENT OF** | ( | |
| **THE INTERIOR** | ( | |
| 1849 C Street, N.W. | ( | |
| **Washington, D.C. 20240** | ( | |
| | ( | |
| **Defendant.** | ( | |
| | ( | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW") brought this action seeking to compel the release of documents responsive to four Freedom of Information Act ("FOIA") requests submitted to two components of defendant Department of the Interior ("DOI"): the Office of the Secretary ("OS"), and the Bureau of Indian Affairs ("BIA"). Compl. (dkt. no. 1). For the majority of the claims arising from these FOIA requests, defendant is entitled to judgment on the pleadings, because plaintiff failed to exhaust administrative remedies in a timely manner. Defendant is entitled to summary judgment on plaintiff's remaining claims, because there is no genuine issue of material fact that (1) plaintiff received all the documents it

Page 1 of 28

requested in response to its final FOIA request to OS, and (ii) because plaintiff never responded

to BIA's letter requesting additional clarification, one of the challenged FOIA requests to BIA

remains open.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff submitted four FOIA requests to DOI, three to OS and one directly to BIA.[1] For

the Court's convenience, a table summarizing Plaintiff's FOIA requests and the responses from

the OS and the BIA is attached as an Appendix.

### First Request
### (March 18, 2005)

By letter dated March 18, 2005, Ms. Melanie Sloan, on behalf of plaintiff CREW,

submitted a FOIA request to the OS, for "records, regardless of format, medium, or physical

characteristics" that "relat[ed] to any contact, dating from January 1, 2001, to the present, that

any office of the Department of the Interior may have had, including any and all field offices"

with a series of named individuals and entities, including Secretary Norton and former Deputy

Secretary Griles, and Jack Abramoff or other specifically named persons associated with Mr.

Abramoff's lobbying activities. Pl. Ex. T. The March 18, 2005 request focused primarily on

contacts between offices of DOI and Jack Abramoff, employees of different firms, and members

of Congress and their staff. Id.

In addition, the March 18, 2005 request sought from the different offices of DOI records

---

[1] The BIA is a component bureau of the Department of the Interior that is separate and
distinct from the OS. Declaration of Linda S. Thomas (Attached as Def. Ex. 001) ¶ 7. The BIA
maintains its own records and the OS does not participate in the management or disposition of
the BIA's records. Id. The Office of Information Policy (OIP), which resides within the Office
of the Assistant Secretary - Indian Affairs (AS-IA) manages responses that are directed to the
BIA. Declaration of Willie S. Chism (Attached as Def. Ex. 002) ¶ 1.

from the same time period regarding six specified Indian Tribes. Pl. Ex. T. The request sought records reflecting "any contact between any and all offices" of DOI, and "any and all individuals within those offices, including but not limited to Secretary Gale Norton and former Deputy Secretary J. Steven Griles" and the named individuals. Finally, the March 18, 2005 request further sought "any documents, regardless of format, medium or physical characteristics" provided to any of DOI's offices by the series of named individuals, "concerning any matter within the jurisdiction of the Bureau of Indian Affairs," including any matter also within the OS's jurisdiction. *Id.*

Ms. Linda Thomas, a program specialist in the OS responsible for processing FOIA requests, designated the March 18, 2005 request with the internal number OS-2005-0296. Declaration of Linda S. Thomas (Attached as Def. Ex. 001) ¶ 2. At the time she received the March 18, 2005 request for processing, the OS had already processed at least half a dozen FOIA requests seeking related information.[2] *Id.* ¶ 4.

On March 18, 2005, Ms. Thomas contacted Ms. Sloan by telephone to discuss the request. Thomas Dec. ¶ 5. During that telephone call, Ms. Thomas explained that the OS had already processed a number of similar FOIA requests. *Id.* Ms. Thomas stated that she would search through the documents that the Department provided in response to those other requests and immediately provide Ms. Sloan with any documents that were responsive to her request. *Id.* Ms. Thomas also stated that she would coordinate a search of the Secretary's Automated Correspondence Indexing System, and search for and provide to Ms. Sloan any non-exempt

---

[2] Requesters seeking related information included Judicial Watch, Public Citizen's Congress Watch, the Democratic Senatorial Campaign Committee, and the *Washington Post.* Thomas Dec., ¶ 4.

calendar information for Secretary Norton and former Deputy Secretary Griles through

November 2004. *Id.* During that telephone call, Ms. Sloan indicated that the search efforts Ms.

Thomas had described would be sufficient and it would not be necessary for the Department to

pursue the electronic records portion of the March 18, 2005 request at that time. *Id.*

On March 21, 2005, Ms. Thomas forwarded a copy of the March 18, 2005 request to Ms.

Nancy Appler, the FOIA contact for the Department's Office of Congressional and Legislative

Affairs. Thomas Dec. ¶ 6. Ms. Thomas requested that Ms. Appler conduct a search of the

Secretary's Automated Correspondence Indexing System and search the calendars for Secretary

Norton and former Deputy Secretary Griles to locate any responsive information. *Id.* On March

21, 2005, Ms. Thomas also forwarded a copy of Ms. Sloan's request to Ms. Willie Chism, FOIA

Officer for the BIA, and requested that the BIA directly respond to CREW. *Id.* ¶ 7.

On March 21, 2005, OS provided the first partial response to CREW's March 18, 2005

request. Pl. Ex. U. The first partial response provided 218 documents containing 5,038 pages,

and outlined categories of information withheld pursuant to Exemptions 2, 5, 6, 7(E), 7(C), and

7(F) of the FOIA, 5 U.S.C. §§552(b)(2), (5), (6), (7)(E), (7)(C), (7)(F). *Id.* Referencing the

telephone conversation of March 18, 2005, the letter summarized the contents of the partial

response and described the status of the ongoing searches, including searches of the ''Secretary's

Automated Correspondence Indexing System.'' *Id.* The March 21, 2005 letter noted that ''[w]e

have also made a referral to BIA for their direct response to you.'' *Id.*

On April 12, 2005, OS provided a second partial response to CREW's March 18, 2005

request. Pl. Ex. V. The second partial response provided indexes generated as a result of the

searches of the Secretary's Automated Correspondence Indexing System, and outlined

information withheld pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6). *Id.* The April

21, 2005 letter also referenced the telephone conversation of March 18, 2005, noting CREW's

agreement that

> aside from the referral to BIA, which will answer [CREW] directly, within the
> Office of the Secretary [CREW] would accept appointment records for Secretary
> Norton and for former Deputy Secretary Griles from the beginning of such records
> until at least well into 2004, and for all of the parties and topics mentioned, and
> the index results of a search of the Secretary's Automated Correspondence
> Indexing System.

*Id.*

On April 27, 2005, the OS provided a final, third partial response to CREW's March 18,

2005 request. Pl. Ex. W. The final partial response 18 documents containing 630 total pages,

including calendar information for Secretary Norton and former Deputy Secretary Griles until

near the end of 2004, and outlined information withheld pursuant to Exemptions 2, 5, and 6 of

the FOIA, 5 U.S.C. §§ 552(b)(2), (5), (6). *Id.* The April 27, 2005 letter also referenced the

telephone conversation of March 18, 2005, again noting CREW's agreement limiting the scope

of the original request. *Id.* The April 27, 2005 letter summarized CREW's appeal rights under

the FOIA, specifically noting that CREW had 30 calendar days from date of the letter in which to

submit an appeal letter. *Id.*

## Second Request
### (April 5, 2005)

On or before April 5, 2005, Ms. Anne Weismann at CREW contacted Ms. Thomas by

telephone and advised Ms. Thomas that CREW wanted DOI to search for electronic records as

part of its March 18, 2005 FOIA request. Thomas Dec. ¶ 11. Ms. Thomas advised Ms.

Weismann to submit a new FOIA request, because Ms. Sloan had narrowed the March 18, 2005

request to exclude electronic records, and the narrowed March 18, 2005 request was near to completion. *Id.*

By letter dated April 5, 2005, Anne Weismann on behalf of CREW submitted a second FOIA request to OS. Pl. Ex. X. The April 5, 2005 request sought "all electronic records relating to any contact, dating from January 1, 2001 to the present" that any of the listed individuals may have had with the individuals and entities outlined in the March 18, 2005 FOIA request "relating to any matter within the jurisdiction of the Bureau of Indian Affairs, and all contacts the [listed] individuals had with the six Indian Tribes listed in our request." *Id.* The request further sought "all electronic records relating to the above-delineated contacts for the individuals" who occupied various positions in BIA from January 1, 2001 to the present. *Id.* Finally, the April 5, 2005 request sought "all documents, regardless of format, medium or physical characteristics" relating in any way to a November 8, 2002 meeting between Secretary Norton and four individuals. *Id.*

The April 5, 2005 request referenced Ms. Weismann's telephone conversation with Ms. Thomas on or about that date concerning the electronic records portion of the March 18, 2005 request. Pl. Ex. X. Ms. Weismann acknowledged that Ms. Thomas had indicated that "notwithstanding the language of [CREW's] March 18, 2005 FOIA request specifying that the records [CREW] sought included electronic records, a request for such records should be considered as a new FOIA request in light of the prior discussions between OS and CREW." *Id.* The letter further stated that, while CREW disagreed as to the necessity of a new FOIA request, CREW was "nevertheless submitting this letter outlining the additional documents we seek and ask that, if necessary, you consider this letter to constitute a FOIA request and process it

Page 6 of 28

processed simultaneously." *Id.*

deemed a new FOIA request, it will be combined with our March 18, 2005 FOIA request and

accordingly." *Id.* The letter indicated CREW's belief that "even if [the April 5, 2005 request is]

*OS Response to the April 5, 2005 Request.*

At the OS, Ms. Thomas designated the April 5, 2005 request with the internal number

OS-2005-00331. Thomas Dec. ¶ 12. On April 7, 2005, Ms. Thomas contacted Ms. Appler and

requested that she search for electronic records responsive to CREW's request within the OS. *Id.*

¶ 13. Ms. Appler, in turn, contacted Mr. Estel Lewis at the National Business Center, an office

within DOI responsible for the OS's computer system with instructions to search for archived

email messages belonging to OS officials and employees listed in the CREW request that no

longer worked for DOI. *Id.* ¶ 17. Ms. Thomas also contacted Terrie Musgrove, the FOIA

Officer for the DOI Office of the Solicitor, Ms. Willie Chism, the FOIA Officer for the BIA, and

the FOIA contacts for the Office of Policy, Management and Budget, and the Office of Policy

Analysis, with requests to search for electronic documents responsive to the April 5, 2005

request. *Id.* ¶¶ 14-16, 19. During this time, Ms. Thomas personally searched for responsive

emails for former Deputy Assistant Secretary for Land and Minerals Management, Thomas

Fulton, on a CD-Rom of his archived electronic messages. *Id.* ¶ 18. In Ms. Thomas's judgment,

these offices were the offices within DOI most likely to have documents responsive to CREW's

April 5, 2005 request. *Id.* ¶ 20.

On August 24, 2005, the OS provided a final response to CREW's April 5, 2005 request.

Thomas Dec. ¶ 21 (Ex. F).[3] The final response included non-exempt electronic documents,

---

[3] Plaintiff's complaint makes no reference to the August 24, 2005 response.

comprising 11 documents consisting of 54 pages, and outlined information withheld pursuant to Exemptions 6 of the FOIA, 5 U.S.C. §§ 552(b)(6). *Id.* The August 24, 2005 letter also noted that OS had made referrals to the BIA and DOI's Solicitor's Office for their direct response to CREW. *Id.* The August 24, 2005 letter summarized CREW's appeal rights under the FOIA, specifically noting that CREW had 30 calendar days from date of the letter in which to submit an appeal letter. *Id.*

*BIA Response to the April 5, 2005 Request.*

Mr. Thomas Hartman, FOIA Coordinator for the BIA's Office of Indian Gaming Management (OIGM), processed the April 5, 2005 request for electronic documents that Ms. Thomas had referred to Ms. Chism, FOIA officer for the BIA. Declaration of Thomas H. Hartman (Attached as Def. Ex. 003) ¶¶ 1-3. The April 5, 2005 request was given the internal BIA number of 06207. *Id.* ¶ 3.

Since December 2001, and continuing to the present, the OIGM has been disconnected from the Internet and has lacked the capacity to transmit or receive any external electronic mail messages. Hartman Dec. ¶ 5. Mr. Hartman was able, therefore, to readily determine that the OIGM has no records consisting of electronic mail messages transmitted between the Director of the OIGM and the Indian tribes identified in the April 5, 2005 request. *Id.* Mr. Hartman also searched for responsive electronic mail messages that might have been exchanged via the Department's intranet between the OIGM and the regional offices of the BIA, but did not find responsive documents. *Id.*

By letter dated July 29, 2005, Ms. Chism responded to the April 5, 2005 request "regarding electronic records between the [six Indian Tribes] and Mr. George T. Skibine,

Page 8 of 28

Director, Office of Indian Gaming Management." Chism Dec. ¶ 3 (Ex. B); Pl. Ex. Y. The July

29, 2005 letter, signed by Ms. Chism, stated that records responsive to the April 5, 2005 request

were not located. *Id.* The July 29, 2005 letter responding to the April 5, 2005 request

summarized CREW's appeal rights under the FOIA, specifically noting that CREW had 30

calendar days from date of the letter in which to submit an appeal letter. *Id.*

**Third Request**
**(April 21, 2005)**

By letter dated April 21, 2005, CREW submitted a third FOIA request directly to BIA's

Office of Information and Policy, addressed to Ms. Willie Chism. Pl. Ex. DD. Styled a "follow-

up" to CREW's April 5, 2005 request to DOI, the April 21, 2005 letter noted that this request

was made at the suggestion of Sue Ellen Sloca in OS. *Id.* The April 21, 2005 request sought

records of "any contact" from January 1, 2001 to the present, that any individuals occupying

certain positions in BIA "may have had regarding [six Indian Tribes]." *Id.* Specifically, CREW

sought information pertaining to the efforts of any of those six tribes "to receive DOI approval

for gaming, including, but not limited to, any lobbying efforts by private individuals or members

of Congress." *Id.*

The April 21, 2005 request was given the internal number 06206. Hartman Dec. ¶ 7. Mr.

Hartman, responsible for processing this request on behalf of Ms. Chism, determined that the

request was too broad and general to satisfy 43 C.F.R. § 2.28(a)(1), which requires FOIA

requests to describe the requested records in enough detail to locate the records with a reasonable

amount of effort. *Id.* ¶ 9. Mr. Hartman prepared a letter for the signature of Ms. Chism asking

CREW to narrow its request. *Id.* ¶ 10.

Page 9 of 28

In a letter signed by Ms. Chism, dated July 29, 2005, BIA responded to CREW's request of April 21, 2005.[4] Chism Dec. ¶ 5 (Ex. D). The letter notified CREW that "[b]ecause of the broad and general nature of the subject" of CREW's request, BIA was unable to identify which records were being sought. Id. The July 29, 2005 letter requested further specificity concerning the type of documents requested, the geographical location, and time frame, and which of DOI's offices fell within the scope of the request. Id. The July 29, 2005 letter informed CREW that BIA would not proceed further with the request until CREW provided additional clarification. Id. To date, CREW has not responded to this request for clarification. Hartman Dec. ¶ 10. The request currently remains open. Id.

## Fourth Request
## (September 26, 2005)

In September of 2005, Ms. Weismann telephoned Ms. Thomas, the FOIA processor within OS who had handled CREW's prior FOIA requests directed to OS.[5] Thomas Dec. ¶ 22; see Pl. Ex. Z. The reason for Ms. Weismann's call was a Washington Post article, published a month earlier, about lobbyist Jack Abramoff and the federal task force investigating Mr. Abramoff's activities. Thomas Dec. ¶ 22; Susan Schmidt, Abramoff Cited Aid Of Interior Official, The Washington Post, August 28, 2005, at A01 (Pl. Ex. N). The article referred to

---

[4] There are two separate July 29, 2005 letters from BIA FOIA Officer, Ms. Willie Chism, relevant to this action. One pertains to CREW's April 21, 2005 request to BIA, and seeks additional clarification from CREW before proceeding further with the request. Chism Dec. (Ex. D). The Complaint makes no reference to this letter. The other letter relates to CREW's April 5, 2005 request to OS that was, in turn, referred to BIA and states that responsive documents were not found. Pl. Ex. Y.

[5] Ms. Thomas is formally designated a FOIA processor within OS. She is not the FOIA Officer, but acts under the authority of Sue Ellen Sloca, who is the official FOIA Officer for OS. Thomas Dec. ¶ 1.

emails sent by Mr. Abramoff, and stated that

> [c]opies of Abramoff's e-mails referencing Griles and Federici were obtained
> from a variety of sources, including the Interior Department. Some e-mails
> involving Gun lake were read to the Post by a person who declined to release
> them because of the federal probe.

Pl. Ex. N. The article also stated

> Gun lake was not the only casino that Abramoff tried to derail through his
> departmental contacts. The post has reported on e-mails indicating the lobbyist
> enlisted Griles to stop a Louisiana tribe's proposed casino, which threatened
> another Abramoff client.

*Id.*

During the September telephone conversation, Ms. Weismann stated that CREW wanted copies of the electronic mail messages concerning Deputy Secretary Griles that were cited in the article. Thomas Dec. ¶ 22. Ms. Thomas informed Ms. Weismann that the author of the August 28, 2005 article, *Washington Post* reporter Susan Schmidt, had herself made FOIA requests to the OS. *Id.* Based on Ms. Thomas's experience processing Ms. Schmidt's requests, Ms. Thomas informed Ms. Weismann that Ms. Thomas did not believe that Ms. Schmidt had obtained the emails referenced in the article through a FOIA request to the OS. *Id.* However, in an effort to provide Ms. Weismann with copies of all the documents that Ms. Schmidt had received from DOI under FOIA, Ms. Thomas suggested that Ms. Weismann make another FOIA request for documents, other than those already provided to CREW, that were provided by DOI to Ms. Schmidt, prior to the publication of the August 28, 2005 article. *Id.* After this conversation, Ms. Thomas reviewed her records to compare the documents provided to CREW and those provided to Ms. Schmidt. *Id.* ¶ 23. Based on this comparison, Ms. Thomas determined that Ms. Weismann should request copies of the documents Ms. Schmidt

received in response to the FOIA requests numbered: OS-2005-00228, OS-2005-00249, OS-2005-00272, and OS-2005-00413. *Id.* Ms. Thomas then telephoned Ms. Weismann and provided her with that information. *Id.*

On September 26, 2005, CREW filed its fourth FOIA request by email," requesting under the Freedom of Information Act additional documents that were provided to other FOIA requesters in response to the following FOIA requests: OS-2005-00228, OS-2005-00249, OS-2005-00272, and OS-2005-00413." Pl. Ex. Z. OS designated this request OS-2005-00669.

Thomas Dec. ¶ 24.

On September 27, 2005, OS responded to the September 26, 2005 request. Pl. Ex. AA. The response provided 146 documents consisting of 659 total pages, and outlined information that had been withheld from those prior requests pursuant to Exemptions 2, 4, 5, and 6 of the FOIA, 5 U.S.C. §§ 552(b)(2), (4) (5), (6). *Id.* The September 27, 2005 letter noted that the records produced

were selected because of our phone conversations in which you asked for any documents which your organization had not yet received but which had been sent to a particular author of a news story. An examination of our records identified the [four listed] FOIA requests as those containing such requests.

*Id.* In addition, as this response constituted the OS's final response to the September 26, 2005 request, the September 27, 2005 letter summarized CREW's appeal rights under the FOIA, specifically noting that CREW had 30 calendar days from date of the letter in which to submit an appeal letter. *Id.*

**Administrative Appeal**

By letter dated October 20, 2005, CREW appealed five of DOI's seven responses to its

various FOIA requests:

    1.    the three OS responses to the request of March 18, 2005 (Request #1)

    2.    the BIA response to the request of April 5, 2005 (Request #2)

    3.    the OS response to the request of September 26, 2005 (Request #4).[6]

Pl. Ex. BB. However, CREW appealed neither the BIA July 29, 2005 response to CREW's

FOIA request of April 21, 2005 (Request #3), nor the OS August 24, 2005 response to CREW's

FOIA request of April 5, 2005 (Request #2). *See id.* The appeal letter was received October 26,

2005, and was designated as Appeal number 2006-014. Pl. Ex. CC.

    With respect to its FOIA requests of March 18, 2005 (Request #1) and April 5, 2005

(Request #2), CREW alleged that DOI failed to conduct an adequate search because DOI did not

provide the emails referenced in the *Washington Post* article. Pl. Ex. BB. In an effort to excuse

its untimely appeal, CREW further stated that it "was not aware of the inadequacy of Interior's

prior searches until the August 28, 2005 *Washington Post* article detailing existing emails

relevant and responsive to CREW's earlier FOIA requests." *Id.* The letter characterized CREW

"act[ing] diligently, by filing a third FOIA request aimed at capturing those emails" and that

"[u]nder these circumstances, CREW has clearly acted in as expeditious manner as possible." *Id.*

    With respect to its September 26, 2005 request (Request #4), CREW also alleged that

DOI failed to conduct an adequate search because DOI did not produce the emails referenced in

the *Washington Post* article. Pl. Ex. BB. The appeal letter noted that none of the documents

produced pursuant to the September 26, 2005 request were emails, but that that the *Washington Post*

_____

[6]   Specifically, the October 20, 2005 letter appealed (i) "Interior's responses of March 21,
2005, April 12, 2005, and April 27, 2005, to CREW's FOIA request of March 18, 2005" (ii)
"Interior's response of July 29, 2005, to CREW's FOIA request of April 5, 2005" and (iii) the
September 27, 2005 response to CREW's FOIA request of September 26, 2005. Pl. Ex. BB.

article "documents [that] there are existing email exchanges by Interior Department officials, including former Deputy Secretary Griles, concerning the very subjects of CREW's three FOIA requests." *Id.* The appeal letter underscored the alleged inadequacy of the searches, "given that Interior had the benefit of *The Washington Post* article when it searched for documents responsive to CREW's FOIA request of September 26, 2005, yet still failed to locate the missing emails." *Id.*

By letter dated November 28, 2005, DOI's Office of the Solicitor denied CREW's October 20, 2005 appeal. Pl. Ex. CC. The appeals of the OS's responses to the March 18, 2005 request and the BIA's July 29, 2005 response to the April 5, 2005 request were denied as untimely, as they were filed more than 30 days from the final response. *Id.* The appeal of OS's response to the September 26, 2005 FOIA request was timely, and denied on the ground that the search was adequate. *Id.* Specifically, the November 28, 2005 denial letter noted that CREW had requested "'additional documents that were provided to other FOIA requesters in response to' four FOIA requests that [CREW] identified" and that OS had provided CREW "with all of the documents in each of those files that were released in response to the four FOIA requests that [CREW] identified." *Id.* Accordingly, the FOIA Appeals office denied the appeal because of the conclusions "that the OS conducted a search that was reasonably calculated to uncover the materials sought" and that the search was therefore adequate. *Id.*

### FOIA Action

On December 7, 2005, plaintiff CREW filed this FOIA action. Dkt. no. 1. Plaintiff claims that (1) "DOI failed to conduct an adequate search, and has failed to use search methods

reasonably expected to produce all documents responsive to Plaintiff's three FOIA requests"

("Claim One"), (2) that BIA failed to release records, thereby violating FOIA's mandate to

release agency records to the public ("Claim Two"), and (3) that BIA failed to respond to

plaintiff's April 21, 2005 FOIA request, thereby violating FOIA's mandate to respond to

Plaintiff's FOIA request within the statutory time period ("Claim Three").

On February 8, 2006, Defendant filed an Answer.

On April 19, 2006, the OS provided CREW an amended final response to CREW's

September 27, 2005 request.  Thomas Dec. ¶¶ 27-28 (Ex. I).  On April 12, 2007, in the course of

reviewing the documents provided to CREW, Ms. Thomas realized that she had inadvertently

failed to recommend that CREW request the second partial response to FOIA number OS-2005-

00208.  *Id.*  At the time of the recommendation, she had mistakenly believed that the documents

from the second partial response to that FOIA request were included in the documents already

released to CREW.  *Id.*  The amended final response provided 234 documents containing 1575

pages, and outlined categories of information withheld pursuant to Exemptions 2, 5, and 6 of the

FOIA, 5 U.S.C. §§552(b)(2), (5), (6).

<u>ARGUMENT</u>

**1.    Because Plaintiff Failed to Timely Exhaust Administrative Remedies, Defendant is
Entitled to Partial Judgment on the Pleadings**

A.    *Standard of Review: Judgment on the Pleadings Under Federal Rule of Civil
Procedure 12(c).*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but

within such time as not to delay the trial, any party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings will be granted if the movant

shows, at the close of the pleadings, that no issue of material fact remains for resolution, and that the movant is entitled to judgment as a matter of law. *See Lightfoot v. District of Columbia*, No. 04-1280, (slip op.), 2006 WL 54430 at *2 (D.D.C. Jan. 10, 2006); *Terry v. Reno*, 101 F.3d 1412, 1423 (D.C. Cir. 1996). Granting judgment on the pleadings pursuant to Rule 12(c) is proper only if it appears beyond doubt, based on the allegations contained in the complaint, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957); *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 47 (D.D.C. 2005).

The standard of review for motions for judgment on the pleadings under Rule 12(c) is essentially identical to that for motions to dismiss under Rule 12(b)(6). *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987); *Robinson*, 403 F. Supp. 2d at 47. On either motion, the Court may not rely on facts outside of the pleadings and must construe the complaint in the light most favorable to the non-moving party. *See Kowal v. MCI Communications Corp*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint." *Id.* "The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record." *Robinson*, 403 F. Supp. 2d at 47. The Court need not accept as true the legal conclusions cast as factual allegations. *Kowal*, 16 F.3d at 1276. If the Court considers matters outside the pleadings, the 12(c) motion is treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(c).

Page 16 of 28

**B.    Failure to Exhaust under FOIA.**

Defendant is entitled to partial judgment on the pleadings, because there is no issue of material fact for the Court's resolution that plaintiff failed to exhaust its administrative remedies. "'Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (quoting *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). While failure to exhaust is not a jurisdictional prerequisite, "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Id.* at 1258-59 (quoting *Oglesby*, 920 F.2d at 61); *id.* at 1259 (favorably citing *Taylor v. Appleton*, 30 F.3d 1365, 1367-68 & n.3 (11th Cir. 1994) (concluding that exhaustion, although not jurisdictional, is "condition precedent" to filing suit)). The D.C. Circuit has concluded that "the FOIA's administrative scheme 'favors treating failure to exhaust as a bar to judicial review.'" *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Hidalgo*, 344 F.3d at 1259). The purposes of exhaustion include (i) preventing premature interference with agency processes, permitting the agency to function efficiently and have the opportunity to correct its own errors, (ii) affording the parties and courts the benefit of the agency's experience and expertise, and (iii) compiling a record adequate for judicial review. *Hidalgo*, 344 F.3d at 1259.

FOIA requires agencies to promulgate regulations and procedures for the administration of FOIA requests. *See* 5 U.S.C. § 552(a)(3). A requester's failure to comply with an agency's FOIA regulations amounts to a failure to exhaust administrative remedies, warranting dismissal.

Page 17 of 28

*See Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 68-69 (D.D.C. 2004); *Dale v. I.R.S.*, 238 F. Supp. 2d 99, 102-03 (D.D.C. 2002). *Cf. Sliney v. Fed. Bureau of Prisons*, No. 04-1812, (slip op.) 2005 WL 3273567 (D.D.C. Sep. 28, 2005) ("Failure to pay the requested fees or to appeal the denial from a refusal to waive fees constitutes a failure to exhaust administrative remedies." (citing *Oglesby*, 920 F.2d at 66)).

The FOIA's administrative scheme expressly requires that an agency receiving a request for information:

> (i) determine within ten days (excepting Saturdays, Sundays, and legal public holidays) ... whether to comply with such request and [ ] immediately notify the person making such request of such determination and the reasons therefor, and the right of such person to appeal to the head of the agency any adverse determination; and
>
> (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A)(i), (ii); *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1259 (D.C. Cir. 2003).

The regulations governing appeals of FOIA requests to the Office of the Secretary of the Interior specify that a FOIA appeal founded on a requester's belief that the agency's search may be inadequate "must be received by the FOIA Appeals Officer no later than 30 workdays after the date of the final response or 30 days after receipt of any records that are provided to [the requestor]." 43 C.F.R. § 2.29.

C.    *By Bringing Administrative Appeals Months Late, and by Failing to Appeal at All, Plaintiff Failed to Exhaust Administrative Remedies*

Plaintiff failed to adhere to DOI's FOIA regulations for bringing timely appeals. *See*

*Flowers v. I.R.S.*, 307 F. Supp. 2d at 69 (D.D.C. 2004) ("[T]he plaintiff's failure to file a request that comports with agency FOIA regulations constitutes failure to exhaust administrative remedies."). With respect to (i) the OS responses of March 21, 2005, April 12, 2005, and April 27, 2005 to plaintiff's March 18, 2005 request (Request #1), and to (ii) the BIA's July 29, 2005 response to plaintiff's April 5, 2005 request (Request #2), plaintiff's administrative appeals were brought well outside the specified thirty day limit. *See* 43 C.F.R. § 2.29. Plaintiff received a final response to Request #1 on April 27, 2005 and received a final response to Request #2 on July 29, 2005. However, plaintiff filed its appeal to these responses many months later in its October 20, 2006 appeal letter. The Office of the Solicitor denied those administrative appeals as untimely and did not reach the merits.

Had the Office of the Solicitor chosen to ignore CREW's violation of agency regulations and treated these appeals as timely, then it would be proper for this Court to turn to the merits. *See Wilbur*, 355 F.3d at 677 (holding that the untimeliness of requestor's FOIA appeal would not preclude judicial review for failure to exhaust, despite being filed four years late, because the agency "[n]evertheless . . . accepted the appeal, processed it, reviewed the initial determination and issued a final decision upholding the agency's prior determination. . . . In these circumstances, the policies underlying the exhaustion requirement have been served"). Here, however, the Office of the Solicitor properly deemed the appeals as untimely under the pertinent FOIA regulations. Thus, plaintiff has failed to exhaust administrative remedies, and judicial review of claims arising from those responses is improper.

Defendant is also entitled to judgment on the pleadings with respect to the OS response of August 24, 2005 to plaintiff's April 5, 2005 request (Request #2). Plaintiff received a final

response and did not bring any administrative appeal. *See Martin v. Court Servs. & Offender*

*Supervision Agency*, No. 05-853, 2005 WL 3211536 (D.D.C. Nov. 17, 2005)

(granting summary judgment where plaintiff (i) was advised of appeal rights by defendant agency

and (ii) never appealed the agency's decision on his FOIA request, and thus "plaintiff's failure to

exhaust precludes judicial review of his FOIA request").

D.    *Speculation About the Existence of Responsive Documents Cannot Revive*
      *Unexhausted Claims.*

Even were the Court to address the unexhausted claims on the merits, Plaintiff's claims

about the inadequacy of the searches would still fail, because the existence and location of the

emails referenced in the August 28, 2005 *Washington Post Article* amounts to little more than

speculation.[7] "[I]t is long settled that the failure of an agency to turn up one specific document in

its search does not alone render a search inadequate." *Iturralde v. Comptroller of the Currency*,

315 F.3d 311, 315 (D.C. Cir. 2003); *see also Wilbur*, 355 F.3d at 678. "[A] search need not be

perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of

the specific request." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986); *see also Iturralde*,

315 F.3d at 315 (observing that "the adequacy of a FOIA search is generally determined not by

the fruits of the search, but by the appropriateness of the methods used to carry out the search").

"'In short, 'mere speculation that as yet uncovered documents may exist does not undermine the

finding that the agency conducted a reasonable search for them.'" *Iturralde*, 315 F.3d at 316

_____

[7] Should the Court in fact turn to the merits of Plaintiff's claims regarding the adequacy
of the responses to Plaintiff's March 18, 2005 and April 5, 2005 requests, Defendant has met its
burden of demonstrating that it conducted a search reasonably calculated to uncover all relevant
documents. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1984) (citing
*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); Thomas Dec. ¶¶ 2-28;
Hartman Dec. ¶¶ 3-6; Chism Dec. ¶¶ 2-5.

Page 20 of 28

(quoting *Safecard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)); *id.* at 315-16 (affirming

grant of summary judgment to agency where existence of responsive document identified after

agency had made final response did not undermine search's adequacy under FOIA).

Plaintiff states in its complaint that the "information made public in *The Washington Post*

article of August 28, 2005 documents that there are existing email exchanges between Interior

Department officials, including former Deputy Secretary Griles, concerning the very subjects of

Crew's three FOIA requests." Comp. ¶ 39 (emphasis added). Plaintiff claims that "[u]nder

these circumstances, DOI's searches were clearly inadequate." *Id.* In an effort to minimize the

fact that plaintiff failed to timely appeal the OS response to its March 18, 2005 request (Request

#1) and the BIA response to its April 5, 2005 request (Request #2), plaintiff states that "it had no

reason to doubt the adequacy of DOI's prior searches until *The Washington Post* August 28, 2005

article" and that "[a]t that time CREW acted diligently by filing a third FOIA request aimed at

capturing those emails." *Id.* ¶ 40. According to the Complaint, "CREW clearly acted in as

expeditious manner as possible." *Id.*

However, a review of the *Washington Post* article itself demonstrates that CREW is, at

best, speculating. The August 28, 2005 article by Susan Schmidt states that

> [c]opies of Abramoff's e-mails referencing Griles and Federici were obtained
> from a variety of sources, *including the Interior Department*. Some e-mails
> involving Gun lake were read to the Post by a person who declined to release
> them because of the federal probe.

Pl. Ex. N (emphasis added). This article does not specify how or from whom in DOI Ms.

Schmidt obtained the emails, nor the component, office, or bureau from which they originated, or

if they even directly originated from the DOI in the first place. Suggesting that plaintiff's

Page 21 of 28

unexhausted claims should be revived because the referenced emails are somewhere, ambiguously, within the DOJ, contradicts the regulatory scheme requiring specificity in identifying the bureau or component to which a request is directed. *See* 43 C.F.R. § 2.11. It is also unclear whether the *Washington Post* article's description of emails that were read to the reporter, but not released because of a federal probe, were the emails that Ms. Schmidt obtained from DOJ.

Permitting the potential existence of responsive documents to revive unexhausted claims, would be to apply a standard more lax than the standard for assessing the adequacy of a challenged search on the merits.[8] *Cf. Garcia v. Dep't of Justice*, No. 04-1921, (slip op.), 2005 WL 3273720, at * 4 (D.D.C. Aug. 31, 2005) ("It is not clear to the Court whether plaintiff knows that such a document exists or is merely speculating that it is defendant's possession. In either event, the Court's inquiry regarding the adequacy of the search focuses on the search itself, not its results."). Because speculation about the existence of responsive documents — or even the specific identification of an actual responsive document that was not released pursuant to a proper FOIA request — is insufficient to defeat summary judgment on the merits, *see Iturralde*, 315 F.3d at 315-16, speculation cannot be sufficient to revive an unexhausted claim where "the FOIA's administrative scheme 'favors treating failure to exhaust as a bar to judicial review.'"

*Wilbur*, 355 F.3d at 677 (quoting *Hidalgo*, 344 F.3d at 1259).

---

[8] The Court need not reach the question of what extraordinary circumstances might suffice to disregard the plaintiff's failure to properly exhaust administrative remedies. The facts of this case do not present extraordinary circumstances.

**II.    Defendant is Entitled to Summary Judgment on Plaintiff's Remaining Claims**

> A.    *Standard of Review: Summary Judgment Under Federal Rule of Civil Procedure 56 in FOIA Cases*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). FOIA cases are typically decided on motions for summary judgment. *Harrison v. Exec. Office for U.S. Attorneys*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005) (citing *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993)). The standard governing a grant of summary judgment in favor of an agency that has fully discharged its FOIA disclosure obligations is well-settled. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1984). As the D.C. Circuit established in *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476 (D.C. Cir. 1984), the agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact. *Steinberg*, 23 F.3d at 551 (citing *Weisberg*, 745 F.3d at 1485). To meet its burden, the agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." *Weisberg*, 745 F.3d at 1485.

> The question is not whether there might exist any other documents possibly
> responsive to the request, but rather whether the search for those documents was
> adequate. The adequacy of the search, in turn, is judged by a standard of
> reasonableness and depends, not surprisingly, upon the facts of each case. In
> demonstrating the adequacy of the search, the agency may rely upon reasonably
> detailed, nonconclusory affidavits submitted in good faith.

*Steinberg*, 23 F.3d at 551 (citing *Weisberg*, 745 F.3d at 1485); *see also Oglesby*, 920 F.2d at 68.

In a FOIA case, the Court may grant summary judgment solely on the basis of information provided by the agency in affidavits or declaration. *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981). "Agency affidavits enjoy a presumption of good faith,

which will withstand purely speculative claims about the existence and discoverability of other

documents." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). Affidavits

or declarations satisfying the agency's burden will explain in reasonable detail and in a non-

conclusory fashion the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121,

126 (D.C. Cir. 1982)

B.     *Because Plaintiff Received All the Documents It Requested in its September 26,*
       *2005 Request (Request #4), Plaintiff's Claim is Moot*

Summary judgment is proper when an agency produces all documents responsive to a

FOIA request. "In general, '[o]nce the government produces all the documents a plaintiff

requests, her claim for relief under the FOIA becomes moot.'" *Walsh v. U.S. Dep't of Vet.*

*Affairs*, 400 F.3d 535, 536 (7th Cir. 2005) (quoting *Anderson v. U.S. Dep't of Health & Human*

*Servs.*, 3 F.3d 1383, 1384 (10th Cir. 1993)); *see Perry*, 684 F.2d at 125 ("[H]owever fitful or

delayed the release of information under the FOIA may be, once all requested records are

surrendered, federal courts have no further statutory function to perform.").

Plaintiff's September 26, 2005 request (Request #4) for the documents produced pursuant

to Susan Schmidt's previous FOIA requests was properly and timely exhausted. However,

defendant is entitled to summary judgment on claims arising from this request because any such

claim is moot: defendant produced all the documents plaintiff asked for. Plaintiff's request was

confined to the documents produced pursuant to four specific FOIA requests that had not already

been provided to CREW. Pl. Ex. Z, AA. Those documents were produced to plaintiff.

In its administrative appeal of the September 27, 2005 response to plaintiff's September

26, 2005 request (Request #4), plaintiff argued that the search was "clearly inadequate" and that

this was "particularly the case given that DOJ had the benefit of *The Washington Post* article

when it searched for documents responsive to CREW's FOIA request of September 26, 2005, yet

still failed to locate the missing emails." Comp. ¶ 39; Pl. Ex. BB.

However, "'FOIA was not intended to reduce government agencies to full-time

investigators on behalf of requesters.'" *Brophy v. U.S. Dep't of Defense*, No. 05-360 (Slip op.),

2006 WL 571901, at *6 (D.D.C. Mar. 8, 2006) (quoting *Judicial Watch, Inc. v. Export-Import

Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000)). Accordingly, FOIA does not obligate an agency to

undertake a search that is so broad as to be unduly burdensome, *see id.* (citing *Nation Magazine

v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 2003)); and the responsibility for framing the

requests with sufficient particularity lies with the requester, *id.* (citing *Export-Import Bank*, 108

F. Supp. 2d at 27). However, "[a] requestor may not challenge the adequacy of a search after an

agency limits the scope of a search in response to direction from the requestor." *Lechliter v.

Dep't of Defense*, 371 F. Supp. 2d 589, 595 (D. Del. 2005) (citing *Nation Magazine v. Dep't of

State*, No. 92-2303, slip op. at 12 (D.D.C. Aug. 18, 1995)). An agency "is not obliged to look

beyond the four corners of the request for leads to the location of responsive documents," and

need only pursue "a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain".

*Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

Because plaintiff's September 26, 2005 request (Request #4) sought four specific groups

of documents that were produced to Ms. Susan Schmidt, and plaintiff received those four groups,

plaintiff's claim that the search was inadequate is moot. The OS was not required to go beyond

the "four corners" of this request, and as discussed *supra*, the existence and location of the emails

referenced in the *Washington Post* article is so speculative that it cannot constitute "a lead that is both clear and certain." *Kowalczyk*, 73 F.3d at 389.

C.    *Because Plaintiff Failed to Respond to BIA's July 29, 2005 Letter Regarding Plaintiff's April 21st Request, There Has Been No Final Agency Response and Plaintiff's FOIA Request Remains Open.*

Finally, defendant is entitled to summary judgment on Claim Three of plaintiff's complaint, namely that BIA failed to respond to Plaintiff's April 21, 2005 request (Request #3). Contrary to plaintiff's claim, BIA did respond to plaintiff's April 21, 2005 request (Request #3) in the second July 29, 2005 letter of Ms. Chism, the FOIA officer for the BIA. (Ex. Chism Dec. D). In that letter, Ms. Chism requested that CREW narrow its broad request. *Id.* To date, CREW has not responded to that letter. Thus there has been no final agency response to that request and the request remains open at the BIA.[9]

CONCLUSION

For the foregoing reasons, the court should grant defendant partial judgment on the pleadings and partial summary judgment.

Dated: April 21, 2006                    Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        KENNETH L. WAINSTEIN
                                        United States Attorney
                                        for the District of Columbia

_____

[9] It should be noted, in addition, that this response was never administratively appealed. *See* Pl. Ex. BB.

ELIZABETH J. SHAPIRO (D.C. Bar 418925)
HANNAH Y.S. CHANOINE
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7340
Washington, D.C. 20001
(202) 305-2318
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2006 a copy of Defendant's Motion for Partial Judgment on the Pleadings and Partial Summary Judgment was filed electronically and, by operation of the Court's electronic filing system, notice of this filing will be sent to:

Melanie Togman Sloan
Citizens for Responsibility and Ethics in Washington
msloan@citizensforethics.org
*Counsel for Plaintiff*

I further certify that on April 21, 2006, a copy of Defendant's Motion for Partial Judgment on the Pleadings and Partial Summary Judgment will be sent electronically to:

Anne L. Weismann
Citizens for Responsibility and Ethics in Washington
aweismann@citizensforethics.org
*Counsel for Plaintiff*

HANNAH Y.S. CHANOINE

Page 28 of 28