IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON<br>11 Dupont Circle, N.W.<br>Washington, D.C. 20036<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR<br>1849 C Street, N.W.<br>Washington, D.C. 20240<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-02339 (RBW)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 7.1(h), Defendant the Department of the Interior submit this statement of material facts as to which there is no genuine issue:

INTRODUCTION

1.   Plaintiff submitted four FOIA requests to DOI, three to the Office of the Secretary ("OS") and one directly to the Bureau of Indian Affairs ("BIA").[1]  For the Court's convenience, a table summarizing Plaintiff's FOIA requests and the responses from the OS and the BIA

---

[1] The BIA is a component bureau of the Department of the Interior that is separate and distinct from the OS. Declaration of Linda S. Thomas (Attached as Def. Ex. 001) ¶ 7. The BIA maintains its own records and the OS does not participate in the management or disposition of the BIA's records. *Id.* The Office of Information Policy (OIP), which resides within the Office of the Assistant Secretary - Indian Affairs (AS-1A) manages responses that are directed to the BIA. Declaration of Willie S. Chism (Attached as Def. Ex. 002) ¶ 1.

is attached as an Appendix.

## First Request
### (March 18, 2005)

2. By letter dated March 18, 2005, Ms. Melanie Sloan, on behalf of plaintiff CREW, submitted a FOIA request to the OS, for "records, regardless of format, medium, or physical characteristics" that "relat[ed] to any contact, dating from January 1, 2001, to the present, that any office of the Department of the Interior may have had, including any and all field offices" with a series of named individuals and entities, including Secretary Norton and former Deputy Secretary Griles, and Jack Abramoff or other specifically named persons associated with Mr. Abramoff's lobbying activities.  Pl. Ex. T.

3. The March 18 request focused primarily on contacts between offices of DOI and Jack Abramoff, employees of different firms, and members of Congress and their staff.  *Id.*

4. In addition, the March 18, 2005 request sought from the different offices of DOI records from the same time period regarding six specified Indian Tribes.  Pl. Ex. T.

5. The request sought records reflecting "any contact between any and all offices" of DOI, and "any and all individuals within those offices, including but not limited to Secretary Gale Norton and former Deputy Secretary J. Steven Griles" and the named individuals. *Id.*

6. Finally, the March 18, 2005 request further sought "any documents, regardless of format, medium or physical characteristics" provided to any of DOI's offices by the series of named individuals, "concerning any matter within the jurisdiction of the Bureau of Indian Affairs," including any matter also within the OS's jurisdiction.  *Id.*

7. Ms. Linda Thomas, a program specialist in the OS responsible for processing FOIA requests, designated the March 18, 2005 request with the internal number OS-2005-0296. Declaration of Linda S. Thomas (Attached as Def. Ex. 001) ¶ 2.

8. At the time she received the March 18, 2005 request for processing, the OS had already processed at least half a dozen FOIA requests seeking related information.[2] *Id.* ¶ 4.

9. On March 18, 2005, Ms. Thomas contacted Ms. Sloan by telephone to discuss the request. Thomas Dec. ¶ 5.

10. During that telephone call, Ms. Thomas explained that the OS had already processed a number of similar FOIA requests. *Id.*

11. Ms. Thomas stated that she would search through the documents that the Department provided in response to those other requests and immediately provide Ms. Sloan with any documents that were responsive to her request. *Id.*

12. Ms. Thomas also stated that she would coordinate a search of the Secretary's Automated Correspondence Indexing System, and search for and provide to Ms. Sloan any non-exempt calendar information for Secretary Norton and former Deputy Secretary Griles through November 2004. *Id.*

13. During that telephone call, Ms. Sloan indicated that the search efforts Ms. Thomas had described would be sufficient and it would not be necessary for the Department to pursue the electronic records portion of the March 18, 2005 request at that time. *Id.*

14. On March 21, 2005, Ms. Thomas forwarded a copy of the March 18, 2005 request to Ms.

---

[2] Requesters seeking related information included Judicial Watch, Public Citizen's Congress Watch, the Democratic Senatorial Campaign Committee, and the *Washington Post*. Thomas Dec. ¶ 4.

Nancy Appler, the FOIA contact for the Department's Office of Congressional and Legislative Affairs. Thomas Dec. ¶ 6.

15. Ms. Thomas requested that Ms. Appler conduct a search of the Secretary's Automated Correspondence Indexing System and search the calendars for Secretary Norton and former Deputy Secretary Griles to locate any responsive information. *Id.*

16. On March 21, 2005, Ms. Thomas also forwarded a copy of Ms. Sloan's request to Ms. Willie Chism, FOIA Officer for the BIA, and requested that the BIA directly respond to CREW. *Id.* ¶ 7.

17. On March 21, 2005, OS provided the first partial response to CREW's March 18, 2005 request. Pl. Ex. U.

18. The first partial response provided 218 documents containing 5,038 pages, and outlined categories of information withheld pursuant to Exemptions 2, 5, 6, 7(E), 7(C), and 7(F) of the FOIA, 5 U.S.C. §§552(b)(2), (5), (6), (7)(E), (7)(C), (7)(F). *Id.*

19. Referencing the telephone conversation of March 18, 2005, the letter summarized the contents of the partial response and described the status of the ongoing searches, including searches of the "Secretary's Automated Correspondence Indexing System." *Id.*

20. The March 21, 2005 letter noted that "[w]e have also made a referral to BIA for their direct response to you." *Id.*

21. On April 12, 2005, OS provided a second partial response to CREW's March 18, 2005 request. Pl. Ex. V.

22. The second partial response provided indexes generated as a result of the searches of the Secretary's Automated Correspondence Indexing System, and outlined information

withheld pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6).  *Id.*

23. The April 21, 2005 letter also referenced the telephone conversation of March 18, 2005, noting CREW's agreement that

> aside from the referral to BIA, which will answer [CREW] directly, within the Office of the Secretary [CREW] would accept appointment records for Secretary Norton and for former Deputy Secretary Griles from the beginning of such records until at least well into 2004, and for all of the parties and topics mentioned, and the index results of a search of the Secretary's Automated Correspondence Indexing System.

*Id.*

24. On April 27, 2005, the OS provided a final, third partial response to CREW's March 18, 2005 request.  Pl. Ex. W.

25. The final partial response 18 documents containing 630 total pages, including calendar information for Secretary Norton and former Deputy Secretary Griles until near the end of 2004, and outlined information withheld pursuant to Exemptions 2, 5, and 6 of the FOIA, 5 U.S.C. §§ 552(b)(2), (5), (6).  *Id.*

26. The April 27, 2005 letter also referenced the telephone conversation of March 18, 2005, again noting CREW's agreement limiting the scope of the original request.  *Id.*

27. The April 27, 2005 letter summarized CREW's appeal rights under the FOIA, specifically noting that CREW had 30 calendar days from date of the letter in which to submit an appeal letter.  *Id.*

**Second Request**
**(April 5, 2005)**

28. On or before April 5, 2005, Ms. Anne Weismann at CREW contacted Ms. Thomas by telephone and advised Ms. Thomas that CREW wanted DOI to search for electronic

records as part of its March 18, 2005 FOIA request. Thomas Dec. ¶ 11.

29. Ms. Thomas advised Ms. Weismann to submit a new FOIA request, because Ms. Sloan had narrowed the March 18, 2005 request to exclude electronic records, and the narrowed March 18, 2005 request was near to completion. *Id.*

30. By letter dated April 5, 2005, Anne Weismann on behalf of CREW submitted a second FOIA request to OS. Pl. Ex. X.

31. The April 5, 2005 request sought "all electronic records relating to any contact, dating from January 1, 2001 to the present" that any of the listed individuals may have had with the individuals and entities outlined in the March 18, 2005 FOIA request "relating to any matter within the jurisdiction of the Bureau of Indian Affairs, and all contacts the [listed] individuals had with the six Indian Tribes listed in our request." *Id.*

32. The request further sought "all electronic records relating to the above-delineated contacts for the individuals" who occupied various positions in BIA from January 1, 2001 to the present. *Id.*

33. Finally, the April 5, 2005 request sought "all documents, regardless of format, medium or physical characteristics" relating in any way to a November 8, 2002 meeting between Secretary Norton and four individuals. *Id.*

34. The April 5, 2005 request referenced Ms. Weismann's telephone conversation with Ms. Thomas on or about that date concerning the electronic records portion of the March 18, 2005 request. Pl. Ex. X.

35. Ms. Weismann acknowledged that Ms. Thomas had indicated that "notwithstanding the language of [CREW's] March 18, 2005 FOIA request specifying that the records

[CREW] sought included electronic records, a request for such records should be considered as a new FOIA request in light of the prior discussions between" OS and CREW.  *Id.*

36. The letter further stated that, while CREW disagreed as to the necessity of a new FOIA request, CREW was "nevertheless submitting this letter outlining the additional documents we seek and ask that, if necessary, you consider this letter to constitute a FOIA request and process it accordingly."  *Id.*

37. The letter indicated CREW's belief that "even if [the April 5, 2005 request is] deemed a new FOIA request, it will be combined with our March 18, 2005 FOIA request and processed simultaneously."  *Id.*

*OS Response to the April 5, 2005 Request.*

38. At the OS, Ms. Thomas designated the April 5, 2005 request with the internal number OS-2005–00331.  Thomas Dec. ¶ 12.

39. On April 7, 2005, Ms. Thomas contacted Ms. Appler and requested that she search for electronic records responsive to CREW's request within the OS.  *Id.* ¶ 13.

40. Ms. Appler, in turn, contacted Mr. Estel Lewis at the National Business Center, an office within DOI responsible for the OS's computer system with instructions to search for archived email messages belonging to OS officials and employees listed in the CREW request that no longer worked for DOI.  *Id.* ¶ 17.

41. Ms. Thomas also contacted Terrie Musgrove, the FOIA Officer for the DOI Office of the Solicitor, Ms. Willie Chism, the FOIA Officer for the BIA, and the FOIA contacts for the Office of Policy, Management and Budget, and the Office of Policy Analysis, with

requests to search for electronic documents responsive to the April 5, 2005 request. *Id.* ¶¶ 14-16, 19.

42. During this time, Ms. Thomas personally searched for responsive emails for former Deputy Assistant Secretary for Land and Minerals Management, Thomas Fulton, on a CD-Rom of his archived electronic messages. *Id.* ¶ 18.

43. In Ms. Thomas's judgment, these offices were the offices within DOI most likely to have documents responsive to CREW's April 5, 2005 request. *Id.* ¶ 20.

44. On August 24, 2005, the OS provided a final response to CREW's April 5, 2005 request. Thomas Dec. ¶ 21 (Ex. F).[3]

45. The final response included non-exempt electronic documents, comprising 11 documents consisting of 54 pages, and outlined information withheld pursuant to Exemptions 6 of the FOIA, 5 U.S.C. §§ 552(b)(6). *Id.*

46. The August 24, 2005 letter also noted that OS had made referrals to the BIA and DOI's Solicitor's Office for their direct response to CREW. *Id.*

47. The August 24, 2005 letter summarized CREW's appeal rights under the FOIA, specifically noting that CREW had 30 calendar days from date of the letter in which to submit an appeal letter. *Id.*

*BIA Response to the April 5, 2005 Request.*

48. Mr. Thomas Hartman, FOIA Coordinator for the BIA's Office of Indian Gaming Management (OIGM), processed the April 5, 2005 request for electronic documents that Ms. Thomas had referred to Ms. Chism, FOIA officer for the BIA. Declaration of

---

[3] Plaintiff's complaint makes no reference to the August 24, 2005 response.

Thomas H. Hartman (Attached as Def. Ex. 003) ¶¶ 1-3.

49. The April 5, 2005 request was given the internal BIA number of 06207. *Id.* ¶ 3.

50. Since December 2001, and continuing to the present, the OIGM has been disconnected from the Internet and has lacked the capacity to transmit or receive any external electronic mail messages. Hartman Dec. ¶ 5.

51. Mr. Hartman was able, therefore, to readily determine that the OIGM has no records consisting of electronic mail messages transmitted between the Director of the OIGM and the Indian tribes identified in the April 5, 2005 request. *Id.*

*52.* Mr. Hartman also searched for responsive electronic mail messages that might have been exchanged via the Department's intranet between the OIGM and the regional offices of the BIA, but did not find responsive documents. *Id.*

53. By letter dated July 29, 2005, Ms. Chism responded to the April 5, 2005 request "regarding electronic records between the [six Indian Tribes] and Mr. George T. Skibine, Director, Office of Indian Gaming Management." Chism Dec. ¶ 3 (Ex. B); Pl. Ex. Y.

54. The July 29, 2005 letter, signed by Ms. Chism, stated that records responsive to the April 5, 2005 request were not located. *Id.*

55. The July 29, 2005 letter responding to the April 5, 2005 request summarized CREW's appeal rights under the FOIA, specifically noting that CREW had 30 calendar days from date of the letter in which to submit an appeal letter. *Id.*

**Third Request**
**(April 21, 2005**)

56. By letter dated April 21, 2005, CREW submitted a third FOIA request directly to BIA's

Office of Information and Policy, addressed to Ms. Willie Chism. Pl. Ex. DD.

57. Styled a "follow-up" to CREW's April 5, 2005 request to DOI, the April 21, 2005 letter noted that this request was made at the suggestion of Sue Ellen Sloca in OS. *Id.*

58. The April 21, 2005 request sought records of "any contact" from January 1, 2001 to the present, that any individuals occupying certain positions in BIA "may have had regarding [six Indian Tribes]." *Id.*

59. Specifically, CREW sought information pertaining to the efforts of any of those six tribes "to receive DOI approval for gaming, including, but not limited to, any lobbying efforts by private individuals or members of Congress." *Id.*

60. The April 21, 2005 request was given the internal number 06206. Hartman Dec. ¶ 7.

61. Mr. Hartman, responsible for processing this request on behalf of Ms. Chism, determined that the request was too broad and general to satisfy 43 C.F.R. § 2.28(a)(1), which requires FOIA requests to describe the requested records in enough detail to locate the records with a reasonable amount of effort. *Id.* ¶ 9.

62. Mr. Hartman prepared a letter for the signature of Ms. Chism asking CREW to narrow its request. *Id.* ¶ 10.

63. In a letter signed by Ms. Chism, dated July 29, 2005, BIA responded to CREW's request of April 21, 2005.[4] Chism Dec. ¶ 5 (Ex. D).

---

[4] There are two separate July 29, 2005 letters from BIA FOIA Officer, Ms. Willie Chism, relevant to this action. One pertains to CREW's April 21, 2005 request to BIA, and seeks additional clarification from CREW before proceeding further with the request. Chism Dec. (Ex. D). The Complaint makes no reference to this letter. The other letter relates to CREW's April 5, 2005 request to OS that was, in turn, referred to BIA and states that responsive documents were not found. Pl. Ex. Y.

64. The letter notified CREW that "[b]ecause of the broad and general nature of the subject" of CREW's request, BIA was unable to identify which records were being sought. *Id.*

65. The July 29, 2005 letter requested further specificity concerning the type of documents requested, the geographical location, and time frame, and which of DOI's offices fell within the scope of the request. *Id.*

66. The July 29, 2005 letter informed CREW that BIA would not proceed further with the request until CREW provided additional clarification. *Id.*

67. To date, CREW has not responded to this request for clarification. Hartman Dec. ¶ 10.

68. The request currently remains open. *Id.*

**Fourth Request**
**(September 26, 2005)**

69. In September of 2005, Ms. Weismann telephoned Ms. Thomas, the FOIA processor within OS who had handled CREW's prior FOIA requests directed to OS.[5] Thomas Dec. ¶ 22; *see* Pl. Ex. Z.

70. The reason for Ms. Weismann's call was a *Washington Post* article, published a month earlier, about lobbyist Jack Abramoff and the federal task force investigating Mr. Abramoff's activities. Thomas Dec. ¶ 22; Susan Schmidt, Abramoff Cited Aid Of Interior Official, *The Washington Post*, August 28, 2005, at A01 (Pl. Ex. N).

71. The article referred to emails sent by Mr. Abramoff, and stated that

[c]opies of Abramoff's e-mails referencing Griles and Federici were obtained from a variety of sources, including the Interior Department. Some e-mails

---

[5] Ms. Thomas is formally designated a FOIA processor within OS. She is not the FOIA Officer, but acts under the authority of Sue Ellen Sloca, who is the official FOIA Officer for OS. Thomas Dec. ¶ 1.

        involving Gun lake were read to the Post by a person who declined to release them because of the federal probe.

Pl. Ex. N.

72.    The article also stated

        Gun lake was not the only casino that Abramoff tried to derail through his departmental contacts. The post has reported on e-mails indicating the lobbyist enlisted Griles to stop a Louisiana tribe's proposed casino, which threatened another Abramoff client.

  *Id.*

73.    During the September telephone conversation, Ms. Weismann stated that CREW wanted copies of the electronic mail messages concerning Deputy Secretary Griles that were cited in the article. Thomas Dec. ¶ 22.

74.    Ms. Thomas informed Ms. Weismann that the author of the August 28, 2005 article, *Washington Post* reporter Susan Schmidt, had herself made FOIA requests to the OS. *Id.*

75.    Based on Ms. Thomas's experience processing Ms. Schmidt's requests, Ms. Thomas informed Ms. Weismann that Ms. Thomas did not believe that Ms. Schmidt had obtained the emails referenced in the article through a FOIA request to the OS. *Id.*

76.    However, in an effort to provide Ms. Weismann with copies of all the documents that Ms. Schmidt had received from DOI under FOIA, Ms. Thomas suggested that Ms. Weismann make another FOIA request for documents, other than those already provided to CREW, that were provided by DOI to Ms. Schmidt, prior to the publication of the August 28, 2005 article. *Id.*

77.    After this conversation, Ms. Thomas reviewed her records to compare the documents provided to CREW and those provided to Ms. Schmidt. *Id.* ¶ 23.

78. Based on this comparison, Ms. Thomas determined that Ms. Weismann should request copies of the documents Ms. Schmidt received in response to the FOIA requests numbered: OS-2005-00228, OS-2005-00249, OS-2005-00272, and OS-2005-00413. *Id.*

79. Ms. Thomas then telephoned Ms. Weismann and provided her with that information. *Id.*

80. On September 26, 2005, CREW filed its fourth FOIA request by email, "requesting under the Freedom of Information Act additional documents that were provided to other FOIA requesters in response to the following FOIA requests: OS-2005-00-228, OS-2005-00-249, OS-2005-00-272, and OS-2005-00-413." Pl. Ex. Z.

81. OS designated this request OS-2005-00669. Thomas Dec. ¶ 24.

82. On September 27, 2005, OS responded to the September 26, 2005 request. Pl. Ex. AA.

83. The response provided 146 documents consisting of 659 total pages, and outlined information that had been withheld from those prior requests pursuant to Exemptions 2, 4, 5, and 6 of the FOIA, 5 U.S.C. §§ 552(b)(2), (4) (5), (6). *Id.*

84. The September 27, 2005 letter noted that the records produced

    were selected because of our phone conversations in which you asked for any
    documents which your organization had not yet received but which had been sent
    to a particular author of a news story. An examination of our records identified
    the [four listed] FOIA requests as those containing such requests.

*Id.*

85. In addition, as this response constituted the OS's final response to the September 26, 2005 request, the September 27, 2005 letter summarized CREW's appeal rights under the FOIA, specifically noting that CREW had 30 calendar days from date of the letter in which to submit an appeal letter. *Id.*

## Administrative Appeal

86. By letter dated October 20, 2005, CREW appealed five of DOI's seven responses to its various FOIA requests:

    (i) the three OS responses to the request of March 18, 2005 (Request #1)
    (ii) the BIA response to the request of April 5, 2005 (Request #2)
    (iii) the OS response to the request of September 26, 2005 (Request #4).[6]
    Pl. Ex. BB.

87. However, CREW appealed neither the BIA July 29, 2005 response to CREW's FOIA request of April 21, 2005 (Request #3), nor the OS August 24, 2005 response to CREW's FOIA request of April 5, 2005 (Request #2). *See id.*

88. The appeal letter was received October 26, 2005, and was designated as Appeal number 2006-014. Pl. Ex. CC.

89. With respect to its FOIA requests of March 18, 2005 (Request #1) and April 5, 2005 (Request #2), CREW alleged that DOI failed to conduct an adequate search because DOI did not provide the emails referenced in the *Washington Post* article.. Pl. Ex. BB.

90. In an effort to excuse its untimely appeal, CREW further stated that it "was not aware of the inadequacy of Interior's prior searches until the August 28, 2005 *Washington Post* article detailing existing emails relevant and responsive to CREW's earlier FOIA requests." *Id.*

91. The letter characterized CREW "act[ing] diligently, by filing a third FOIA request aimed at capturing those emails" and that "[u]nder these circumstances, CREW has clearly acted

---

[6] Specifically, the October 20, 2005 letter appealed (i) "Interior's responses of March 21, 2005, April 12, 2005, and April 27, 2005, to CREW's FOIA request of March 18, 2005" (ii) "Interior's response of July 29, 2005, to CREW's FOIA request of April 5, 2005" and (iii) the September 27, 2005 response to CREW's FOIA request of September 26, 2005. Pl. Ex. BB.

in as expeditious manner as possible." *Id.*

92. With respect to its September 26, 2005 request (Request #4), CREW also alleged that DOI failed to conduct an adequate search because DOI did not produce the emails referenced in the *Washington Post* article. Pl. Ex. BB.

93. The appeal letter noted that none of the documents produced pursuant to the September 26, 2005 request were emails, but that the *Washington Post* article "documents [that] there are existing email exchanges by Interior Department officials, including former Deputy Secretary Griles, concerning the very subjects of CREW's three FOIA requests." *Id.*

94. The appeal letter underscored the alleged inadequacy of the searches "given that Interior had the benefit of *The Washington Post* article when it searched for documents responsive to CREW's FOIA request of September 26, 2005, yet still failed to locate the missing emails." *Id.*

95. By letter dated November 28, 2005, DOI's Office of the Solicitor denied CREW's October 20, 2005 appeal. Pl. Ex. CC.

96. The appeals of the OS's responses to the March 18, 2005 request and the BIA's July 29, 2005 response to the April 5, 2005 request were denied as untimely, as they were filed more than 30 days from the final response. *Id.*

97. The appeal of OS's response to the September 26, 2005 FOIA request was timely, and denied on the ground that the search was adequate. *Id.*

98. Specifically, the November 28, 2005 denial letter noted that CREW had requested "'additional documents that were provided to other FOIA requesters in response to' four

        FOIA requests that [CREW] identified" and that OS had provided CREW "with all of the documents in each of those files that were released in response to the four FOIA requests that [CREW] identified." *Id.*

99.    Accordingly, the FOIA Appeals office denied the appeal because of the conclusions "that the OS conducted a search that was reasonably calculated to uncover the materials sought" and that the search was therefore adequate. *Id.*

### FOIA Action

100.    On December 7, 2005, plaintiff CREW filed this FOIA action. Dkt. no. 1.

101.    Plaintiff claims that (1) "DOI failed to conduct an adequate search, and has failed to use search methods reasonably expected to produce all documents responsive to Plaintiff's three FOIA requests" ("Claim One"), (2) that BIA failed to release records, thereby violating FOIA's mandate to release agency records to the public ("Claim Two"), and (3) that BIA failed to respond to plaintiff's April 21, 2005 FOIA request, thereby violating FOIA's mandate to respond to Plaintiff's FOIA request within the statutory time period ("Claim Three").

102.    On February 8, 2006, Defendant filed an Answer.

103.    On April 19, 2006, the OS provided CREW an amended final response to CREW's September 27, 2005 request. Thomas Dec. ¶¶ 27-28 (Ex. I).

104.    On April 12, 2007, in the course of reviewing the documents provided to CREW, Ms. Thomas realized that she had inadvertently failed to recommend that CREW request the second partial response to FOIA number OS-2005-00208. *Id.*

105.    At the time of the recommendation, she had mistakenly believed that the documents from

the second partial response to that FOIA request were included in the documents already released to CREW. *Id.*

106.    The amended final response provided 234 documents containing 1575 pages, and outlined categories of information withheld pursuant to Exemptions 2, 5, and 6 of the FOIA, 5 U.S.C. §§552(b)(2), (5), (6).

    Respectfully submitted,

    PETER D. KEISLER
    Assistant Attorney General

    KENNETH L. WAINSTEIN
    United States Attorney
    for the District of Columbia

    _/s/ Hannah Y.S. Chanoine_____
    ELIZABETH J. SHAPIRO (D.C. Bar 418925)
    HANNAH Y.S. CHANOINE
    United States Department of Justice
    Civil Division
    Federal Programs Branch
    20 Massachusetts Ave., N.W. Room 7340
    Washington, D.C. 20001
    (202) 305-2318
    *Attorneys for Defendant*

Dated: April 21, 2006