Declaration of
Linda S. Thomas

DEFENDANT'S
EXHIBIT 001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON | ( |
| | ( |
| Plaintiff, | ( Case No. 1: 05CV02339 |
| | ( (Judge Walton) |
| v. | ( |
| | ( |
| U.S. DEPARTMENT OF THE INTERIOR, | ( |
| | ( |
| Defendant. | ( |
| | ( |

DECLARATION OF LINDA S. THOMAS

I, Linda S. Thomas, hereby declare as follows:

1. I am a Program Specialist in the Office of the Secretary (OS) at the United States Department of the Interior (Department), a job that I have performed since October 1, 2004. My duties primarily include processing Freedom of Information Act (FOIA) requests and I report to Ms. Sue Ellen Sloca who is the FOIA Officer for the OS.

**FOIA Request OS-2005-00296**

2. On March 18, 2005, I received via facsimile a FOIA request from Ms. Melanie Sloan of the Citizens for Responsibility and Ethics in Washington (CREW). A true and correct copy of the request, which was numbered internally as OS-2005-00296, is attached hereto as Exhibit A.

3. In Exhibit A, Ms. Sloan requested all information, including information in electronic format, concerning any contacts, from January 2001 to the present, between any office of the Department, including Secretary Norton and former Deputy Secretary

2

Griles, and Jack Abramoff or other specifically named persons associated with Mr. Abramoff's lobbying activities. Ms. Sloan also requested information concerning any contacts, from January 1, 2001 to the present, between the Department and the Agua Caliente Tribe, Tigua Tribe, Saginaw Tribe, Mississippi Band of Choctaw Indians, Coushatta Tribe and Jena Band of Choctaw Indians.

4. At the time I received Exhibit A for processing, the OS had already processed a number FOIA requests seeking related information, including requests from the law firm of Patton Boggs, LLP, Judicial Watch, Public Citizen's Congress Watch, the Democratic Senatorial Campaign Committee, the Washington Post and others.

5. On March 18, 2005, I contacted Ms. Sloan by telephone to discuss her request. During that telephone call, I explained that the OS had already processed a number of FOIA requests from other individuals and organizations that sought information similar to the information CREW was requesting. I told her that I would search through the documents that the Department provided in response to those other requests and immediately provide her with any documents that were responsive to her request. I also told her that I would coordinate a search of the Secretary's Automated Correspondence Indexing System, and search for and provide to her any non-exempt calendar information for Secretary Norton and former Deputy Secretary Griles through November 2004. During that telephone call, Ms. Sloan indicated that the search efforts I described would be sufficient and it would not be necessary for the Department to pursue the electronic records portion of her request at that time.

6. On March 21, 2005, I forwarded a copy of Ms. Sloan's request to Nancy Appler, the FOIA contact for the Department's Office of Congressional and Legislative

3

Affairs. I requested that Ms. Appler conduct a search of Secretary's Automated Correspondence Indexing System and search the calendars for Secretary Norton and former Deputy Secretary Griles to locate any responsive information.

7.    On March 21, 2005, I also forwarded a copy of Ms. Sloan's request to Willie Chism, FOIA Officer in the Office of Information Policy, which handles FOIA requests for the Bureau of Indian Affairs (BIA), and requested that the BIA directly respond to CREW. The BIA is a component bureau of the Department that is separate and distinct from the OS. The BIA maintains its own records and the OS does not participate in the management or disposition of BIA records

8.    On March 21, 2005, I completed my search for documents responsive to Ms. Sloan's request within the body of documents that the OS previously produced in response to other similar requests. I also drafted a letter of response to Ms. Sloan to go out under the signature of Ms. Sloca. A true and correct copy of the letter that I drafted is attached hereto as Exhibit B. In the letter, I indicated that it was an initial partial response to Ms. Sloan's request, which included 218 documents, consisting of 5,038 pages. I also detailed the information that was withheld pursuant to certain statutory exemptions. In the letter, I further stated that I had referred the request to the Bureau of Indian Affairs (BIA) and instructed the BIA to respond directly to CREW. In addition, I memorialized Ms. Sloan's oral agreement to narrow CREW's initial request, as described in paragraph 5 above, by referencing our telephone conversation and describing the two remaining categories of records that the OS would be providing to CREW in satisfaction of its request – information from the Secretary's Automated Correspondence Indexing

System and calendar information for then-Secretary Norton and former Deputy Secretary

Griles.

9. On April 12, 2005, I prepared a second letter to Ms. Sloan for Ms. Sloca's

signature. A true and correct copy of the letter is attached hereto as Exhibit C. In the

letter, I indicated that it was a second partial response to Ms. Sloan's request, consisting

of indexes generated as a result of our search of the Secretary's Automated

Correspondence Indexing System. In that letter, I reiterated my understanding that Ms.

Sloan had agreed to limit her original request as described in paragraph 5 above.

10. On April 27, 2005, I prepared a third letter to Ms. Sloan for Ms. Sloca's

signature. A true and correct copy of the letter is attached hereto as Exhibit D. In the

letter, I indicated that it was the final response to Ms. Sloan's request, enclosing the

remaining calendar information for Secretary Norton and former Deputy Secretary

Griles, which included 18 documents, consisting of 630 pages.

**FOIA Request OS-2005-00331**

11. On or before April 5, Ms. Anne Weismann at CREW contacted me by

telephone and advised me that CREW wanted the Department to search for electronic

records as part of its March 18, 2005 FOIA request. I advised her to submit a new FOIA

request because the request of March 18, 2005 had been narrowed by Ms. Sloan to

exclude electronic records and the narrowed request was close to being completed.

12. Thereafter, on April 5, 2005, I received via electronic mail, a letter from Ms.

Weismann stating that CREW wanted the Department to search for electronic records as

part of its March 18, 2005 FOIA request or, alternatively, as an additional FOIA request.

A true and correct copy of this letter is attached as Exhibit E. I considered Ms.

Weismann's letter to be a new FOIA request and assigned it the internal number OS-2005-00331.

13. On April 7, 2005, I contacted Ms. Appler and requested that she search for electronic records responsive to Ms. Weismann's request within the OS.

14. On April 7, 2005, I also contacted Ms. Terrie Musgrove, FOIA Officer for the Office of the Solicitor (SOL) and requested that she search for electronic records responsive to Ms. Weismann's request within SOL and respond directly respond to CREW. The SOL is a component bureau of the Department that is separate and distinct from the OS. The SOL maintains its own records and the OS does not participate in the management or disposition of SOL records.

15. On April 7, 2005, I also contacted Ms. Chism and requested that she search for electronic records responsive to Ms. Weismann's request within the BIA.

16. On April 12, 2005, I contacted Ms. Chanelle Williams, who is the FOIA contact for the Office of Policy, Management and Budget (PMB), which is an office within the OS, and requested that she search for electronic records responsive to Ms. Weismann's request within PMB.

17. On April 13, 2005, I received a copy of an electronic mail message sent by Ms. Appler to Mr. Estle Lewis at the National Business Center (NBC), which is an office within the Department that owns and operates the computer system of the OS. In her message to Mr. Lewis, Ms. Appler requests that he search any archived electronic mail messages belonging to OS officials and other employees who were listed in the CREW request, but who no longer work at the Department.

18. During this general time period, I also personally searched for responsive electronic mail messages for former Deputy Assistant Secretary for Land and Minerals Management, Thomas Fulton, on a CD-Rom of his archived electronic messages that was provided to me by Ms. Appler.

19. On May 25, 2005, at the suggestion of Ms. Appler, I contacted Ms. La Sham Lee, in the Office of Policy Analysis (PPA), which is an office with PMB and requested that she search for responsive electronic records.

20. In my judgment the offices identified in paragraphs 13-19 above were the offices likely to have documents responsive to CREW's April 5, 2005 request.

21. After gathering the results of these searches, on August 24, 2005, I prepared a letter to Ms. Sloan and Ms. Weismann transmitting to them the responsive, non-exempt portions, which included 11 documents, consisting of 54 pages. A true and correct copy of that letter is attached hereto as Exhibit F.

**FOIA Request OS-2005-00669**

22. In September of 2005, Ms. Weismann contacted me by telephone and informed me that CREW was interested in obtaining certain documents that the Department provided to Washington Post reporter Susan Schmidt. In particular, Ms. Weismann stated that CREW wanted copies of the electronic mail messages concerning former Deputy Secretary Griles, which Ms. Schmidt cited in her August 28, 2005 article. According to Ms. Schmidt's article, the Washington Post obtained copies of the electronic mail messages from the Department of the Interior, among other sources. Based on my experience processing previous FOIA requests from Ms. Schmidt, I did not believe that she had obtained the electronic mail messages she referenced in her article

7

through a FOIA request to the OS. I communicated this to Ms. Weismann. However, in an effort to provide Ms. Weismann with copies of all of the documents the Department provided to Ms. Schmidt, I suggested that she make another FOIA request for documents, other than those already provided to CREW, that were provided by the Department to Ms. Schmidt, prior to the publication of her August 28, 2005 article.

23.   After this conversation with Ms. Weismann, I went back through my records and compared what CREW had received in response to its March 18, 2005 request with the information that the Department provided to Ms. Schmidt in response to the various FOIA requests that she filed. Based on this comparison, I determined that Ms. Weismann would want to request copies of the documents Ms. Schmidt received in response to the following FOIA requests: OS-2005-00228; OS-2005-00249; OS-2005-00272; and OS-2005-00413. Thereafter, I contacted Ms. Weismann by telephone and conveyed that information to her.

24.   On September 26, 2005, I received an electronic mail FOIA request from Ms. Weismann, seeking any documents, not already provided to CREW, that were produced by the Department in response to the FOIA requests listed in paragraph 23 above. A true and correct copy of the message, which was numbered internally as OS-2005-00669, is attached hereto as Exhibit G.

25.   On September 27, 2005, I prepared a letter responding to this FOIA request for the signature of Ms. Sloca. A true and correct copy of this letter is attached hereto as Exhibit H. In the letter, I stated that it was the final response to her request of September 27, 2005, which included 146 documents, consisting of 649 pages. I also explained in

detail that certain documents or portions of documents were withheld pursuant to various statutory exemptions.

26.  In late October or early November of 2005, I learned that CREW had filed an appeal concerning FOIA Request # OS-2005-00669. My office was directed to confirm for FOIA Appeals Officer Darrell Strayhorn that CREW was, in fact, provided with copies of all of the documents responsive to the other FOIA requests listed in paragraph 23 above. Accordingly, I retrieved from our files the documents that were provided to CREW and compared them with the documents that were provided in the other FOIA requests reference in paragraph 23 above. I determined that all of the documents provided in those other requests were provided to CREW and communicated that information to Ms. Strayhorn.

27.  On April 12, 2006, in the course of reviewing the documents that we provided to CREW, I realized that in my communications with Ms. Weismann discussed in paragraph 23 above, I inadvertently failed to recommend that she also request the second partial response to FOIA request # OS-2005-00208. At that time, I mistakenly believed that those documents has been included in first set of documents we provided to CREW in response to its March 18, 2005 request.

28.  To address this error, I prepared a letter amending our final response to request OS-2005-00669 and transmitting the additional group of documents. A true and correct copy of that letter, which was sent via federal express, is attached hereto as Exhibit I.

29.  The total body of documents provided to CREW in response to its 3 FOIA requests discussed herein included copies of responsive non-exempt email messages.

30.  All of the information set forth in this declaration is based upon my personal

knowledge or upon information furnished to me in my official capacity.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct.

Executed this 20th day of April 2006.

_Linda S. Thomas_
Linda S. Thomas
Program Specialist
Office of the Secretary

# Citizens for Responsibility and Ethics in Washington

March 18, 2005

Ms. Sue Ellen Sloca
Office of the Secretary
Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

**BY FAX: 202-219-2374**

Re:    Freedom of Information Act Request

Dear Ms. Sloca:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, et seq.

This request relates to any contact, dating from January 1, 2001, to the present, that any office of the Department of the Interior may have had, including any and all field offices, with Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the Council of Republicans for Environmental Advocacy, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of the Speaker of the House, Senator Conrad Burns, and any employee in the office of Senator Burns, concerning any matter within the jurisdiction of the Bureau of Indian Affairs.

This request further includes any records, dating from January 1, 2001, to the present, from any office of the Department of the Interior including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs regarding the Agua Caliente Tribe of Palm Springs, California, the Tigua Tribe of El Paso, Texas, the Saginaw Chippewa Tribe of Michigan, the Mississippi Band of Choctaw Indians, the Coushatta Tribe of Louisiana, and the Jena Band of Choctaw Indians.

Specifically, we request the release of any records that reflect any contact between any and all offices of the Department of the Interior and any and all individuals within those offices, including but not limited to Secretary Gale Norton and former Deputy Secretary J. Steven Griles, and the above-delineated individuals and entities, regardless of who initiated the contact, as well as the substance of all such contacts.



Declaration of Linda S. Thomas – Exhibit A

Ms. Sue Ellen Sloca
March 18, 2005
Page Two

We also request any documents, regardless of format, medium or physical characteristics, that were provided to any office of the Department of the Interior by Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the Council of Republicans for Environmental Advocacy, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, former General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom Delay, any employee in the office of Congressman DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of the Speaker of the House, Senator Conrad Burns, and any employee in the office of Senator Burns concerning any matter within the jurisdiction of the Bureau of Indian Affairs. As used in this request "and" also means "or," and "or" also means "and." As used in this request "any matter within the jurisdiction of the Bureau of Indian Affairs" includes, but is not limited to, any matter also within the jurisdiction of the Office of the Secretary.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts and notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1972). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the *Vaughn* Index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (*emphasis added*). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular

Ms. Sue Ellen Sloca
March 18, 2005
Page Three

part of a withheld document to which they apply.'" *Id.* at 224 (citing *Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. §552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . ."); *see also Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1209 (D.C. Cir. 1992). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *Mead Data Central*, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**Fee Waiver Request**

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). *See, e.g., McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the process used by the Department of the Interior to approve tribal bids for casinos on Indian lands.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases.

Under these circumstances, CREW fully satisfies the criteria for a fee waiver.

Ms. Sue Ellen Sloca
March 18, 2005
Page Four

**Conclusion**

Please respond to this request in writing within twenty (20) days as required under 5 U.S.C. §552(a)(6)(A)(i). If all of the requested documents are not available within that time period, CREW requests that you provide it with all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee problems in releasing fully the requested records within the twenty-day period, please call me within that time period. I can be reached at (202) 588-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination. Please send the requested documents to Melanie Sloan, Citizens for Responsibility and Ethics in Washington, 11 Dupont Circle, N.W., 2nd Floor, Washington, D.C. 20036.

Sincerely,

Melanie Sloan
Executive Director

cc: Bureau of Indian Affairs



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240



March 21, 2005

Melanie Sloan,
Executive Director
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle, N.W., 2nd Floor
Washington, D.C. 20036

Dear Ms. Sloan:

On March 18, 2005, you filed a Freedom of Information Act (FOIA) request, OS-2005-00296, seeking:

"'This request related to any contact, dating from January 1, 2001, to the present, that any office of the Department of the Interior may have had, including any and all field offices, with Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of the Speaker of the House, Senator Conrad Burns, and any employee in the office of Senator Burns, concerning any matter within the jurisdiction of the Bureau of Indian Affairs. This request further includes any records, dating from January 1, 2001, to the present, from any office of the Department of the Interior including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs regarding the Agua Caliente Tribe of Palm Springs, California, the Tigua Tribe of El Paso, Texas, the Saginaw Chippewa Tribe of Michigan, the Mississippi Band of Choctaw Indians, the Coushatta Tribe of Louisiana, and the Jena Band of Choctaw Indians. Specifically, we request the release of any records that reflect any contact between any and all offices of the Department of the Interior and any and all

1

individuals within those offices, including but not limited to Secretary Gale Norton and former Deputy Secretary J. Steven Griles, and the above-delineated individuals and entities, regardless of who initiated the contact, as well as the substance of all such contacts. We also request any documents, regardless of format, medium or physical characteristics, that were provided to any office of the Department of the Interior by Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the Council of Republicans for Environmental Advocacy, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, former General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of Senator Burns concerning any matter within the jurisdiction of the Bureau of Indian Affairs."

Today we are sending a partial initial response, consisting of 218 documents containing 5038 pages on 1 CD ROM in TIFF Format (except for an Index to Calendars which is in Microsoft Word).

As noted during our telephone conversation on Friday, the documents include travel records for Secretary Norton and for former Deputy Secretary Griles from the beginning of such records until March 29, 2004. We are also sending some correspondence from Conrad Burns to DOI, and another folder, the Jena Band of Choctaw documents, both sets of which were released under previous FOIA requests, and are therefore readily available. To recap our conversation, we are now searching the Secretary's Automated Correspondence Indexing System for correspondence between all of the relevant parties  you named, and will notify you when those searches are completed. In addition we will provide you with calendar information for Secretary Norton and former Deputy Secretary Griles through November 2004 as soon as it completes the review process. We have also made a referral to BIA for their direct response to you.

Deleted from some of the documents enclosed, pursuant to Exemption 2 of the FOIA (5 U.S.C. § 552 (b)(2)), is the following information:

**Fixed conference call codes**

**Agency credit card numbers**

**Government cellular phone numbers**

**Homeland security-related information**

2

Exemption 2 exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Courts have interpreted the exemption to encompass two categories of information, internal matters of a relatively trivial nature ("low 2" information) and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2" information).

*Conference Call Codes*

Conference call codes are codes that allow access to telephone conference calls.[1] Release of non-variable access codes linked to telephone conference calls scheduled at standard, fixed intervals could allow individuals not authorized to participate in these calls to eavesdrop on them, and so circumvent security precautions established to protect the privacy of agency deliberations. Therefore, we have determined that fixed conference call codes belong to the category of information likely to result in harmful circumvention under "high 2."

*Credit Cards*

The Department of Justice has determined that agency credit card numbers belong to the category of information likely to result in harmful circumvention under "high 2." Specifically, the Department of Justice lists agency credit card numbers as an example of "high 2" information. Freedom of Information Act Guide and Privacy Act Overview, 128 (May 2000 ed.)) Additionally, the United States District Court for the District of Columbia has held agency credit card numbers to fall within the "high 2" exemption. The court based its determination on the possibility of misuse and fraud of agency credit cards. Judicial Watch, Inc. v. United States Dep't. of Commerce, 83 F.Supp. 2d 105, 110 (D.D.C. 1999).

*Cellular Phone Numbers*

Two courts have held that telephone numbers constitute trivial administrative matters with no genuine public interest. Hale v. Department of Justice, 973 F.2d 894, at 902 (10th Cir., 1992); Voinche v. Federal Bureau of Investigations, 46 F.Supp.2d 26, at 30 (D.D.C. 1999). The redacted information pertains to the numbers assigned to the cellular phone numbers provided to federal employees by the government. The release of this information would not shed significant light on an agency personnel

---

[1] Generally, access codes are variable, that is, they are viable only for a given conference call at a specified time on a specified date. The release of variable access codes, after their expiration, would not risk circumvention of a legal requirement because none of these numbers could be used to obtain access to a telephone conference call.

4

of information withholdable under Exemption 2.

*Homeland Security Information*

Information concerning the need to protect facilities and national assets from security breaches and harm that reasonably could be expected to enable someone to succeed in causing the feared harm is necessarily protected under "high 2." The redacted information could be used by those intending to plan an act of terrorism on U.S. soil to obtain an advantage over the government by gaining insight into what the government perceives as areas of vulnerability. This type of information is directly related to homeland security and is properly withheld under exemption 2.

**Also, information has been deleted from one of these documents, pursuant to Exemption 5 of the FOIA (5 U.S.C. § 552 (b)(5)).**

Exemption 5 allows an agency to withhold "inter-agency' or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552 (b)(5). As such, the privilege "exempt[s] those documents . . . normally privileged in the civil discovery context." *National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) (NLRB). The exemption incorporates several of these privileges from discovery in litigation, including the deliberative process privilege. *Id.* at 149.

The deliberative process privilege "protect[s] the decisionmaking process of government agencies" and "encourage[s] the frank discussion of legal and policy issues" by ensuring that agencies are not "forced to operate in a fish bowl." *Mapother v. United States Dept. of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing *Wolfe v. United States Dept. of Health & Human Services*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)) (Mapother). Three policy purposes have been advanced by the courts as the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See, e.g., Russell v. United States Dept. of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (Russell); *Coastal States Gas Corp. v. United States Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege protects materials that are both predecisional

5

and deliberative. Mapother, 3 F.3d at 1537; Access Reports v. United States Dept. of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991); Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). A predecisional document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinions of the writer rather than the policy of the agency." Maricopa Audubon Society v. United States Forest Serv., 108 F.3d 1089, 1093 (9th Cir. 1997). A predecisional document is part of the "deliberative process" if "the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id.

The portions of the documents that have been withheld pursuant to Exemption 5 do not contain or represent formal or informal agency policies or decisions. The contents have been held confidential by all parties. Public dissemination of this information would most certainly have a chilling effect on the agency's deliberative processes. It would expose the agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine its ability to perform its mandated functions.

Also deleted from some of the documents enclosed, pursuant to Exemption 6 of the FOIA (5 U.S.C. § 552 (b)(6)), are the following categories of information pertaining to the individuals named in the records:

dates of birth
birthdays
home addresses
home and cell telephone numbers
pager numbers
time and attendance data
hotel/rental car confirmation numbers
names of individuals not selected for employment
personal, family and medical appointments
names of security personnel providing protection to Secretary
information pertaining to individuals not selected for employment by
the Department      (names, telephone numbers, etc.)

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The courts have held that the phrase "similar files" involves all information that applies to a particular person.

9

When disclosure of information about particular individuals is requested, the courts have decided that it is necessary for us to determine whether release of the information would constitute a clearly unwarranted invasion of the individual's privacy.

To make this determination, we are required to perform a "balancing test." This means that we must weigh the individual's right to privacy against the public's right to disclosure.

(1)   First, we must determine whether the individual has a discernable privacy interest in the information that has been requested.

(2)   Next, we must determine whether release of this information would serve "the public interest generally" (i.e., whether it would "shed light on the performance of the agency's statutory duties.")

(3)   Finally, we must determine whether the public interest in disclosure is greater than the privacy interest of the individual in withholding.

The information that we are withholding consists solely of the above categories of information pertaining to the individuals named in the records. The Office of the Secretary has determined that the individuals to whom this information pertains have a substantial privacy interest in it. Additionally, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties and that, on balance, therefore, the public interest to be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it.

In short, we have determined that release of the information that we have withheld would constitute a clearly unwarranted invasion of the privacy of these individuals, and that, therefore, it may be withheld pursuant to Exemption 6.

**Also deleted from one of the documents enclosed pursuant to Exemption 7E of the FOIA (5 U.S.C. § 552 (b)(7)(E)), is the following information:**

**phone number of FBI employee**

Exemption 7(E) affords protection to all law enforcement information that "would disclose techniques and procedures for law enforcement investigation or prosecutions, or would disclose guidelines for law enforcement investigation or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

The Office of the Secretary has determined that the phone numbers of individuals employed by the Federal Bureau of Investigation are not routinely disclosed to the

public because public access to this number could reasonably be expected to expose the individual to harassment and/or hinder the individual's ability to carry out his/her law enforcement investigations.

We have concluded, therefore, that there are sound grounds for withholding it, pursuant to exemption 7E of the FOIA (5 U.S.C. § 552 (7)(E)).

Deleted, additionally, from one of the documents enclosed pursuant to Exemption 7F and 7C of the FOIA (5 U.S.C. § 552 (b)(7)(C) & (F)), is the following information:

**names of security personnel providing protection to Secretary**

Exemption 7(C) provides protection for personal information in law enforcement records. It allows an agency to withhold law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

Exemption 7(F) permits the withholding of information necessary to protect the physical safety of a wide range of individuals. This exemption provides protection to "any individual" when disclosure of information about him "could reasonably be expected to endanger [his] life or physical safety."

The Office of the Secretary has determined that disclosure of the names of the individuals assigned to protect the Secretary on specific occasions in the past could reasonably be expected to endanger not only the individuals to whom this information pertains but also the Secretary of the Interior, should these same individuals be assigned to protect the Secretary on future occasions.

We have concluded, therefore, that there are sound grounds for withholding it, pursuant to exemption 7C and 7F of the FOIA (5 U.S.C. § 552 (7)(C) & (F)).

Lisa Lance, Tim Murphy, Cindy Cafaro, Robin Friedman, Donald S. Harris, and Stephanie Yu, Attorney-Advisors in the Office of the Solicitor, were consulted in reaching these decisions. Sue Ellen Sloca, Office of the Secretary FOIA Officer, is responsible for making these decisions.

If you believe that any of these decisions to withhold information is incorrect, you may file an FOIA appeal by writing to the FOIA Appeals Officer, U.S. Department of the Interior, 1849 C Street, NW, Mail Stop 7456, MIB, Washington, D.C. 20240. Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) after the date of our response (this letter.)  Your appeal letter must be marked, both on its envelope

8

and at the top of its first page, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal letter must be accompanied by a copy of your original FOIA request (a copy of which is enclosed with our response), for your convenience,) and a copy of this letter, along with a brief explanation of why you believe that the particular decision in question is in error.

The FOIA fee for the processing of your request within the Office of the Secretary is $2.00, calculated as follows:

| 1 | CD ROM disk | @ | $ | 2.00 per disk |

However, it is the policy of the Secretary of the Interior to not collect fees for the processing of FOIA requests when under $30.00 since the cost of collection would be greater than the fee collected. There is thus no fee at this time. In addition, as noted above, your request for fee waiver is being considered.

If you have any questions regarding any of the issues discussed in this letter, you may contact me by phone at 202-208-6045, by fax at 202-219-2374, by e-mail at osfoia@nbc.gov, or by mail at U.S. Department of the Interior, MS 1413 MIB, Washington, D.C. 20240. Within the Office of the Secretary, we are committed to providing you, our customer, with the highest quality of service possible.

Sincerely,

*[signature]*

Sue Ellen Sloca
Office of the Secretary
FOIA Officer

*PRIVACY ACT notice: Before you choose to contact us, electronically, there are a few things you should know. The information you submit, including your electronic address, may be seen by various people. We will scan a copy of your request into our electronic OS administrative/image file. We will key the information that you provide to us into our electronic OS FOIA tracking file. We may share it with other individuals, both within and without the Department, involved in Freedom of Information Act administration. You may be contacted by any of these individuals. In other limited circumstances, including requests from Congress or private individuals, we may be required by law to disclose some of*

*the information you submit. Also, e-mail is not necessarily secure against interception. If your communication is very sensitive, or includes personal information like your bank account, charge card, or social security number, you might want to send it by postal mail, instead.*

Case 1:05-cv-02339-RBW Document 9-5 Filed 04/21/2006 Page 23 of 62

Declaration of Linda S.
Thomas - Exhibit C

**United States Department of the Interior**
OFFICE OF THE SECRETARY
Washington, DC 20240



April 12, 2005

Melanie Sloan,
Executive Director
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle, N.W., 2ⁿᵈ Floor
Washington, D.C. 20036

Dear Ms. Sloan:

On March 18, 2005, you filed a Freedom of Information Act (FOIA) request, OS-2005-00296, seeking:

"'This request related to any contact, dating from January 1, 2001, to the present, that any office of the Department of the Interior may have had, including any and all field offices, with Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of the Speaker of the House, Senator Conrad Burns, and any employee in the office of Senator Burns, concerning any matter within the jurisdiction of the Bureau of Indian Affairs.

This request further includes any records, dating from January 1, 2001, to the present, from any office of the Department of the Interior including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs regarding the Agua Caliente Tribe of Palm Springs, California, the Tigua Tribe of El Paso, Texas, the Saginaw Chippewa Tribe of Michigan, the Mississippi Band of Choctaw Indians, the Coushatta Tribe of Louisiana, and the Jena Band of Choctaw Indians.

Specifically, we request the release of any records that reflect any contact between any and all offices of the Department of the Interior and any and all

1

individuals within those offices, including but not limited to Secretary Gale Norton and former Deputy Secretary J. Steven Griles, and the above-delineated individuals and entities, regardless of who initiated the contact, as well as the substance of all such contacts. We also request any documents, regardless of format, medium or physical characteristics, that were provided to any office of the Department of the Interior by Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the Council of Republicans for Environmental Advocacy, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, former General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of Senator Burns concerning any matter within the jurisdiction of the Bureau of Indian Affairs."

As you will recall, by telephone we agreed that, aside from the referral to BIA, which will answer you directly, within the Office of the Secretary you would accept appointment records for Secretary Norton and for former Deputy Secretary Griles from the beginning of such records until at least well into 2004, and for all of the parties and topics mentioned, and the index results of a search of the Secretary's Automated Correspondence Indexing System.

On March 21, 2005 we sent a partial response which included calendars for some Department of Interior officials, including Secretary Norton and former Deputy Secretary Griles, (from the beginning of their tenure through March 29, 2004, the records readily available because of previous FOIA requests), and which included material previously released under other FOIA requests addressing related subjects.

Today we are sending a second partial response which includes the indexes generated as a result of the searches of the Secretary's Automated Correspondence Indexing System.

Deleted from some of the documents enclosed, pursuant to Exemption 6 of the FOIA (5 U.S.C. § 552 (b)((6)), are the following categories of information pertaining to the individuals named in the records:

Names of constituents

Names of private citizens expressing views

Names of persons recommended for positions

2

3

**Name of person applying for position**
**Personal information about individuals**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The courts have held that the phrase "similar files" involves all information that applies to a particular person.

When disclosure of information about particular individuals is requested, the courts have decided that it is necessary for us to determine whether release of the information would constitute a clearly unwarranted invasion of the individual's privacy.

To make this determination, we are required to perform a "balancing test." This means that we must weigh the individual's right to privacy against the public's right to disclosure.

(1)    First, we must determine whether the individual has a discernable privacy interest in the information that has been requested.

(2)    Next, we must determine whether release of this information would serve "the public interest generally" (i.e., whether it would "shed light on the performance of the agency's statutory duties.")

(3)    Finally, we must determine whether the public interest in disclosure is greater than the privacy interest of the individual in withholding.

The information that we are withholding consists solely of the above categories of information pertaining to the individuals named in the records. The Office of the Secretary has determined that the individuals to whom this information pertains have a substantial privacy interest in it. Additionally, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties and that, on balance, therefore, the public interest to be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it.

In short, we have determined that release of the information that we have withheld would constitute a clearly unwarranted invasion of the privacy of these individuals, and that, therefore, it may be withheld pursuant to Exemption 6.

Robin Friedman, Attorney-Advisor in the Office of the Solicitor, was consulted in reaching these decisions. Sue Ellen Sloca, Office of the Secretary FOIA Officer, is responsible for making these decisions.

If you believe that any of these decisions to withhold information is incorrect, you

may file an appeal by writing to the FOIA Appeals Officer, U.S. Department of the Interior, 1849 C Street, NW, Mail Stop 7456, MIB, Washington, D.C. 20240. Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) after the date of our response (this letter.)  Your appeal letter must be marked, both on its envelope and at the top of its first page, with the legend "FREEDOM OF INFORMATION APPEAL."  Your appeal letter must be accompanied by a copy of your original FOIA request (a copy of which is enclosed with our response, for your convenience,) and a copy of this letter, along with a brief explanation of why you believe that the particular decision in question is in error.

The FOIA fee for the processing of your request within the Office of the Secretary is $28.14, calculated as follows:

¼ hour of Managerial Search Time        @ $ 12.25 per ¼ hour
28 Pages                                @ $ .13 per page

However, it is the policy of the Secretary of the Interior to not collect fees for the processing of FOIA requests when under $30.00 since the cost of collection would be greater than the fee collected. There is thus no fee at this time.  In addition, as noted above, your request for fee waiver is being considered.

This concludes the response within the Office of the Secretary, except for the calendars for Secretary Norton and former Deputy Secretary Griles for the time period March 30, 2004 through approximately December 31, 2004.  These documents are currently under review, and you may expect to receive them shortly.

If you have any questions regarding any of the issues discussed in this letter, you may contact me by phone at 202-208-6045, by fax at 202-219-2374, by e-mail at osfoia@nbc.gov, or by mail at U.S. Department of the Interior, MS 1413 MIB, Washington, D.C. 20240.  Within the Office of the Secretary, we are committed to providing you, our customer, with the highest quality of service possible.

Sincerely,

Sue Ellen Sloca
Office of the Secretary
FOIA Officer

4

*PRIVACY ACT notice:  Before you choose to contact us, electronically, there are a few things you should know.  The information you submit, including your electronic address, may be seen by various people.  We will scan a copy of your request into our electronic OS FOIA administrative/image file.  We will key the information that you provide to us into our electronic OS FOIA tracking file.  We may share it with other individuals, both within and without the Department, involved in Freedom of Information Act administration.  You may be contacted by any of these individuals.  In other limited circumstances, including requests from Congress or private individuals, we may be required by law to disclose some of the information you submit.  Also, e-mail is not necessarily secure against interception.  If your communication is very sensitive, or includes personal information like your bank account, charge card, or social security number, you might want to send it by postal mail, instead.*

Declaration of Linda S.
Thomas – Exhibit D



# United States Department of the Interior
OFFICE OF THE SECRETARY
Washington, DC 20240



April 27, 2005

Melanie Sloan,
Executive Director
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle, N.W., 2nd Floor
Washington, D.C. 20036

Dear Ms. Sloan:

On March 18, 2005, you filed a Freedom of Information Act (FOIA) request, OS-2005-00296, seeking:

"This request related to any contact, dating from January 1, 2001, to the present, that any office of the Department of the Interior may have had, including any and all field offices, with Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of the Speaker of the House, Senator Conrad Burns, and any employee in the office of Senator Burns, concerning any matter within the jurisdiction of the Bureau of Indian Affairs.

This request further includes any records, dating from January 1, 2001, to the present, from any office of the Department of the Interior including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs regarding the Agua Caliente Tribe of Palm Springs, California, the Tigua Tribe of El Paso, Texas, the Saginaw Chippewa Tribe of Michigan, the Mississippi Band of Choctaw Indians, the Coushatta Tribe of Louisiana, and the Jena Band of Choctaw Indians.

Specifically, we request the release of any records that reflect any contact between any and all offices of the Department of the Interior and any and all

1

individuals within those offices, including but not limited to Secretary Gale Norton and former Deputy Secretary J. Steven Griles, and the above-delineated individuals and entities, regardless of who initiated the contact, as well as the substance of all such contacts. We also request any documents, regardless of format, medium or physical characteristics, that were provided to any office of the Department of the Interior by Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the Council of Republicans for Environmental Advocacy, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, former General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of Senator Burns concerning any matter within the jurisdiction of the Bureau of Indian Affairs."

As you will recall, by telephone we agreed that, aside from the referral to BIA, which will answer you directly, within the Office of the Secretary you would accept appointment records for Secretary Norton and for former Deputy Secretary Griles from the beginning of such records until at least well into 2004, and for all of the parties and topics mentioned, and the index results of a search of the Secretary's Automated Correspondence Indexing System.

On March 21, 2005 we sent a partial response which included calendars for some Department of Interior officials, including Secretary Norton and former Deputy Secretary Griles, (from the beginning of their tenure through March 29, 2004, the records readily available because of previous FOIA requests), and which included material previously released under other FOIA requests addressing related subjects.

On April 12, 2005 we sent a second partial response which included the indexes generated as a result of the searches of the Secretary's Automated Correspondence Indexing System.

Today we are sending the final response, which includes calendar information for Secretary Norton and former Deputy Secretary Griles until near the end of 2004, comprising 18 documents with 630 total pages.

2.    Portions of some of these documents have been deleted, pursuant to Exemption 2 of the FOIA (5 U.S.C. § 552 (b)(2)).   The following category of information has been deleted:

2

**direct phone number of agency employees**

Exemption 2 exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Courts have interpreted the exemption to encompass two categories of information, internal matters of a relatively trivial nature ("low 2" information) and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2" information).

We have determined that direct phone numbers of agency employees belong to the first category of exemption 2 data: internal matters of a relatively trivial nature. The courts have held that such telephone numbers constitute trivial administrative matters with no genuine public interest. *Hale v. Department of Justice,* 973 F.2d 894, at 902 (10th Cir., 1992; *Voinche v. Federal Bureau of Investigation,* 46 F.Supp.2d, at 30 (D.D.C. 1999); *see,* FREEDOM OF INFORMATION ACT OVERVIEW (May 2002 ed.), at p. 135.

**A Portion has been deleted, pursuant to Exemption 5 of the FOIA (5 U.S.C. § 552 (b)(5)).**

Exemption 5 allows an agency to withhold "inter-agency" or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." (5 U.S.C. § 552 (b)(5)). As such, the privilege exempts those documents . . . normally privileged in the civil discovery context. *National Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132 (1975) (NLRB). The exemption incorporates several of these privileges from discovery in litigation, including the deliberative process privilege. *Id.* at 149.

The deliberative process privilege protects the decision-making process of government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fish bowl. *Mapother v. United States Dept of Justice,* 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing *Wolfe v. United States Dept of Health & Human Services,* 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc) (*Mapother*). Three policy purposes have been advanced by the courts as the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See, e.g., Russell v. United States Dept of the Air Force,* 682 F.2d 1045, 1048 (D.C. Cir. 1982) (*Russell*); *Coastal States Gas Corp. v. United States Dept of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege protects materials that are both predecisional and deliberative. *Mapother,* 3 F.3d at 1537; *Access Reports v. United States Dept of Justice,* 926 F.2d 1192, 1195 (D.C. Cir. 1991); *Vaughn v. Rosen,* 523 F.2d

1136, 1143-44 (D.C. Cir. 1975).  A predecisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the Agency.  Maricopa Audubon Society v. United States Forest Service, 108 F.3d 1089, 1093 (9th Cir. 1997).  A predecisional document is part of the deliberative process if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. Id.

That portion of the document that has been withheld pursuant to Exemption 5 is both predecisional and deliberative.  It contains recommendations, proposals, suggestions, and/or other subjective documents that reflect the personal opinions of its author.  It does not contain or represent formal or informal agency policies or decisions.  Furthermore, it is the result of frank and open discussions among employees of the Department of the Interior.  Public dissemination of this information would have a chilling effect on the agency's deliberative processes; it would expose the agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine its ability to perform its mandated functions.

**Portions of some of these documents have also been deleted, pursuant to Exemption 6 of the FOIA (5 U.S.C. § 552 (b)(6)).  The following categories of information pertaining to the individuals named in the records have been deleted:**

**home addresses**
**home and cell telephone numbers**
**personal information pertaining to families of individuals**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  The courts have held that the phrase "similar files" involves all information that applies to a particular person.

When disclosure of information about particular individuals is requested, the courts have decided that it is necessary for us to determine whether release of the information would constitute a clearly unwarranted invasion of the individual's privacy.

To make this determination, we are required to perform a "balancing test."  This means that we must weigh the individual's right to privacy against the public's

right to disclosure.

(1)     First, we must determine whether the individual has a discernable privacy interest in the information that has been requested.

(2)     Next, we must determine whether release of this information would serve "the public interest generally" (i.e., whether it would "shed light on the performance of the agency's statutory duties.")

(3)     Finally, we must determine whether the public interest in disclosure is greater than the privacy interest of the individual in withholding.

The information that we are withholding consists solely of the above categories of information pertaining to the individuals named in the records. The Office of the Secretary has determined that the individuals to whom this information pertains have a substantial privacy interest in it. Additionally, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties and that, on balance, the public interest to be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it.

In short, we have determined that release of the information that we have withheld would constitute a clearly unwarranted invasion of the privacy of these individuals, and that, therefore, it may be withheld pursuant to Exemption 6.

Timothy Murphy, Attorney-Advisor, in the Office of the Solicitor, was consulted in reaching this decision. Sue Ellen Sloca, Office of the Secretary FOIA Officer, is responsible for making this decision.

3.     **Appeal Rights**

If you believe that the decision to withhold this information is incorrect, you may file a FOIA appeal by writing to the FOIA Appeals Officer, U.S. Department of the Interior, 1849 C Street, NW, Mail Stop 7456, MIB, Washington, D.C. 20240. Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) after the date of our response (this letter). Your appeal letter must be marked, both on its envelope and at the top of its first page, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal letter must be accompanied by a copy of your original FOIA request (a copy of which is enclosed with our response, for your convenience), and a copy of this letter, along with a brief explanation of why you believe that this decision is in error.

5

9

The FOIA fee for the processing of your request within the Office of the Secretary is $10.45, calculated as follows:

| ¼ hour of Managerial Search Time | @ | $ 12.25 per ¼ hour |
| 1 CD Rom Disk | @ | $  2.00 per disk |

However, it is the policy of the Secretary of the Interior to not collect fees for the processing of FOIA requests when under $30.00 since the cost of collection would be greater than the fee collected. There is thus no fee at this time. In addition, as noted above, your request for fee waiver is being considered.

This concludes the response within the Office of the Secretary. (We are still conducting the search for your other pending FOIA request, OS-2005-0033l, and you should expect to hear from us shortly with respect to that FOIA request.)

If you have any questions regarding any of the issues discussed in this letter, you may contact me by phone at 202-208-6045, by fax at 202-219-2374, by e-mail at osfoia@nbc.gov, or by mail at U.S. Department of the Interior, MS 1413 MIB, Washington, D.C. 20240. Within the Office of the Secretary, we are committed to providing you, our customer, with the highest quality of service possible.

Sincerely,

Sue Ellen Sloca
Office of the Secretary
FOIA Officer

PRIVACY ACT notice: Before you choose to contact us, electronically, there are a few things you should know. The information you submit, including your electronic address, may be seen by various people. We will scan a copy of your request into our electronic OS FOIA administrative/image file. We will key the information that you provide to us into our electronic OS FOIA tracking file. We may share it with other individuals, both within and without the Department, involved in Freedom of Information Act administration. You may be contacted by any of these individuals. In other limited circumstances, including requests from Congress or private individuals, we may be required by law to disclose some of

7

the information you submit. Also, e-mail is not necessarily secure against interception. If your communication is very sensitive, or includes personal information like your bank account, charge card, or social security number, you might want to send it by postal mail, instead.

Case 1:05-cv-02339-RBW     Document 9-5     Filed 04/21/2006     Page 36 of 62

# CREW | citizens for responsibility and ethics in washington

April 5, 2005

By Email

Ms. Linda Thomas
Office of the Secretary
Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
email: osfoia@nbc.gov



Re: FOIA Request OS-2005-00296

Dear Ms. Thomas:

On March 18, 2005, Citizens for Responsibility and Ethics in Washington ("CREW") filed a Freedom of Information Act ("FOIA") request with the Department of the Interior (Request OS-2005-00296) seeking records, regardless of format and including electronic records and information, relating to the following:

[A]ny contact, dating from January 1, 2001, to the present, that any office of the Department of the Interior may have had, including any and all field offices, with Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the Council of Republicans for Environmental Advocacy, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman Tom DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of the Speaker of the House, Senator Conrad Burns, any employee in the office of Senator Burns, concerning any matter within the jurisdiction of the Bureau of Indian Affairs.

CREW's March 18, 2005 FOIA request also sought:

[A]ny records, dating from January 1, 2001, to the present, from any office

11 Dupont Circle, N.W., 2nd Floor · Washington, D.C. 20036
(o) 202.588.5565 (c) 202.841.5096

RECEIVED
APR - 5 2005
05-05-00331

Declaration of Linda S.
Thomas - Exhibit E

of the Department of the Interior, including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs regarding the Agua Caliente Tribe of Palm Spring, California, the Tigua Tribe of El Paso, Texas, the Saginaw Chippewa Tribe of Michigan, the Mississippi Band of Choctaw Indians, the Coushatta Tribe of Louisiana, and the Jena Band of Choctaw Indians.

By letter dated March 21, 2005, your office acknowledged receipt of CREW's FOIA request, and stated that you were sending CREW a partial response consisting of 218 documents. In a follow-up telephone conversation between Melanie Sloan and Sue Ellen Sloca, we were advised that the Department of the Interior ("DOI") had also produced certain travel records, and was sending some additional documents, which CREW has now received. In addition, your office stated it was searching the Secretary's Automated Correspondence Indexing system for correspondence between all the relevant parties named in CREW's FOIA request and would also provide CREW with certain additional calendar information.

In a subsequent telephone conversation, CREW also requested that DOI search electronic records for responsive information within the parameters of CREW's FOIA request. You indicated that, notwithstanding the language of our March 18, 2005 FOIA request specifying that the records we sought included electronic records, a request for such records should be considered as a new FOIA request in light of the prior discussions between our offices. While we do not agree that a new FOIA request is necessary, we are nevertheless submitting this letter outlining the additional documents we seek and ask that, if necessary, you consider this letter to constitute a FOIA request and process it accordingly. It is our understanding that even if deemed a new FOIA request, it will be combined with our March 18, 2005 FOIA request and processed simultaneously.

Specifically, CREW seeks all electronic records relating to any contact, dating from January 1, 2001, to the present, that any of the following individuals may have had with the individuals and entities outlined in our March 18, 2005 FOIA request relating to any matter within the jurisdiction of the Bureau of Indian Affairs, and all contacts the following individuals had with the six Indian Tribes listed in our request:

Secretary Gale Norton
William D. Bettenberg, Director, Office of Policy Analysis
James E. Carson, Associate Deputy Secretary
Tom Fulton, Deputy Assistant Secretary, Land and Minerals Management
J. Steven Griles, former Deputy Secretary
Kit Kimball, Director, Office of External and Intergovernmental Affairs
Ann Klee, Counselor to the Secretary
Michael Rossetti, Counselor to the Secretary
Lynn Scarlett, Assistant Secretary for Policy, Management and Budget
Brian Waldmann, Chief of Staff
Sue Ellen Woolridge, Deputy Chief of Staff

William G. Myers, III, Solicitor
Lawrence Jensen, Counsel, Office of the Solicitor
Mathew E. McKeown, Special Assistant, Office of the Solicitor
David W. Anderson, Assistant Secretary, Indian Affairs
Ross Swimmer, Special Trustee for Indian Affairs
George T. Skibine, Director, Office of Indian Gaming Management
Aurene Martin, Principal Deputy Assistant Secretary, Indian Affairs

In addition, to the extent not listed above, we seek all electronic records relating to the above-delineated contacts for the individuals who occupied the following positions in DOI's Bureau of Indian Affairs from January 1, 2001, to the present:

Director, IIT Office of American Indian Trust
Director, IAE Office of Audit and Evaluation
Deputy Director, IAE Office of Audit and Evaluation
Director, ISC Office of Self Governance
Compact Negotiation Manager, ISC Office of Self Governance
Compact Negotiation Specialist, ISC Office of Self Governance
Director, OIE Office of Indian Education Programs
Deputy Director, OIE Office of Indian Education Programs
Chief, 13 Branch of Management Information Services
Chief, 30 Division of Planning/Oversight and Evaluation
Chief, 30 Branch of Planning
Deputy Commissioner of Indian Affairs
Director, 120 Congressional and Legislative Affairs
Legislative Coordinator, 120 Congressional and Legislative Affairs
Director, 130 Indian Gaming Management Staff
Secretary, 130 Indian Gaming Management Staff
Management Analyst, 130 Indian Gaming Management Staff
Director, Office of Trust Responsibilities
Director, Office of Information Resources Management
Director, Office of Tribal Services
Secretary, Division of Tribal Government Services
Chief, Branch of Tribal Enrollment
Chief, Branch of Tribal Relations
Director, Office of Management and Administration
Director, Office of Economic Development

In addition, we request all documents, regardless of format, medium or physical characteristics, that relate in any way to a meeting Secretary Norton had on November 8, 2002, with Clint Bolick, Grover Norquist, Chip Mellor and Sue Ellen Wooldridge. Our request includes, but is not limited to, any telephone messages, voice mail messages, daily agenda and calendar information about this meeting, whether in-person or over the telephone, agendas for this meeting, minutes of this meeting, e-mail regarding this

meeting, e-mail or facsimiles sent as a result of this meeting, and any transcripts or notes of this meeting.

If it is DOI's position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). Please refer to our FOIA request of March 18, 2004, for an explanation of what the Vaughn index must include.

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. §552(b) ("Any reasonably segregable portions of a record shall be provided to any person requesting such records after deletion of the portions which are exempt . . ."). For a further explanation of the agency's responsibilities in this regard, please see CREW's March 18, 2005 FOIA request.

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the process used by the Department of the Interior to approve tribal bids for casinos on Indian lands.

CREW is a non-profit corporation, organized under section 501(C)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request us not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases. Under these circumstances, CREW fully satisfies the criteria for a fee waiver.

Please respond to this request in writing within twenty (20) days as required under 5 U.S.C. §552(a)(6)(A)(i). If all of the requested documents are not available within that time period, CREW requests that you provide it with all requested documents or portions of documents that are available within that time period.

If you have any questions about this request, or foresee problems in releasing fully the requested records within the 20-day period, please call me within that time period, at (202) 588-5565. Also, if CREW's request for a fee waiver is not granted in full, please

contact our office immediately upon making such a determination. Please send the requested documents to Melanie Sloan, Citizens for Responsibility and Ethics in Washington, 11 Dupont Circle, N.W., 2nd Floor, Washington, D.C. 20036.

Finally, we really appreciate the timeliness and professional courtesy your office has shown to date, and look forward to working with you in a continued cooperative manner.

Sincerely,

Anne L. Weismann
Staff Attorney



alwhome@aol.com
04/05/2005 12:31 PM

To: OSFOIA/NBC/OS/DOI@DOI
cc:
Subject: Follow-up to FOIA Request OS-2005-00296

Linda Thomas:  as requested I am emailing an update to our FOIA Request OS-2005-00296 outlining the additional search we are seeking.  Thank you for your prompt attention to this matter.  Anne Weismann on behalf of CREW interiolcia2.final.wpd



**United States Department of the Interior**

OFFICE OF THE SECRETARY
Washington, DC 20240



August 24, 2005

Ms. Melanie Sloan
Anne L. Weismann, Staff Attorney
CREW (Citizens for Responsibility and Ethics in Washington)
11 DuPont Circle, N.W., 2ⁿᵈ Floor
Washington, D.C. 20036

Dear Ms. Sloan and Ms. Weismann:

On April 5, 2005, you filed a Freedom of Information request, **OS-2005-00331**, as a follow-up to your current FOIA (OS-2005-00296), requesting some new information:

"All electronic records relating to any contact, dating from January 1, 2001, to the present, that any of the following individuals

[Jack Abramoff,
any employee of the firm Greenberg Traurig,
any employee of the firm Preston Gates,
Michael Scanlon, any officer or
employee of Capitol Campaign Strategies,
James Dobson,
Ralph Reed,
Scott Reed,
Italia Federici,
any officer or employee of the Council of Republicans for
Environmental Advocacy,
any officer or employee of the National Center of Public Policy
Research,
Grover Norquist,
Any officer or employee of Americans for Tax Reform,
General Services Administration Chief of Staff David Safavian,
Congressman Robert Ney,
any employee in the office of Congressman Ney,
Congressman Tom DeLay,

1

Declaration of Linda S.
Thomas - Exhibit F

any employee in the office of Congressman Tom DeLay
or in the office of the Majority Leader,
Speaker of the House Dennis Hastert,
any employee in the office of Congressman Hastert or in the office
of the Speaker of the House,
Senator Conrad Burns, any employee in the office of Senator Burns,

and …
the Agua Caliente Tribe of Palm Spring, California,
the Tigua Tribe of El Paso, Texas,
the Saginaw Chippewa Tribe of Michigan,
the Mississippi Band of Choctaw Indians,
the Coushatta Tribe of Louisiana, and
the Jena Band of Choctaw Indians

[had] with any of the following:

Secretary Gale Norton
William D. Betterberg, Director, Office of Policy Analysis
James E. Carson, Associate Deputy Secretary
Tom Fulton, Deputy Assistant Secretary, Land and Minerals
Management
J. Steven Griles, former Deputy Secretary
Kit Kimball, Director, Office of External and Intergovernmental
Affairs
Ann Klee, Counselor to the Secretary
Michael Rossetti, Counselor to the Secretary
Lynn Scarlett, Assistant Secretary for Policy, Management and
Budget
Brian Waidmann, Chief of Staff
Sue Ellen Woolridge, Deputy Chief of Staff
William G. Myers, III, Solicitor
Lawrence Jensen, Counsel, Office of the Solicitor
Mathew E. McKeown, Special Assistant, Office of the Solicitor
David W. Anderson, Assistant Secretary, Indian Affairs
Ross Swimmer, Special Trustee for Indian Affairs
George T. Skibine, Director, Office of Indian Gaming Management
Aurene Martin, Principal Deputy Assistant Secretary, Indian Affairs

[And with]:

… the individuals who occupied the following positions in DOI's
Bureau of Indian Affairs from January 1, 2001, to the present:

2

3

Director, IIT Office of American Indian Trust
Director, IAE Office of Audit and Evaluation
Deputy Director, IAE Office of Audit and Evaluation
Director, ISC Office of Self Governance
Compact Negotiation Manager, ISC Office of Self Governance
Compact Negotiation Specialist, ISC Office of Self Governance
Director, OIE Office of Indian Education Programs
Deputy Director, OIE Office of Indian Education Programs
Chief, 13 Branch of Management Information Services
Chief, 30 Division of Planning/Oversight and Evaluation
Chief, 30 Branch of Planning
Deputy Commissioner of Indian Affairs
Director, 120 Congressional and Legislative Affairs
Legislative Coordinator, 120 Congressional and Legislative Affairs
Director, 130 Indian Gaming Management Staff
Secretary, 130 Indian Gaming Management Staff
Management Analyst, 130 Indian Gaming Management Staff
Director, Office of Trust Responsibilities
Director, Office of Information Resources Management
Director, Office of Tribal Services
Secretary, Division of Tribal Government Services
Chief, Branch of Tribal Enrollment
Chief, Branch of Tribal Relations
Director, Office of Management and Administration
Director, Office of Economic Development

In addition, we request all documents, regardless of format, medium or physical characteristics, that relate in any way to a meeting Secretary Norton had on November 8, 2002, with Clint Bolick, Grover Norquist, Chip Mellor and Sue Ellen Wooldridge. Our request includes, but is not limited to, any telephone messages, voice mail messages, daily agenda and calendar information about this meeting, whether in-person or over the telephone, agendas for this meeting, minutes of this meeting, e-mail regarding this meeting, e-mail or facsimiles sent as a result of this meeting, and any transcripts or notes of this meeting."

On April 5, 2005 we acknowledged your request, advised you of your fee status, and informed you that we were initiating a search within the Office of the Secretary for responsive documents, as well as making a referral to BIA for their direct response to you. Subsequent to that letter, we made an additional referral to the Department of Interior Solicitor's Office for their direct response to you.

4

Today we are ready to respond to your request. We are enclosing 11 documents consisting of 54 pages as TIFF Images on 1 CD Rom Disc.

**Also deleted from some of the documents enclosed, pursuant to Exemption 6 of the FOIA (5 U.S.C. § 552 (b)(6)), are the following categories of information pertaining to the individuals named in the records:**

**Names of private citizens expressing unsolicited views**

**Names of persons being recommended for positions**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The courts have held that the phrase "similar files" involves all information that applies to a particular person.

When disclosure of information about particular individuals is requested, the courts have decided that it is necessary for us to determine whether release of the information would constitute a clearly unwarranted invasion of the individual's privacy.

To make this determination, we are required to perform a "balancing test." This means that we must weigh the individual's right to privacy against the public's right to disclosure.

(1)    First, we must determine whether the individual has a discernable privacy interest in the information that has been requested.

(2)    Next, we must determine whether release of this information would serve "the public interest generally" (i.e., whether it would "shed light on the performance of the agency's statutory duties").

(3)    Finally, we must determine whether the public interest in disclosure is greater than the privacy interest of the individual in withholding.

The information that we are withholding consists solely of the above categories of information pertaining to the individuals named in the records. The Office of the Secretary has determined that the individuals to whom this information pertains have a substantial privacy interest in it. Additionally, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties and that, on balance, the public interest to be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it.

In short, we have determined that release of the information that we have withheld would constitute a clearly unwarranted invasion of the privacy of these individuals, and that, therefore, it may be withheld pursuant to Exemption 6.

Robin Friedman, Attorney-Advisor in the Office of the Solicitor, was consulted in reaching these decisions. Sue Ellen Sloca, Office of the Secretary FOIA Officer, is responsible for making these decisions.

If you believe that any of these decisions to withhold information is incorrect, you may file a FOIA appeal by writing to the FOIA Appeals Officer, U.S. Department of the Interior, 1849 C Street, NW, Mail Stop 7456, MIB, Washington, D.C. 20240. Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) from your receipt of these documents. Your appeal letter must be marked, both on its envelope and at the top of its first page, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal letter must be accompanied by a copy of your original FOIA request (a copy of which is enclosed with our response, for your convenience) and a copy of this letter, along with a brief explanation of why you believe that the particular decision in question is in error.

The FOIA fee for the processing of your request within the Office of the Secretary is $69.60, calculated as follows:

2 hours of Professional Search Time    @ $  8.45 per ¼ hour

1 CD Rom disk                          @ $  2.00 per disk

However, as an "other-type requester", you are entitled to up to two hours of search time without charge. (See 43 C.F.R. 2.17(a)(4).) That leaves only the $2.00 charge for the CD Rom Disk. However, as a matter of policy the Department of Interior does not charge for the processing of FOIA fees when the cost is below $30.00, since the cost of collection exceeds the amount collected. Therefore, your fee is $0.00.

This concludes the response within the Office of the Secretary.

If you have any questions regarding any of the issues discussed in this letter, you may contact Linda Thomas by phone at 202-208-7294, by fax at 202-219-2374, by e-mail at osfoia@nbc.gov, or by mail at U.S. Department of the Interior, MS 1413 MIB, Washington, D.C. 20240. Within the Office of the Secretary, we are committed to providing you, our customer, with the highest quality of service possible.

5

9

*PRIVACY ACT notice: Before you choose to contact us, electronically, there are a few things you should know. The information you submit, including your electronic address, may be seen by various people. We will scan a copy of your request into our electronic OS FOIA administrative/image file. We will key the information that you provide to us into our electronic OS FOIA tracking file. We may share it with other individuals, both within and without the Department, involved in Freedom of Information Act administration. You may be contacted by any of these individuals. In other limited circumstances, including requests from Congress or private individuals, we may be required by law to disclose some of the information you submit. Also, e-mail is not necessarily secure against interception. If your communication is very sensitive, or includes personal information like your bank account, charge card, or social security number, you might want to send it by postal mail, instead.*

Enclosures

Sincerely,

R. K. Wilson

Sue Ellen Sloca
Office of the Secretary
FOIA Officer

Declaration of Linda S.
Thomas - Exhibit G



"Anne Weismann"
<aweismann@citizensf
orethics.org>
09/26/2005 08:55 AM

To: OSFOIA/NBC/OS/DOI@DOI
cc:
Subject: Attn: Linda Thomas

Linda, per our conversation, CREW is requesting under the Freedom of Information Act additional documents that were provided to other FOIA requesters in response to the following FOIA requests:

OS-2005-00-228
OS-2005-00-249
OS-2005-00-272
OS-2005-00-413

For the reasons set forth in our earlier related FOIA requests, we are also requesting a waiver of the fees associated with the processing of this request. If there are any questions, please contact me at 202-588-5565.

Thank you for your prompt attention to this matter.

Anne Weismann

Declaration of Linda S.
Thomas – Exhibit H



United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240



September 27, 2005

Ms. Anne L. Weismann, Staff Attorney
CREW (Citizens for Responsibility and Ethics in Washington)
11 DuPont Circle, N.W., 2nd Floor
Washington, D.C. 20036

Dear Ms. Weismann:

On September 26, 2005, you filed a Freedom of Information (FOIA) request seeking:

"Additional documents that were provided to other FOIA requesters in response to the following FOIA requests:

OS-2005-00-228
OS-2005-00-249
OS-2005-00-272
OS-2005-00-413."

These particular records were selected because of our phone conversations in which you asked for any documents which your organization had not yet received but which had been sent to a particular author of a news story. An examination of our records identified the above FOIA requests as those containing such records.

With respect to your request:

1. We have classed your request as an "other-use" request. This means that we have determined that it is neither a "commercial use request" nor one placed by a member of the news media or a representative of an educational or non-commercial scientific institution. As an "other-use requester", you are entitled to receive 2 hours of search time and 100 pages of duplication of responsive records without charge before being asked to pay for document search and reproduction. Additionally, the Department of the Interior does not bill requesters for FOIA fees incurred in processing "other-use requests" when their fees do not exceed $30.00 after the subtraction of their entitlements, because the cost of collection would be

1

after the subtraction of their entitlements, because the cost of collection would be greater than the fee collected. (See 43 CFR § 2.18(a). Because we are able to make an immediate final response which results in a fee below $30.00, it is not necessary to make a determination regarding fee waiver.

2. In final response to your request, we are enclosing 4 Folders containing a total of 146 documents consisting of 659 total pages as TIFF Images on 1 CD Rom Disc.

**Portions of some of these documents have been deleted, pursuant to Exemption 2 of the FOIA (5 U.S.C. § 552 (b)(2)). The following category of information has been deleted:**

**Agency credit card numbers**
**Conference call telephone numbers with pin numbers**
**Names of security personnel**

Exemption 2 exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Courts have interpreted the exemption to encompass two categories of information, internal matters of a relatively trivial nature ("low 2" information) and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2" information).

The Department of Justice has determined that agency credit card numbers belong to the category of information likely to result in harmful circumvention under "high 2". Specifically, the Department of Justice lists agency credit card numbers as an example of "high 2" information. (Freedom of Information Act Guide and Privacy Act Overview, 206, (May 2004 Edition.)) Conference call codes are access codes linked to telephone conference calls scheduled at standard, fixed intervals could allow individuals not authorized to participate in these calls to eavesdrop on them, and so circumvent security precautions established to protect the privacy of agency deliberations. Therefore, we have determined that fixed conference call codes also belong to the category of information likely to result in harmful circumvention under "high 2." Finally, the individual names of law enforcement officials including security officers also are protected from release by Exemption 2, because they are internal personnel practices of an agency, the release of which could provide an opportunity for circumvention of the law.

---

[1] Generally, access codes are variable, that is, they are viable only for a given conference call at a specified time on a specified date. The release of variable access codes, after their expiration, would not risk circumvention of a legal requirement because none of these numbers could be used to obtain access to a telephone conference call.

2

**Exemption 4 of the FOIA (5 U.S.C. § 552 (b)(4)):**

**A portion of one of these documents has also been deleted pursuant to**

**Bank account information on bank draft check**

Exemption 4 protects trade secrets and commercial or financial information, obtained from a person, which is privileged or confidential. This exemption is intended to protect both the interests of commercial entities that submit proprietary information to the Government and the interests of the Government in receiving continued access to it. Information is considered "confidential" if disclosure of it "is likely to cause substantial harm to the competitive position of the person from whom the information was obtained." National Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974).

The organization listed on the check, "Bush-Cheney'04, Inc.", is considered a "person," under the law, because the term "person" includes a wide range of entities including corporations. This corporation has a clear commercial interest in the safeguarding of its bank account information. This information represents proprietary financial information which would not customarily be provided to the public. Public release of it in response to this FOIA request would cause potential harm to its security interests in safeguarding its financial information.

**In addition, portions of some of these documents have been deleted, pursuant to Exemption 5 of the FOIA (5 U.S.C. § 552 (b)(5)).**

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552 (b)(5). As such, the privilege exempts those documents . . . normally privileged in the civil discovery context. National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132 (1975) (NLRB). The exemption incorporates several of these privileges from discovery in litigation, including the deliberative process privilege. Id. at 149.

The deliberative process privilege protects the decision-making process of government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fish bowl. Mapother v. United States Dept. of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing Wolfe v. United States Dept. of Health & Human Serv., 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)) (Mapother). Three policy purposes have been advanced by the courts as the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and

(3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. See, e.g., Russell v. United States Dept. of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (Russell); Coastal States Gas Corp. v. United States Dept. of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege protects materials that are both predecisional and deliberative. Mapother, 3 F.3d at 1537; Access Reports v. United States Dept of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991); Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). A predecisional document is one prepared to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Maricopa Audubon Society v. United States Forest Serv., 108 F.3d 1089, 1093 (9th Cir. 1997). A predecisional document is part of the deliberative process if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. Id.

The portions of the documents that have been withheld pursuant to the deliberative process aspect of Exemption 5 are both predecisional and deliberative. They contain recommendations, proposals, suggestions, and/or other subjective documents that reflect the personal opinions of their authors. They do not contain or represent formal or informal agency policies or decisions. Furthermore, they are the result of frank and open discussions among employees of the Department of the Interior. Public dissemination of this information would have a chilling effect on the agency's deliberative processes; it would expose the agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine its ability to perform its mandated functions.

In addition, some of the withheld material constitutes privileged communications between attorney and client. Exemption 5 permits the withholding of "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." See, e.g., Mead Data Central, Inc. v. Dep't of The Air Force, 566 F.2d at 252-63 (D.C. Cir. 1977).

Finally, portions of some of these documents have been deleted pursuant to Exemption 6 of the FOIA (5 U.S.C. § 552 (b)(6)). The following categories of information pertaining to the individuals named in the records have been deleted:

Cellular telephone numbers    Home telephone numbers

4

5

**Personal email addresses**
**Home addresses**
**Social security number**
**Personal information about government employees**
**Personal FAX number**
**Home addresses**
**Employment information including resignation information**
**Names of constituents**
**Names of private citizens expressing views**
**Names of persons recommended for positions**
**Name of person applying for position**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The courts have held that the phrase "similar files" involves all information that applies to a particular person.

When disclosure of information about particular individuals is requested, the courts have decided that it is necessary for us to determine whether release of the information would constitute a clearly unwarranted invasion of the individual's privacy.

To make this determination, we are required to perform a "balancing test." This means that we must weigh the individual's right to privacy against the public's right to disclosure.

(1)    First, we must determine whether the individual has a discernable privacy interest in the information that has been requested.

(2)    Next, we must determine whether release of this information would serve "the public interest generally" (i.e., whether it would "shed light on the performance of the agency's statutory duties").

(3)    Finally, we must determine whether the public interest in disclosure is greater than the privacy interest of the individual in withholding.

The information that we are withholding consists solely of the above categories of information pertaining to the individuals named in the records. The Office of the Secretary has determined that the individuals to whom this information pertains have a substantial privacy interest in it. Additionally, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties and that, on balance, therefore, the public interest to

9

be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it.

In short, we have determined that release of the information that we have withheld would constitute a clearly unwarranted invasion of the privacy of these individuals, and that, therefore, it may be withheld pursuant to Exemption 6.

Timothy Murphy, Robin Friedman, and Don Harris, Attorney-Advisors in the Office of the Solicitor, were consulted in reaching these decisions. Sue Ellen Sloca, Office of the Secretary FOIA Officer, is responsible for making these decisions.

If you believe that any of these decisions to withhold information is incorrect, you may file a FOIA appeal by writing to the FOIA Appeals Officer, U.S. Department of the Interior, 1849 C Street, NW, Mail Stop 7456, MIB, Washington, D.C. 20240. Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) from your receipt of these documents. Your appeal letter must be marked, both on its envelope and at the top of its first page, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal letter must be accompanied by a copy of your original FOIA request (a copy of which is enclosed with our response, for your convenience) and a copy of this letter, along with a brief explanation of why you believe that the particular decision in question is in error.

The FOIA fee for the processing of your request within the Office of the Secretary is $19.50, calculated as follows:

| ¾ | hour of Professional Search Time | $ | @ | 8.75 per ¼ hour |
| 1 | CD Rom disk | $ | @ | 2.00 per disk |

However, as an "other-type requester", you are entitled to up to two hours of search time without charge. (See 43 C.F.R. § 2.17(a)(4).) That leaves only the $2.00 charge for the CD Rom Disk. However, as a matter of policy the Department of Interior does not charge for the processing of FOIA fees when the cost is below $30.00, since the cost of collection exceeds the amount collected. Therefore, your fee is $0.00. As noted above, this renders unnecessary the consideration of your request for fee waiver.

This concludes the response within the Office of the Secretary.

If you have any questions regarding any of the issues discussed in this letter, you may contact Linda Thomas by phone at 202-208-7294, by fax at 202-219-2374, by e-mail at osfoia@nbc.gov, or by mail at U.S. Department of the Interior, MS

1413 MIB, Washington, D.C. 20240. Within the Office of the Secretary, we are committed to providing you, our customer, with the highest quality of service possible.

Sincerely,

Sue Ellen Sloca
Office of the Secretary
FOIA Officer

Enclosures

*PRIVACY ACT notice: Before you choose to contact us, electronically, there are a few things you should know. The information you submit, including your electronic address, may be seen by various people. We will scan a copy of your request into our electronic OS FOIA administrative/image file. We will key the information that you provide to us into our electronic OS FOIA tracking file. We may share it with other individuals, both within and without the Department, involved in Freedom of Information Act administration. You may be contacted by any of these individuals. In other limited circumstances, including requests from Congress or private individuals, we may be required by law to disclose some of the information you submit. Also, e-mail is not necessarily secure against interception. If your communication is very sensitive, or includes personal information like your bank account, charge card, or social security number, you might want to send it by postal mail, instead.*

7

Declaration of Linda S.
Thomas - Exhibit I



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240



April 19, 2006

VIA FEDERAL EXPRESS (Overnight)
Ms. Anne L. Weismann, Staff Attorney
CREW (Citizens for Responsibility and Ethics in Washington)
11 DuPont Circle, N.W., 2nd Floor
Washington, D.C. 20036

Dear Ms. Weismann:

On September 26, 2005, you filed a Freedom of Information (FOIA) request, **OS-2005-00669**, seeking:

"Additional documents that were provided to other FOIA requesters in response to the following FOIA requests:

OS-2005-00-228
OS-2005-00-249
OS-2005-00-272
OS-2005-00-413."

You identified those particular records based upon the recommendation of FOIA processor Linda Thomas. Ms. Thomas had indicated to you that those records constituted the balance of the documents that were provided to Susan Schmidt of the Washington Post, but not to your organization. On September 27, 2005, we sent a final response to you consisting of the records that had been released under those FOIA numbers.

On April 12, 2005, in the course of reviewing the documents that we provided to you, Ms. Thomas realized that she had inadvertently failed to recommend that you also request the second partial response to FOIA number OS-2005-00208. At the time, she mistakenly believed that the documents from the second partial response to that FOIA request were included in the documents already released to you.

Therefore, we are today amending our final response of September 27, 2005, to include these additional documents.

Enclosed please find an additional 234 documents containing a total of 1575 pages, all as TIFF images on 1 CD ROM disk. This brings the total number of documents and pages released to you under this FOIA request to 380 documents consisting of a total of 2234 pages. As you know, these additional documents, like

the others you received under OS-2005-00669, were previously released under earlier FOIA requests submitted by Ms. Schmidt.

**Portions of some of these documents have been deleted, pursuant to Exemption 2 of the FOIA (5 U.S.C. § 552 (b)(2)). The following category of information has been deleted:**

### Cellular Telephone Numbers

Two courts have held that cellular telephone numbers constitute trivial administrative matters with no genuine public interest. Hale v. Department of Justice, 973 F.2d 894, 902 (10th Cir., 1992); Voinche v. Federal Bureau of Investigations, 46 F.Supp.2d 26, 30 (D.D.C. 1999). The redacted information pertains to the numbers assigned to the cellular phone numbers provided to federal employees by the government. The release of this information would not shed significant light on any agency personnel rule or practice; nor does the public have a substantial interest in the redacted information. Finally, the information redacted bears no relation to the substantive contents of the records released. Therefore, we have determined that government cellular telephone numbers are withholdable under Exemption 2.

**Portions of these documents have been deleted, pursuant to Exemption 5 of the FOIA (5 U.S.C. § 552 (b)(5)).**

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552 (b)(5). As such, the privilege exempts those documents . . . normally privileged in the civil discovery context. National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132 (1975) (NLRB). The exemption incorporates several of these privileges from discovery in litigation, including the deliberative process privilege. Id. at 149.

The deliberative process privilege protects the decision-making process of government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fish bowl. Mapother v. United States Dept. of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing Wolfe v. United States Dept. of Health & Human Serv., 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)) (Mapother). Three policy purposes have been advanced by the courts as the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.

See, e.g., Russell v. United States Dept. of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (Russell); Coastal States Gas Corp. v. United States Dept. of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege protects materials that are both predecisional and deliberative. Mapother, 3 F.3d at 1537; Access Reports v. United States Dept. of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991); Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). A predecisional document is one prepared to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Maricopa Audubon Society v. United States Forest Serv., 108 F.3d 1089, 1093 (9th Cir. 1997). A predecisional document is part of the deliberative process if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. Id.

The portions of the documents that have been withheld pursuant to Exemption 5 are both predecisional and deliberative. They contain recommendations, proposals, suggestions, and/or other subjective documents that reflect the personal opinions of their authors. They do not contain or represent formal or informal agency policies or decisions. Furthermore, they are the result of frank and open discussions among employees of the Department of the Interior. Public dissemination of this information would have a chilling effect on the agency's deliberative processes; it would expose the agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine its ability to perform its mandated functions.

You may note that some of the documents are also labeled as attorney-client or attorney work product. These are two more categories of exempt material under the Freedom of Information Act. Attorney client material concerns "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." Mead Data Cent., Inc. v. United States Dep't of the Air Force, 556 F.2d 242, 252 (D.C. Cir. 1977). Although it fundamentally applies to facts divulged by a client to his attorney, this privilege also encompasses any opinions given by an attorney to the client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. See, e.g., McElearn v. United States Dep't of Justice, No. 97-7831, 1999 WL 791680, at *7 (S.D.N.Y. Sept. 30, 1999). The U.S. Supreme Court has emphasized the public policy underlying this legal principle, "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see also FOIA Update,

3

Vol. VI, No. 2, at 3–4 ("OIP Guidance: The Attorney Client Privilege"). It has been held that confidentiality may be inferred when the communications suggest that "the government is dealing with its attorneys as would any private party seeking advice to protect personal interests." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980).

The attorney work product material covers any documents which were created by an attorney in contemplation of litigation. See Hickman v. Taylor, 329 U.S. 495, 509-10 (1947); Fed. R. Civ. P. 26(b)(3) (codifying privilege in Federal Rules of Civil Procedure). There is no requirement that litigation actually occur. An example is in Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1962). Such material is likewise exempt from disclosure under the provisions of the Freedom of Information Act, Exemption 5.

Regarding those documents responsive to this FOIA, all attorney work product material and attorney-client material is also part of the deliberative process that the Department of the Interior personnel engaged in during the processing of the matters before it. The attorney-client or attorney work product categorization of some of the documents is not cited as the only reason for withholding some documents, but is in addition to the deliberative process character of those documents.

**Portions of some of these documents have also been deleted, pursuant to Exemption 6 of the FOIA (5 U.S.C. § 552 (b)(6)). The following categories of information pertaining to the individuals named in the records have been deleted:**

**Home addresses**

**Cellular telephone numbers**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The courts have held that the phrase "similar files" involves all information that applies to a particular person. When disclosure of information about particular individuals is requested, the courts have decided that it is necessary for us to determine whether release of the information would constitute a clearly unwarranted invasion of the individual's privacy.

To make this determination, we are required to perform a "balancing test." This means that we must weigh the individual's right to privacy against the public's right to disclosure.

4

5

(1)    First, we must determine whether the individual has a discernable privacy interest in the information that has been requested.

(2)    Next, we must determine whether release of this information would serve "the public interest generally" (i.e., whether it would "shed light on the performance of the agency's statutory duties").

(3)    Finally, we must determine whether the public interest in disclosure is greater than the privacy interest of the individual in withholding.

The information that we are withholding consists solely of the above categories of information pertaining to the individuals named in the records. The Office of the Secretary has determined that the individuals to whom this information pertains have a substantial privacy interest in it. Additionally, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties and that, on balance, therefore, the public interest to be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it.

In short, we have determined that release of the information that we have withheld would constitute a clearly unwarranted invasion of the privacy of these individuals, and that, therefore, it may be withheld pursuant to Exemption 6.

Donald S. Harris, Attorney-Advisor in the Office of the Solicitor, was consulted when these documents were originally reviewed. Sue Ellen Sloca, Office of the Secretary FOIA Officer, is responsible for making these decisions.

If you believe that the decision to withhold this information is incorrect, you may file a FOIA appeal by writing to the FOIA Appeals Officer, U.S. Department of the Interior, 1849 C Street, NW, Mail Stop 7456, MIB, Washington, D.C. 20240. Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) after the date of your receipt of these documents. Your appeal letter must be marked, both on its envelope and at the top of its first page, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal letter must be accompanied by a copy of your original FOIA request (a copy of which is enclosed with our response, for your convenience), and a copy of this letter, along with a brief explanation of why you believe that this decision is in error.

Any fee for the processing of this amended portion of your request is waived because it is below the threshold of $30.00, and thus not chargeable as a matter of policy by the Department of the Interior.

9

This concludes the amended response to your request.

If you have any questions regarding any of the issues discussed in this letter, you may contact Linda Thomas by phone at 202-208-7294, by fax at 202-219-2374, by e-mail at osfoia@nbc.gov, or by mail at U.S. Department of the Interior, MS 1413 MIB, Washington, D.C. 20240. Within the Office of the Secretary, we are committed to providing you, our customer, with the highest quality of service possible.

Sincerely,

*Ray J. McInerney*

Ray J. McInerney
(Acting) OS FOIA Team Leader
for
Sue Ellen Sloca
OS FOIA Officer

Copy to, without enclosures, via regular mail:
Hannah Chanoine, DOJ Attorney
Darrell Strayhorn, Departmental FOIA Appeals Officer (handcarried)

Enclosures

*PRIVACY ACT notice: Before you choose to contact us, electronically, there are a few things you should know. The information you submit, including your electronic address, may be seen by various people. We will scan a copy of your request into our electronic OS FOIA administrative/image file. We will key the information that you provide to us into our electronic OS FOIA tracking file. We may share it with other individuals, both within and without the Department, involved in Freedom of Information Act administration. You may be contacted by any of these individuals. In other limited circumstances, including requests from Congress or private individuals, we may be required by law to disclose some of the information you submit. Also, e-mail is not necessarily secure against interception. If your communication is very sensitive, or includes personal information like your bank account, charge card, or social security number, you might want to send it by postal mail, instead.*

# FedEx. US Airbill

Express

Tracking Number: 8554 1494 3579

**1 From**  Date 4/19/06
Sender's Name: Linda S. Thomas    Phone (202) 208-7394
Company: DOT OST FOIA
Address: 1849 C St. N.W. M1B 1413
City Washington    State DC    ZIP 20240

**2 Your Internal Billing Reference**

**3 To**
Recipient's Name: Ms. Anne L. Weismann    Phone (202) 588-5565
Company: CREW (Citizens for Responsibility + Ethics in Wash.)
Recipient's Address: 11 DuPont Circle N.W., 2nd Floor
City Washington    State D.C.    ZIP 20036

**4a Express Package Service**
**4b Express Freight Service**

**5 Packaging**

**6 Special Handling**

**7 Payment Bill**

**8 NEW Residential Delivery Options**

Total Weight    Total Declared Value $

Tracking Number: 336 4 - 8888 - 5

025

Sender's Copy

RETAIN THIS COPY FOR YOUR RECORDS.