**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
CITIZENS FOR RESPONSIBILITY AND        :
ETHICS IN WASHINGTON                   :
11 Dupont Circle, N.W.                 :
Washington, D.C.  20036                :
                                       :
            Plaintiff,                 :
                                       :
    v.                                 :   Civil Action No. 05-02339 (RBW)
                                       :
U.S. DEPARTMENT OF THE INTERIOR        :
1849 C Street, N.W.                    :
Washington, D.C.  20240                :
                                       :
            Defendant.                 :
_____:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**FOR PARTIAL JUDGMENT ON THE PLEADINGS AND**
**PARTIAL SUMMARY JUDGMENT**

INTRODUCTION

Since the fall of 2004, the story of how former high-powered GOP lobbyist and now

convicted felon Jack Abramoff bilked millions of dollars from Indian tribes that operate

gambling casinos has developed into a scandal of major proportions, reaching the ranks of top

Republican congressional leaders, power brokers in the conservative movement, and high-level

political appointees within the Executive Branch, including the U.S. Department of the Interior

("DOI").  Citizens for Responsibility and Ethics in Washington ("CREW"), plaintiff in this

action, has led the effort to expose this multi-leveled corruption to the light of public scrutiny.

Toward that end, CREW filed successive Freedom of Information Act ("FOIA") requests with

DOI designed to ferret out the facts and, specifically, the role that DOI officials may have played

in this scandal.

The DOI, for its part, has seemingly stymied CREW's efforts to learn the truth.  Despite the growing evidence uncovered by the news media and the U.S. Senate Indian Affairs Committee during its multiple hearings on the Indian gaming scandal that top officials at DOI were in frequent communication by email with Mr. Abramoff and his partners in crime, DOI has refused to conduct an adequate search for the email.  Instead, DOI claims that its prior searches were adequate, even though DOI failed to uncover known email documents and ignored large pockets of documents that were unquestionably responsive to CREW's requests.  Moreover, notwithstanding DOI's promise at the outset that it would provide CREW immediately with all responsive documents DOI had already provided other FOIA requesters, DOI did not actually make those disclosures until months later, and then only after requiring CREW to make another FOIA.  Equally as egregious, in April 2006, after the commencement of this lawsuit, CREW was still receiving documents from DOI that were responsive to its initial request filed over one year earlier on March 18, 2005.

Despite these clear deficiencies, CREW attempted over and over again to work with DOI at the administrative level, filing repeated FOIA requests when DOI took the unreasonable position that CREW's prior requests were not sufficiently broad to encompass what CREW had been expressly seeking from the outset.  During this process CREW relied, to its detriment, on representations that DOI made regarding the adequacy of the agency's search, the non-existence of additional responsive documents, and DOI's repeated promises that if CREW filed yet one more FOIA it would receive what it was seeking.  When external evidence – including a *Washington Post* article that cited specifically to email from DOI as one of its sources – made apparent that DOI had failed to produce critical documents, including internal email, CREW

gave DOI more chances to address the gross inadequacies in its responses by filing administrative appeals.  This avenue, however, proved equally unfruitful, as DOI dismissed the appeals as either untimely – despite the fact that they were based on newly discovered evidence – or without merit.  Having exhausted all administrative avenues for relief, CREW filed the instant lawsuit.

DOI has now sought partial summary judgment and judgment on the pleadings, arguing first, that CREW failed to exhaust its administrative remedies in a timely fashion; second, that CREW received all the documents it requested in response to its final FOIA request; and third, that because CREW never responded to a request for clarification from the Bureau of Indian Affairs ("BIA"), its FOIA request to that component remains open.  As discussed herein, DOI has not met its burden of proof and is therefore not entitled to judgment on any claim.  Moreover, because CREW took all reasonable steps to exhaust its administrative remedies, this matter is properly before this Court.

## FACTUAL BACKGROUND

Plaintiff CREW is a non-profit corporation dedicated to "protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials."  Complaint for Declaratory Judgment and Injunctive Relief, ¶4 (hereinafter "Complaint").  In particular, CREW monitors closely the laws and rules that apply to government agencies and urges the United States government to take ethics issues seriously.  Id., ¶5.  CREW relies, in part, on the FOIA for information to assist it in providing the public with full, accurate and current information.  Id., ¶6.

**CREW's FOIA Request of March 18, 2005**

On March 18, 2005, CREW sent a FOIA request to DOI that sought records, regardless of format and specifically including electronic records and information, relating to the following:

> [A]ny contact, dating from January 1, 2001, to the present, that any office of the Department of the Interior may have had, including any and all field offices, with Jack Abramoff, any employee of the firm Greenberg Traurig, any employee of the firm Preston Gates, Michael Scanlon, any officer or employee of Capitol Campaign Strategies, James Dobson, Ralph Reed, Scott Reed, Italia Federici, any officer or employee of the Council of Republicans for Environmental Advocacy, any officer or employee of the National Center of Public Policy Research, Grover Norquist, any officer or employee of Americans for Tax Reform, General Services Administration Chief of Staff David Safavian, Congressman Robert Ney, any employee in the office of Congressman Ney, Congressman Tom DeLay, any employee in the office of Congressman Tom DeLay or in the office of the Majority Leader, Speaker of the House Dennis Hastert, any employee in the office of Congressman Hastert or in the office of the Speaker of the House, Senator Conrad Burns, any employee in the office of Senator Burns, concerning any matter within the jurisdiction of the Bureau of Indian Affairs.

Letter from Melanie Sloan to Sue Ellen Sloca, Office of the Secretary, DOI, March 18, 2005

(Exhibit T to Complaint). CREW's March 18, 2005 FOIA request also sought:

> [A]ny records, dating from January 1, 2001, to the present, from any office of the Department of the Interior, including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs regarding the Agua Caliente Tribe of Palm Spring, California, the Tigua Tribe of El Paso, Texas, the Saginaw Chippewa Tribe of Michigan, the Mississippi Band of Choctaw Indians, the Coushatta Tribe of Louisiana, and the Jena Band of Choctaw Indians.

Id.[1]

---

[1] While DOI correctly notes in the introductory paragraph of its brief that CREW submitted its requests to only two components, the Office of the Secretary and the Bureau of

4

According to Linda Thomas, the program specialist in DOI's Office of the Secretary

("OS") responsible for processing FOIA requests, she contacted Ms. Sloan, Executive Director

of CREW on that same day to discuss CREW's request.  Declaration of Linda S. Thomas

("Thomas Decl."), ¶2 (attached as Def. Ex. 001 to Memorandum in Support of Defendant's

Motion for Partial Judgment on the Pleadings and Partial Summary Judgment ("D's Mem.")).

Ms. Thomas promised Ms. Sloan that she would "search through the documents that the

Department provided in response" to "a number of FOIA requests from other individuals and

organizations" and "*immediately* provide her [Ms. Sloan] with any documents that were

responsive to her request."  Id. ¶5 (emphasis added).  Ms. Thomas further agreed to "coordinate

a search of the Secretary's Automated Correspondence Indexing System, and search for and

provide to her any non-exempt calendar information for then Secretary Gale Norton and former

Deputy Secretary J. Steven Griles through November 2004."  Id.  With respect to CREW's

request for electronic records, Ms. Thomas attested to her understanding that "it would not be

necessary for the Department to pursue the electronic records portion of her request *at that time*."

Id. (emphasis added).

By letter dated March 21, 2005, DOI made a partial initial response to CREW's March

18, 2005 FOIA request, producing 218 documents.  Letter from Sue Ellen Sloca, Office of the

Secretary, DOI, to Melanie Sloan, March 21, 2005 (Exhibit U to Complaint).  These documents

included calendars for some of the Interior officials designated in CREW's March 18, 2005

FOIA request, including Secretary Norton and former Deputy Secretary Griles.  Id.  DOI

---

Indian Affairs, it is clear from the express terms of CREW's FOIA request that CREW is seeking
records from any and all DOI offices.

withheld information from some of the documents pursuant to Exemption 2 of the FOIA, 5

U.S.C. §552(b)(2), Exemption 5 of the FOIA, 5 U.S.C. §552(b)(5), Exemption 6 of the FOIA, 5

U.S.C. §552(b)(6), Exemption 7(E) of the FOIA, 5 U.S.C, §552 (b)(7)(E), and Exemptions 7(C)

and 7(F) of the FOIA, 5 U.S.C. §§552(b)(7)(C) and (7)(F).  Id.

On April 5, 2005, before DOI completed its processing of this phase of CREW's request,

CREW sent a letter, transmitted electronically, in which CREW reiterated its request for all

electronic records related to the individuals set forth in its March 18, 2005 letter and their

contacts with the six Indian tribes listed in that letter.  Email from Anne L. Weismann to Linda

Thomas, Office of the Secretary, DOI, April 5, 2005 (Exhibit X to Complaint).  CREW's April 5

letter also clarified that the contacts it was seeking between Secretary Norton and Grover

Norquist included "a meeting Secretary Norton had on November 8, 2002, with Clint Bolick,

Grover Norquist, Chip Mellor and Sue Ellen Wooldridge."  Id.

In addition, CREW specified that it was seeking all electronic records relating to contacts

between the tribes delineated in its March 18 letter and individuals who occupied the following

positions in DOI's Bureau of Indian Affairs from January 1, 2001, to the present:

> Director, IIT Office of American Indian Trust
> Director, IAE Office of Audit and Evaluation
> Deputy Director, IAE Office of Audit and Evaluation
> Director, ISC Office of Self Governance
> Compact Negotiation Manager, ISC Office of Self Governance
> Compact Negotiation Specialist, ISC Office of Self Governance
> Director, OIE Office of Indian Education Programs
> Deputy Director, OIE Office of Indian Education Programs
> Chief, 13 Branch of Management Information Services
> Chief, 30 Division of Planning/Oversight and Evaluation
> Chief, 30 Branch of Planning
> Deputy Commissioner of Indian Affairs
> Director, 120 Congressional and Legislative Affairs
> Legislative Coordinator, 120 Congressional and Legislative Affairs

Director, 130 Indian Gaming Management Staff
Secretary, 130 Indian Gaming Management Staff
Management Analyst, 130 Indian Gaming Management Staff
Director, Office of Trust Responsibilities
Director, Office of Information Resources Management
Director, Office of Tribal Services
Secretary, Division of Tribal Government Services
Chief, Branch of Tribal Enrollment
Chief, Branch of Tribal Relations
Director, Office of Management and Administration
Director, Office of Economic Development

Id.

CREW's April 5 letter also made explicit that a search for electronic records was "within the parameters of CREW's FOIA request [of March 18, 2005]." Because DOI had taken a contrary position in an earlier telephone conversation with CREW, however, CREW noted that "[w]hile we do not agree that a new FOIA request is necessary, we are nevertheless submitting this letter outlining the additional documents we seek and ask that, if necessary, you consider this letter to constitute a FOIA request and process it accordingly." Id. CREW also noted its understanding, based on its prior telephone conversation with DOI, that such a request would be "combined with our March 18, 2005 FOIA request and processed simultaneously." Id.

Thereafter, DOI made a second partial response to CREW's March 18, 2005 FOIA request by letter dated April 12, 2005. Letter from Sue Ellen Sloca, Office of the Secretary, DOI, to Melanie Sloan, April 12, 2005 (Exhibit V to Complaint). This second partial response consisted of indices generated as a result of the searches of the Secretary's Automated Correspondence Indexing System. DOI withheld information from some of the documents pursuant to FOIA Exemption 6. Id.

On April 27, 2005, DOI made what it termed a "final response" to CREW's March 18,

2005 FOIA request.  Letter from Sue Ellen Sloca, Office of the Secretary, DOI, to Melanie Sloan, April 27, 2005 (Exhibit W to Complaint).  This response consisted of additional calendar information for Secretary Norton and former Deputy Secretary Griles.  Portions of some documents were deleted pursuant to FOIA Exemptions 5 and 6.  Id.  Absent from the response was any mention of the electronic records that CREW is seeking – a request CREW had by that time formalized on two separate occasions.  See Exhibit T to Complaint and Exhibit X to Complaint.

On July 29, 2005, Willie S. Chism, the Freedom of Information Act Officer in DOI's Office of Information Policy, responded that her office had no records responsive to CREW's request for electronic records between the six designated tribes in CREW's letters of March 18, 2005 and April 5, 2005 and "Mr. George T. Skibine, Director, Office of Indian Gaming Management."  Letter from Willie S. Chism, Office of the Secretary, DOI, to Anne L. Weismann, July 29, 2005 (Exhibit Y to Complaint).[2]  Ms. Chism failed to account in any way for the universe of electronic communications CREW is seeking between a host of other individuals in BIA and the six tribes and, to date, CREW has yet to receive a response to the major portion of its FOIA request to BIA.

On August 24, 2005, Ms. Sloca, on behalf of the Office of the Secretary, finally responded to CREW's repeated requests for electronic records.  Ms. Sloca first mischaracterized CREW's follow-up letter of April as "requesting some new information," even though her description of the electronic records CREW was seeking matched verbatim the description in

---

[2] In her declaration, Ms. Chism identifies this response as being on behalf of BIA, although nothing in the letter so indicates and its letterhead lists only USDOI, Office of the Secretary.

CREW's first letter of March 18, 2005.  See Letter from Sue Ellen Sloca, Office of the Secretary, DOI, to Melanie Sloan, August 24, 2005 (Exhibit F to Thomas Decl.).  DOI produced a sum total of 11 documents and withheld names of private citizens expressing unsolicited views and names of persons being recommended for positions pursuant to Exemption 6 of the FOIA.  Id.  Ms. Sloca also noted that beyond an initial referral to BIA, her office had referred the request to DOI's Solicitor's Office for a direction response to CREW.  Id.   Finally, the letter noted that DOI's production of 11 documents "concludes the response within the Office of the Secretary." Id.

### CREW's FOIA Request to BIA

At the specific suggestion of Sue Ellen Sloca, CREW sent yet another FOIA request to DOI's Bureau of Indian Affairs on April 21, 2005, seeking the same records outlined in CREW's letter of April 5, 2005, to DOI's Office of the Secretary.  Letter from Anne L. Weismann to Willie Chism, April 21, 2005 (Exhibit DD to Complaint).  As CREW indicated in its Complaint, to date CREW has received no response to this request.  Complaint, ¶43.

BIA now claims that it did respond to CREW by letter dated July 29, 2005, in which BIA asserted that it was unable to identify the records CREW was seeking "[b]ecause of the broad and general nature of the subject of your request."  See Exhibit D to Declaration of Willie S. Chism ("Chism Decl.").  The letter states further that BIA "will not proceed further with your request until we receive additional clarification from you."  Id.

CREW, however, does not have this letter in its files (with the exception of the copy provided with Defendant's brief), and has no independent recollection of ever receiving this letter.  See Declaration of Anne L. Weismann, ¶ 3 (attached as Exhibit 1).  Of note, the copy

included with Defendant's brief is neither signed nor on letterhead.  By contrast, the other letter

of July 29, 2005 that CREW did receive is on letterhead and is signed by Ms. Chism.  *See*

Exhibit Y to the Complaint.

### CREW's FOIA Request of September 27, 2005

On August 28, 2005, *The Washington Post* published an article that detailed the

involvement of former Deputy Secretary Griles in Mr. Abramoff's efforts to block the Gun Lake

Indian tribe from building a casino that would have competed with one of Mr. Abramoff's tribal

clients.  Susan Schimdt, Abramoff Cited Aid of Interior Official, *The Washington Post*, August

28, 2005 (Exhibit N to Complaint).  The article cited expressly to emails that documented Mr.

Griles' involvement with the Gun Lake Casino as well as emails that "indicated the lobbyist

enlisted Griles to stop a Louisiana tribe's proposed casino, which threatened another Abramoff

client."  Id.  And, most significantly, the article was based in part on "[c]opies of Abramoff's e-

mails referencing Griles and Federici[3] that "were obtained from a variety of sources, *including

the Interior Department*."  Id. (emphasis added).

At this time CREW realized that, despite its repeated efforts to obtain from DOI all email

regarding Mr. Abramoff's efforts to influence DOI's decisions related to Indian gaming, DOI

had still not fulfilled its obligations under the FOIA.   None of the documents DOI had provided

CREW included any of the email referenced in *The Washington Post* article.  CREW accordingly

contacted Linda Thomas, the FOIA Officer who had handled CREW's FOIA requests, to express

its concerns about the inadequacy of DOI's searches to date.  As a result of that conversation and

---

[3] Italia Federici heads the Council of Republicans for Environmental Advocacy, a group
co-founded by DOI Secretary Gale Norton and Americans for Tax Reform President Grover
Norquist.  See Complaint, ¶18.

at the explicit recommendation of Ms. Thomas, CREW filed another FOIA request with DOI on

September 26, 2005, requesting documents that were provided to other FOIA requesters in

response to four FOIA requests but not to CREW, despite DOI's initial promise of March 18,

2005, that CREW would get immediately all responsive documents provided to other requesters.

Email from Anne Weismann to Linda Thomas, DOI, September 26, 2005 (Exhibit Z to

Complaint).

      DOI responded to this FOIA request on September 27, 2005, and produced a total of 146

documents.  Letter from Sue Ellen Sloca, Office of the Secretary, DOI, to Anne L. Weismann,

September 27, 2005 (Exhibit AA to Complaint).  DOI withheld some portions of the documents

pursuant to FOIA Exemptions 2, 4, 5, and 6.  Id.  Of note, none of these documents was an e-

mail.

      On April 19, 2006, two days before DOI filed its brief in this matter, the Office of the

Secretary amended its so-called "final" response of September 27, 2005, to include 234

additional documents.  Letter from Ray J. McInerney, Acting OS FOIA Team Leader to Anne L.

Weismann, April 19, 2006 (attached as Exhibit 2).  DOI withheld portions of some documents

pursuant to Exemptions 2, 5, and 6 of the FOIA.  As explanation for its belated amendment, DOI

claimed that its processor, Linda Thomas, had only recently "realized that she had inadvertently

failed to recommend that you also request the second partial response to FOIA number OS-2005-

00208," because she had "mistakenly believed that th[ose] documents . . . were included in the

documents already released to you."  Id.  DOI did not explain, however, why CREW was only

now getting documents DOI had promised it on March 18, 2005, the day CREW filed its first

FOIA.

## CREW's Administrative Appeals

The information contained in *The Washington Post* article of August 28, 2005 was the first evidence CREW received that DOI's responses were not complete. After unsuccessfully seeking DOI's full cooperation through yet another FOIA request and receiving a clearly inadequate response, CREW filed an administrative appeal by letter dated October 20, 2005. Letter from Anne L. Weismann to FOIA Appeals Officer, DOI, October 20, 2005 (Exhibit BB to Complaint). Specifically, CREW appealed DOI's responses to CREW's FOIA requests of March 18, 2005, April 5, 2005, and September 26, 2005, on the ground that Interior had failed to conduct an adequate search. Id. As CREW explained in its administrative appeal, the information made public in *The Washington Post* article of August 28, 2005 – which DOI had when it searched for documents responsive to CREW's FOIA request of September 26, 2005 – documents that there are existing email exchanges between Interior Department officials, including former Deputy Secretary Griles, concerning the very subjects of CREW's three FOIA requests. Id. Yet, despite three separate requests and, presumably, three separate searches, DOI never produced, or otherwise accounted for, these email exchanges. Under these circumstances, DOI's searches were clearly inadequate. Id.

CREW also explained in its appeal that it had no reason to doubt the adequacy of DOI's prior searches until *The Washington Post* August 28, 2005 article. In response, CREW filed a third FOIA request aimed at capturing those emails. Id. As relief, CREW requested that DOI be directed to conduct another search to locate the missing emails. Id.

After CREW filed its appeal, numerous press articles reported on the growing number of existing email and other documents memorializing contacts between Mr. Abramoff, Ms. Federici

and senior DOI officials.  For example, in advance of Mr. Griles' testimony before the Senate

Indian Affairs Committee, the committee circulated a memo that stated: "Documents in the

Committee's possession also raise a question of whether Mr. Abramoff had improper contact

with senior Interior Department officials regarding tribal issues that were before the

Department."  John Bresnahan, Abramoff's Interior Ties at Issue, *Roll Call*, November 1, 2005

(Exhibit O to Complaint).  A wealth of email collected by the Senate Indian Affairs Committee

also documented Mr. Abramoff's efforts to enlist Mr. Griles' help through the assistance of Ms.

Federici.  Susan Schmidt and James V. Grimaldi, Former Officials Face Off Over Abramoff

Contact, *The Washington Post*, November 3, 2005 (Exhibit P to Complaint); *see also* Josephine

Hearn, Abramoff Fire Hits DOI, *The Hill*, November 3, 2005 (referencing emails presented by

aides during the Indian Affairs Committee hearing that "appeared to call some of Griles'

assertions into question.") (Exhibit Q to Complaint).  And during Ms. Federici's testimony

before the Senate Indian Affairs Committee on November 17, 2005, Senators on the Committee

demanded an explanation from her about the "stacks of e-mails that suggest she exploited a

personal relationship with former Interior secretary J. Steven Griles to secretly help lobby the

department and obtain inside information affecting Abramoff's tribal clients."  Susan Schmidt,

Head of Republican Environmental Group Spars With Senators, *The Washington Post*,

November 18, 2005 (Exhibit S to Complaint).

　　　　Notwithstanding the mounting evidence of extant email for which DOI had yet to

account, DOI advised CREW by letter dated November 28, 2005 that DOI had denied CREW's

appeal.  Letter from Darrell R. Strayhorn, FOIA Appeals Office, DOI to Anne L. Weismann,

November 28, 2005 (Exhibit CC to Complaint).  DOI summarily denied CREW's appeal of

DOI's responses to CREW's FOIA requests of March 18, 2005 and April 5, 2005 as untimely. Id. DOI also denied CREW's appeal of DOI's response to CREW's FOIA request of September 26, 2005 based on DOI's conclusion that "it conducted an adequate search of its files and the OS [Office of the Secretary] does not have any further documents that are responsive to your September 26, 2005, FOIA request to disclose to you."

## STATUTORY BACKGROUND

The Freedom of Information Act, 5 U.S.C. §552, is a mandatory disclosure statute that requires federal agencies to release requested agency records to the public upon a request made by any person, unless one or more of nine statutory exemptions apply. The FOIA was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S. Ct. 1592, 1599 (1976) (*quoting* Rose, 495 F.2d 261, 263 (2d Cir. 1974)). The FOIA allows citizens to know "what the government is up to," United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773, 109 S. Ct. 1468, 1482 (1989), *reh'g denied*, No. 02-409, 2004 WL 108633 (U.S. May 17, 2004), and acts as a check against corruption by holding the government accountable to those it governs. NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S. Ct. 2311, 2327 (1978). The DOI has promulgated regulations implementing the FOIA. 43 CFR Part 2, Subparts A through E (Nov. 20, 2002).

Agency records not subject to a FOIA exemption must be disclosed upon the agency's receipt of a proper request. Such request must "reasonably describe" the records sought, 5 U.S.C. §552(a)(3)(A), and must be made in accordance with the agency's published FOIA regulations. Id. at §552(a)(3)(A)(ii).

The agency must respond to a properly submitted FOIA request within 20 working days by at least notifying the requester of the agency's determination whether or not to disclose the requested document(s), and of the requester's right to appeal the agency determination to the agency head.  5 U.S.C. §552(a)(6)(A)(i).  An agency may delay its response to a FOIA request in "unusual circumstances," but must provide notice and "the date on which a determination is expected to be dispatched."  5 U.S.C. §552(a)(6)(B).  An agency must respond to a FOIA appeal within 20 working days, notifying the requester of its determination to either release the requested records or uphold the denial.  5 U.S.C. §552(a)(6)(A)(ii).

An agency's failure to comply with the time limits for either processing the initial request or adjudicating an administrative appeal may be treated as a "constructive exhaustion" of administrative remedies.  5 U.S.C. §552(a)(6)(C).  In those circumstances, the requester may seek judicial relief, without availing itself of the administrative appeal process.  *See, e.g.*, Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 58 (D.C. Cir. 1987).  Upon receipt of a FOIA complaint, the district court has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. §552(a)(4)(B).  In a FOIA action, the agency bears the burden of justifying its failure to disclose the requested documents.  Id.

## ARGUMENT

### I.  BECAUSE CREW ACTED AS DILIGENTLY AS POSSIBLE IN PURSUING ITS ADMINISTRATIVE REMEDIES, THIS MATTER IS PROPERLY BEFORE THIS COURT.

A FOIA requester's failure to exhaust administrative remedies is not a jurisdictional bar to suit, because the FOIA does not mandate exhaustion.  *See, e.g.*, Wilbur v. CIA, 355 F.3d 675,

676 (D.C. Cir. 2004); Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003); Flowers v. IRS,

307 F.Supp.2d 60, 66 (D.D.C. 2004).  As a jurisprudential matter, however, judicial review is

precluded "if 'the purposes of exhaustion' and the 'particular administrative scheme' support

such a bar."  Hidalgo, 344 F.3d at 1258, *quoting* Oglesby v. U.S. Dep't of the Army, 920 F.2d

57, 61 (D.C. Cir. 1990).

> Applied here, it is clear that while "the FOIA's administrative scheme favors treating

failure to exhaust as a bar to judicial review,"[4] the purposes of exhaustion would not be served if

CREW's suit were barred.  In evaluating this factor,

> courts look to see whether barring judicial review would
> "prevent[] premature interference with agency processes, so
> that the agency may function efficiently and so that it may
> have an opportunity to correct its own errors, to afford the
> parties and the courts the benefits of its experience and
> expertise, and to compile a record which is adequate for
> judicial review."

Flowers, 396 F.Supp.2d at 66, *quoting* Weinberger v. Salfi, 422 U.S. 749, 765, 95 S. Ct. 2457,

2467 (1975).  Simply stated, this is not a suit where Plaintiff CREW is attempting to bypass its

administrative remedies in favor of judicial review, or seeks to deprive the Court of the "'benefit

of [the agency]s] experience and expertise.'"  Hidalgo, 344 F.3d at 1259, *quoting* Ryan v.

Bentsen, 12 F.3d 245, 247 (D.C. Cir. 1993).  Nor has CREW deprived the agency of the

opportunity to compile an adequate record for judicial review.  CREW filed an appeal, but the

agency declined to act on it.

> By contrast, the cases cited by the Defendant in support of its argument that this matter is

not properly before this Court all presented circumstances in which allowing judicial review

---

[4] Hidalgo, supra, 344 F.3d at 1259.

would have been counter to the purposes of the exhaustion doctrine. For example, in Hidalgo v. FBI, the plaintiff filed an administrative appeal before the agency had even acted on his request in the first instance. The court therefore concluded that because "the appeal could not and did not place the substance of the FBI's response before the OIP,"[5] the agency never had "an opportunity to consider the very issues that Hidalgo has raised in court." Id. CREW, on the other hand, filed its administrative appeal *after* DOI had acted on its requests, thereby according DOI a full opportunity to consider the issues CREW now raises before this Court.

In Oglesby, also cited by DOI, the FOIA requester never filed an administrative appeal before seeking judicial relief. CREW, by contrast, filed administrative appeals when it first became clear that the agency's responses were patently inadequate. In Flowers and Dale v. IRS, the courts dismissed the complaints for the separate reason that the plaintiffs had failed to perfect their FOIA requests before the agency and, accordingly, "judicial review of the request clearly would prematurely interfere with the agency process." Flowers, 307 F.Supp.2d at 70; Dale, 238 F.Supp.2d at 103.[6] No such circumstances are present here.

CREW, like the plaintiff in Wilbur, "stands on a different footing" than these other plaintiffs "with respect to the second jurisprudential factor." 355 F.3d at 677. As in Wilbur, the instant lawsuit "presents no risk of undermining the purposes and policies underlying the

---

[5] The OIP, or Office of Information and Privacy, is the administrative component within the Department of Justice that decides all administrative appeals for that agency.

[6] In Flowers, the plaintiff had failed to comply with the agency's FOIA regulations for requesters seeking confidential tax returns by failing to include a required written statement and failing to state whether or not she would pay for search and duplication fees. 307 F.Supp.2d at 70. Similarly, in Dale, the plaintiff failed to provide the agency with an adequate description of the documents he was seeking. 238 F.Supp.2d at 103.

exhaustion requirement." Id.  Moreover, as in Wilbur, this is not a case where the plaintiff bypassed the administrative review process "but pursued it to its end."  Id.  And while CREW's administrative appeal, like that in Wilbur, could be labeled "late" in the sense that it was filed beyond the 30-day requirement in DOI's regulations,[7] CREW acted as diligently and in as timely a manner as possible, based on the facts known to it during the initial 30-day appeal period.  As explained herein, CREW had no reason to question the adequacy of DOI's response until extrinsic evidence documented DOI's failure to produce, much less account for, all responsive email.  Under these circumstances, "the policies underlying the exhaustion requirement have been served."  Id.

Indeed, disallowing CREW's suit here would be counter to FOIA's purposes, as it would reward an agency's lack of diligence, while penalizing FOIA requesters like CREW that attempt to work cooperatively with agencies and pursue their administrative remedies as diligently as possible, given the information known to them.  CREW pursued its administrative appeal remedies at the first opportunity it had to legitimately question the sufficiency of DOI's responses.  To now foreclose CREW from judicial review would simply encourage FOIA requesters to file potentially non-meritorious appeals within the initial 30-day period or risk losing the right to any subsequent review by either the agency or the courts.

In the face of the mounting evidence that there are extant email at DOI that are unquestionably responsive to CREW's multiple FOIA requests, and that justify allowing CREW's claims to proceed here, DOI argues that the "existence and location" of these emails, particularly those mentioned in the August 28, 2006 *Washington Post* article, "amounts [sic] to

---

[7] *See* 43 CFR §2.29.

little more than speculation." D's Mem. at 20. According to DOI, speculation about these documents is insufficient to revive CREW's otherwise unexhausted claims. Id.

This argument ignores the express language of *The Washington Post* article and its description of the outstanding email, as well as other extrinsic evidence documenting a wealth of email that DOI has yet to account for. The August 28, 2005 article states without equivocation:

> [c]opies of Abramoff's e-mails referencing Griles and Federici were obtained from a variety of sources, including the Interior Department.

Schmidt, *The Washington Post*, Aug. 28, 2005.[8] The existence of these emails at DOI is reported not as speculation, but as fact. That the article did not identify the individual or individuals at DOI who provided the author with the emails (D's Mem. at 21) does not change this fact.

DOI also ignores the evidence released by the Senate Indian Affairs Committee, including "stacks of e-mails" documenting Mr. Griles' role in Mr. Abramoff's efforts to influence DOI's decisions on Indian gaming. Schmidt, *The Washington Post*, Nov. 18, 2005 (Exhibit S to Complaint). The wealth of newly discovered evidence documenting the existence of additional agency records responsive to CREW's FOIA request is more than sufficient to justify CREW's belated administrative appeals.

DOI also cannot refute CREW's good faith in acting as diligently as possible, given the facts known to it. As outlined herein, CREW cooperated repeatedly with DOI, filing multiple and duplicative requests even when CREW disagreed with DOI that CREW's first FOIA request did not capture email. At every turn, CREW followed DOI's advice on what to seek and where

---

[8] Even defendant's declarant Linda S. Thomas recognized that "[a]ccording to Ms. Schmidt's article, the Washington Post obtained copies of the electronic mail messages from the Department of the Interior, among other sources." Thomas Decl., ¶22.

to seek it, relying in good faith on DOI's presumably superior knowledge about the location and existence of its own records.  And when it was apparent to CREW that its reliance on DOI's representations was misplaced, CREW expeditiously filed administrative appeals, seeking to redress DOI's clearly inadequate searches.  In short, CREW took all reasonable steps to exhaust its administrative remedies.  That it was ultimately unsuccessful in that effort is attributable to DOI's own missteps, not those of CREW.

Defendant also argues that CREW is foreclosed from challenging DOI's response of August 24, 2005, to Plaintiff's April 5, 2005 letter[9] because CREW never filed an administrative appeal from that response.  D's Mem., pp. 19-20.  What DOI ignores, however, is that the bulk of the records CREW still seeks – most particularly email – are within the scope of CREW's March 18, 2005 request and the agency's response to that request, as discussed above, is properly subject to judicial review.  Thus, at most CREW cannot challenge the withholdings DOI made under Exemption 6, as set forth in the agency's letter of August 24, 2005.

## II. DOI HAS NOT MET ITS BURDEN OF PROVING THAT IT CONDUCTED AN ADEQUATE SEARCH FOR ALL RESPONSIVE DOCUMENTS.

The FOIA reflects a congressional decision that "open government should take precedence."  Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999).  Toward that end, the D.C. Circuit "require[s] agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents . . . An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Id., *quoting* Truitt v. Dep't of State,

---

[9] *See* Exhibit F to Thomas Decl.

897 F.2d 540, 542 (D.C. Cir. 1990). Moreover, the agency cannot "'limit its search" to only one or more places if there are additional sources 'that are likely to turn up the information requested.'" Valencia-Lucena, 180 F.3d at 326, *quoting* Oglesby, 920 F.2d. at 68. While the reasonableness of an agency's search depends, in part, on the scope of the FOIA request and the requester's description of the records sought, *see, e.g.*, 5 U.S.C. §552(a)(3)(A) (requiring that a FOIA request "reasonably describe[]" the records sought), FOIA requests should be interpreted "'liberally' when determining which records are responsive." DOJ FOIA Update, Vol. XVI, No. 2 at 3, *quoting* Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995).

The responding agency bears the burden of proving the adequacy of its search. *See, e.g.*, Patterson v. IRS, 56 F.3d 832, 840 (7th Cir. 1995); Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993). The agency carries this burden through the submission of "detailed, nonconclusory affidavits." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also* Oglesby, 920 F.2d at 68. Agency declarations will be deemed inadequate if they do not identify what files were searched and what search terms were used, and if they do not show that the search method was "reasonably calculated to uncover all relevant documents." Id. It is also necessary that the agency declaration "aver[] that all files likely to contain responsive materials . . . were searched" in order to "afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." Id. *See also* Iturralde v. Comptroller of Currency, 315 F.3d 311, 14 (D.C. Cir. 2003) ("If a review of the records raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." (quotations omitted)); Landmark Legal Foundation v. EPA, 272 F.Supp.2d 59, 66

(D.D.C. 2003) ("'agency affidavits that do not denote which files were searched, or by whom, do not reflect any systematic approach to document location . . . are insufficient to support summary judgment.'") (*citing* <u>Weisberg</u>, 627 F.2d at 371).

The searches at issue here fall woefully short of these standards.  Here there are both positive indicia of overlooked material and evidence that DOI failed to undertake a systematic approach in locating responsive documents.  Most troubling is DOI's repeated refusal to "follow through on obvious leads to discover requested documents."  <u>Valencia-Lucena</u>, 180 F.3d at 325. *The Washington Post* article of August 18, 2005, as well as the subsequent disclosures by the Senate Indian Affairs Committee, put DOI on notice that there were outstanding email within DOI that the agency had failed to uncover.  Yet rather than renew its search for those clearly responsive documents in the face of  "'positive indications of overlooked materials,'"[10] DOI clung repeatedly to the position – a position it reiterates here – that it had fulfilled its obligations under the FOIA, and to require more of the agency would, in effect, "'reduce [the agency] to full-time investigators on behalf of requesters.'"  D's Mem. at 25, *quoting* <u>Brophy v. U.S. Dep't of Defense</u>, No. 05-360 (slip op.), 2006 WL 571901 at *6 (D.D.C. March 8, 2006).  To the contrary, all DOI had to do was rely on the evidence CREW presented that there were additional responsive documents the agency had yet to locate.  That DOI failed to do so alone requires the Court to deny Defendant's motion for summary judgment.

Second, DOI's approach to satisfying CREW's FOIA requests was haphazard at best, and bordering on bad faith at worst.  At the outset DOI, on its own initiative, promised to provide

---

[10]<u>Valencia-Lucena,</u> 180 F.3d at 327, *quoting* <u>Founding Church of Scientology v. Nat'l Security Agency</u>, 610 F.2d 824, 837 (D.C. Cir. 1979).

CREW immediately with all responsive documents it had already produced to other FOIA requesters.  Not only did DOI fail to fulfill this promise, but months later it inextricably took the position that CREW needed to file a brand new FOIA request for these initially-promised records.[11]  Even then, DOI did not complete its processing of this request until many months later and two days before it filed its summary judgment brief in this action.  DOI's nearly 12th hour release further highlights the glaring deficiencies that have characterized all of DOI's prior searches.  Notably, this most recent release was made *after* CREW had filed an administrative appeal and *after* the agency had denied that appeal as without merit, presumably based on some review of what the agency had searched and why.

With respect to CREW's September 26, 2005 request, DOI argues that it is entitled to summary judgment because "defendant produced all the documents plaintiff asked for," namely "the documents produced pursuant to four specific FOIA requests that had not already been provided to CREW."  D's Mem. at 24.  This myopic view of what CREW was seeking, divorced from the totality of CREW's requests, seriously misstates what is at issue.  The contours of that request, like the contours of earlier requests DOI advised CREW to make, were set by DOI based on representations DOI made to CREW about how best to obtain the email CREW has been

---

[11] Attached as Exhibit 3 are two of the documents DOI released to CREW on April 19, 2006.  They include a memorandum from Edith Blackwell, Deputy Associate Solicitor for DOI's Division of Indian Affairs regarding the Jena Band of Choctaw Indians and a memorandum, withheld in full except for the subject line:  "Jena Opposition."  CREW's first FOIA request, filed on March 18, 2005, expressly sought "[A]ny records, dating from January 1, 2001, to the present, from any office of the Department of the Interior, including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs regarding the . . . Jena Band of Choctaw Indians.  (Exhibit T to Complaint).  DOI has yet to adequately explain its failure to produce these records until one year later.

seeking from the outset.[12]  While CREW (at DOI's recommendations)  has made repeated

requests for email documenting Mr. Abramoff's efforts to influence high-level DOI officials, the

agency has come up empty-handed again and again, even after outside sources have confirmed

the existence of the requested email.  DOI's repeated failure to produce or account for the missing

email alone demonstrates the inadequacy of its searches.

In short, DOI has conducted patently inadequate searches and consistently led CREW

down false paths with the as yet unfulfilled promise that CREW would finally get what it has so

clearly sought from the outset.  This is a record of broken promises and an agency that has

ignored repeated requests for specific documents, a record that is grossly insufficient to support

defendant's motion for summary judgment.  Indeed, the current record raises serious questions

about the agency's good faith that cannot be answered by the paper record defendant has offered.

Accordingly, defendant's motion for partial summary judgment must be denied.

### III.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT THREE OF THE COMPLAINT.

Defendant also seeks summary judgment on Claim Three of the Complaint, which

challenges BIA's failure to respond to Plaintiff's April 21, 2005 FOIA request.  According to

defendant, BIA responded in a second letter of July 29, 2005, in which it requested that CREW

narrow its so-called "broad request," claiming it was "unable to identify which records are being

sought" because of "the broad and general nature of the subject or your request."[13]  D's Mem. at

---

[12] *See, e.g.*, Thomas Decl. at ¶23: "I determined that Ms. Weismann would want to request copies of the documents Ms. Schmidt received in response to the following FOIA requests: OS-2005-00228; OS-2005-00249; OS-2005-00272; and OS-2005-00413."

[13] Apart from the procedural irregularities, BIA's response makes no sense given that the OS was easily able to respond to a similar request and, in fact, advised CREW to submit this

26.  Because CREW never responded, defendant argues that the request remains open at BIA.  Id.

The problem with this argument is that CREW has no record of ever receiving BIA's response.  *See* Declaration of Anne L. Weismann.  CREW has been unable to locate the letter in its files and, at the time it filed its Complaint, CREW made clear in Count Three that it had received no response to its FOIA request of BIA.  Thus, CREW never responded because CREW never received the letter in the first place.

Moreover, the record suggests that the letter was never in fact sent.  DOI has offered the declaration of Thomas H. Hartman, the FOIA Coordinator for the Office of Indian Gaming Management, who attests that he drafted a letter for Ms. Chism's signature, which he transmitted to his secretary "for her to put in final form and transmit to Willie Chism for her signature."  Hartman Decl., ¶¶ 11-12.  He apparently has no knowledge of whether the letter was, in fact, sent.  Ms. Chism, for her part, attests that she "issued a response" to CREW's request on July 29, 2005, and has included what she describes as "[a] true and correct copy of the file copy of that response" as Exhibit D to her declaration.  Chism Decl., ¶5.  But what defendant has not provided is a signed copy of the letter, on letterhead,[14] or any proof that CREW actually received the letter.  Accordingly, DOI is not entitled to summary judgment on Count Three.

## CONCLUSION

For the foregoing reasons, defendant's motion for partial judgment on the pleadings

---

very request to BIA.

[14] In its brief defendant refers to Exhibit D as "a letter *signed* by Ms. Chism."  D's Mem. at 10 (emphasis added).  As discussed above, however, the letter found at Exhibit D is unsigned. By contrast, Exhibit Y to the Complaint is another letter Ms. Chism issued on July 29, 2005, which is on letterhead and is signed by Ms. Chism.

and partial summary judgment should be denied.

Respectfully submitted,


_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
  Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff


Dated:  May 18, 2006