# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON 11 Dupont Circle, N.W. Washington, D.C. 20036 : : : : : | |
| Plaintiff, : | |
| v. : | Civil Action No. 05-02339 (RBW) |
| U.S. DEPARTMENT OF THE INTERIOR 1849 C Street, N.W. Washington, D.C. 20240 : : : : | |
| Defendant. : | |

## DECLARATION OF ANNE L. WEISMANN

I Anne L. Weismann hereby declare as follows:

1. I am Chief Counsel for Citizens for Responsibility and Ethics in Washington ("CREW"). I have held this position since March 2005.

2. Upon assuming this position I also assumed responsibility for a Freedom of Information Act ("FOIA") request that Melanie Sloan, Executive Director of CREW, had submitted to the Department of the Interior ("DOI") on March 18, 2005, as well as follow-up requests that CREW submitted to DOI, including a FOIA request to the Bureau of Indian Affairs ("BIA") on April 21, 2005.

3. I maintain the files for this matter in my office. The files include all of the correspondence CREW has received from any component of DOI in response to its multiple and related FOIA requests beginning with the March 18, 2005 request. I have reviewed all of these files and have not located any copy of a letter of March 29, 2005, that the BIA claims to have

sent CREW in response to CREW's FOIA request of April 21, 2005, and which is referenced in DOI's brief as Exhibit D to the Declaration of Willie S. Chism. Nor do I have any independent recollection of CREW ever receiving such a letter.

4. I prepared the complaint that CREW filed in this action on December 7, 2005. Count Three of that complaint is based on the fact that CREW has never received any response from DOI with respect to CREW's April 21, 2005 FOIA request.

5. CREW does have a copy of another letter from BIA dated March 29, 2005, in its files. This letter was included in the Complaint as Exhibit Y, is on DOI letterhead, and is signed by Ms. Chism.

I declare under penalty of perjury that the foregoing is true and correct.

ANNE L. WEISMANN

Dated: May 18, 2006

2

**EXHIBIT 2**



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

April 19, 2006



VIA FEDERAL EXPRESS (Overnight)
Ms. Anne L. Weismann, Staff Attorney
CREW (Citizens for Responsibility and Ethics in Washington)
11 DuPont Circle, N.W., 2nd Floor
Washington, D.C. 20036

Dear Ms. Weismann:

On September 26, 2005, you filed a Freedom of Information (FOIA) request, **OS-2005-00669**, seeking:

> "Additional documents that were provided to other FOIA requesters in response to the following FOIA requests:
>
> OS-2005-00-228
> OS-2005-00-249
> OS-2005-00-272
> OS-2005-00-413."

You identified those particular records based upon the recommendation of FOIA processor Linda Thomas. Ms. Thomas had indicated to you that those records constituted the balance of the documents that were provided to Susan Schmidt of the Washington Post, but not to your organization. On September 27, 2005, we sent a final response to you consisting of the records that had been released under those FOIA numbers.

On April 12, 2005, in the course of reviewing the documents that we provided to you, Ms. Thomas realized that she had inadvertently failed to recommend that you also request the second partial response to FOIA number OS-2005-00208. At the time, she mistakenly believed that the documents from the second partial response to that FOIA request were included in the documents already released to you.

Therefore, we are today amending our final response of September 27, 2005, to include these additional documents.

Enclosed please find an additional 234 documents containing a total of 1575 pages, all as TIFF images on 1 CD ROM disk. This brings the total number of documents and pages released to you under this FOIA request to 380 documents consisting of a total of 2234 pages. As you know, these additional documents, like

1

the others you received under OS-2005-00669, were previously released under earlier FOIA requests submitted by Ms. Schmidt.

**Portions of some of these documents have been deleted, pursuant to Exemption 2 of the FOIA (5 U.S.C. § 552 (b)(2)). The following category of information has been deleted:**

### Cellular Telephone Numbers

Two courts have held that telephone numbers constitute trivial administrative matters with no genuine public interest. Hale v. Department of Justice, 973 F.2d 894, 902 (10th Cir., 1992); Voinche v. Federal Bureau of Investigations, 46 F.Supp.2d 26, 30 (D.D.C. 1999). The redacted information pertains to the numbers assigned to the cellular phone numbers provided to federal employees by the government. The release of this information would not shed significant light on any agency personnel rule or practice; nor does the public have a substantial interest in the redacted information. Finally, the information redacted bears no relation to the substantive contents of the records released. Therefore, we have determined that government cellular telephone numbers are withholdable under Exemption 2.

**Portions of some of these documents have been deleted, pursuant to Exemption 5 of the FOIA (5 U.S.C. § 552 (b)(5)).**

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552 (b)(5). As such, the privilege exempts those documents . . . normally privileged in the civil discovery context. National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132 (1975) (NLRB). The exemption incorporates several of these privileges from discovery in litigation, including the deliberative process privilege. Id. at 149.

The deliberative process privilege protects the decision-making process of government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fish bowl. Mapother v. United States Dept. of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing Wolfe v. United States Dept. of Health & Human Serv., 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)) (Mapother). Three policy purposes have been advanced by the courts as the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.

2

See, e.g., Russell v. United States Dept. of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (Russell); Coastal States Gas Corp. v. United States Dept. of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege protects materials that are both predecisional and deliberative. Mapother, 3 F.3d at 1537; Access Reports v. United States Dept of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991); Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). A predecisional document is one prepared to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Maricopa Audubon Society v. United States Forest Serv., 108 F.3d 1089, 1093 (9th Cir. 1997). A predecisional document is part of the deliberative process if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. Id.

The portions of the documents that have been withheld pursuant to Exemption 5 are both predecisional and deliberative. They contain recommendations, proposals, suggestions, and/or other subjective documents that reflect the personal opinions of their authors. They do not contain or represent formal or informal agency policies or decisions. Furthermore, they are the result of frank and open discussions among employees of the Department of the Interior. Public dissemination of this information would have a chilling effect on the agency's deliberative processes; it would expose the agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine its ability to perform its mandated functions.

You may note that some of the documents are also labeled as attorney-client or attorney work product. These are two more categories of exempt material under the Freedom of Information Act. Attorney client material concerns "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." Mead Data Cent., Inc. v. United States Dep't of the Air Force, 556 F.2d 242, 252 (D.C. Cir. 1977). Although it fundamentally applies to facts divulged by a client to his attorney, this privilege also encompasses any opinions given by an attorney to the client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. See, e.g., McErlean v. United States Dep't of Justice, No. 97-7831, 1999 WL 791680, at *7 (S.D.N.Y. Sept. 30, 1999). The U.S. Supreme Court has emphasized the public policy underlying this legal principle, "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see also FOIA Update,

Vol. VI, No. 2, at 3-4 ("OIP Guidance: The Attorney Client Privilege").   It has been held that confidentiality may be inferred when the communications suggest that "the government is dealing with its attorneys as would any private party seeking advice to protect personal interests." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980).

The attorney work product material covers any documents which were created by an attorney in contemplation of litigation.  See Hickman v. Taylor, 329 U.S. 495, 509-10 (1947); Fed. R. Civ. P. 26(b)(3) (codifying privilege in Federal Rules of Civil Procedure).  There is no requirement that litigation actually occur.  An example is in Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1962).  Such material is likewise exempt from disclosure under the provisions of the Freedom of Information Act, Exemption 5.

Regarding those documents responsive to this FOIA, all attorney work product material and attorney-client material is also part of the deliberative process that the Department of the Interior personnel engaged in during the processing of the matters before it.  The attorney-client or attorney work product categorization of some of the documents is not cited as the only reason for withholding some documents, but is in addition to the deliberative process character of those documents.

**Portions of some of these documents have also been deleted, pursuant to Exemption 6 of the FOIA (5 U.S.C. § 552 (b)(6)).  The following categories of information pertaining to the individuals named in the records have been deleted:**

      **Home addresses**
      **Cellular telephone numbers**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  The courts have held that the phrase "similar files" involves all information that applies to a particular person.  When disclosure of information about particular individuals is requested, the courts have decided that it is necessary for us to determine whether release of the information would constitute a clearly unwarranted invasion of the individual's privacy.

To make this determination, we are required to perform a "balancing test."  This means that we must weigh the individual's right to privacy against the public's right to disclosure.

4

(1)    First, we must determine whether the individual has a discernable privacy interest in the information that has been requested.

(2)    Next, we must determine whether release of this information would serve "the public interest generally" (i.e., whether it would "shed light on the performance of the agency's statutory duties").

(3)    Finally, we must determine whether the public interest in disclosure is greater than the privacy interest of the individual in withholding.

The information that we are withholding consists solely of the above categories of information pertaining to the individuals named in the records. The Office of the Secretary has determined that the individuals to whom this information pertains have a substantial privacy interest in it. Additionally, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties and that, on balance, therefore, the public interest to be served by its disclosure does not outweigh the privacy interest of the individuals in question, in withholding it.

In short, we have determined that release of the information that we have withheld would constitute a clearly unwarranted invasion of the privacy of these individuals, and that, therefore, it may be withheld pursuant to Exemption 6.

Donald S. Harris, Attorney-Advisor in the Office of the Solicitor, was consulted when these documents were originally reviewed. Sue Ellen Sloca, Office of the Secretary FOIA Officer, is responsible for making these decisions.

If you believe that the decision to withhold this information is incorrect, you may file a FOIA appeal by writing to the FOIA Appeals Officer, U.S. Department of the Interior, 1849 C Street, NW, Mail Stop 7456, MIB, Washington, D.C. 20240. Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) after the date of your receipt of these documents. Your appeal letter must be marked, both on its envelope and at the top of its first page, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal letter must be accompanied by a copy of your original FOIA request (a copy of which is enclosed with our response, for your convenience), and a copy of this letter, along with a brief explanation of why you believe that this decision is in error.

Any fee for the processing of this amended portion of your request is waived because it is below the threshold of $30.00, and thus not chargeable as a matter of policy by the Department of the Interior.

This concludes the amended response to your request.

If you have any questions regarding any of the issues discussed in this letter, you may contact Linda Thomas by phone at 202-208-7294, by fax at 202- 219-2374, by e-mail at osfoia@nbc.gov, or by mail at U.S. Department of the Interior, MS 1413 MIB, Washington, D.C. 20240.   Within the Office of the Secretary, we are committed to providing you, our customer, with the highest quality of service possible.

Sincerely,

*Ray J. McInerney*

Ray J. McInerney
(Acting) OS FOIA Team Leader
for
Sue Ellen Sloca
OS FOIA Officer

Copy to, without enclosures, via regular mail:
Hannah Chanoine, DOJ Attorney
Darrell Strayhorn, Departmental FOIA Appeals Officer (handcarried)

Enclosures

**PRIVACY ACT notice**: *Before you choose to contact us, electronically, there are a few things you should know.  The information you submit, including your electronic address, may be seen by various people.  We will scan a copy of your request into our electronic OS FOIA administrative/image file.  We will key the information that you provide to us into our electronic OS FOIA tracking file.  We may share it with other individuals, both within and without the Department, involved in Freedom of Information Act administration.  You may be contacted by any of these individuals.   In other limited circumstances, including requests from Congress or private individuals, we may be required by law to disclose some of the information you submit.  Also, e-mail is not necessarily secure against interception.  If your communication is very sensitive, or includes personal information like your bank account, charge card, or social security number, you might want to send it by postal mail, instead.*

6

**EXHIBIT 3**

## MEMORANDUM

**TO:**  Edith Blackwell, Deputy Associate Solicitor for the Division of Indian Affairs
John Harrington, Office of the Solicitor, Atlanta Regional Office

**FROM:**  V. Heather Sibbison
For the Jena Band of Choctaw Indians

**SUBJECT:**  Jena Band of Choctaw Indians:  The Logansport Parcel and the Restored Lands Exception (25 U.S.C. § 2719(B)(1)(b)(iii))

**DATE:**  November 26, 2002

## INTRODUCTION

The Jena Band of Choctaw Indians ("Jena Choctaw") has applied to the Department requesting that seven parcels of land be taken into trust,[1] and further requesting that those parcels together be proclaimed as the Jena Choctaw's initial reservation.[2]  *See* November 12, 2002 Legal Memorandum provided in support thereof.  The Jena Band of Choctaw Indians also has asserted that the seven parcels of land identified within the Tribe's initial reservation application are restored lands within the meaning of 25 U.S.C. § 2719(b)(1)(B)(iii).  This Memorandum expands the Tribe's legal discussion (originally outlined in the November 12, 2002 Memorandum) of the "restored lands for a restored tribe exception" as it relates to the Tribe's land near Logansport (designated in the land-into-trust applications as "parcel number 2").

Also provided to the Department on November 12, 2002 was the Tribe's expanded Historical Narrative.  The information contained in the Historical Narrative, and in the primary and secondary sources provided with it, is incorporated herein by reference.  As we have noted before, almost all of the materials from which the Tribe's factual history has been gleaned were written before the advent of Indian gaming, and so should be viewed as free from bias.

---

[1] The land-into-trust applications for these parcels were originally submitted as a single application in January, 2001.  In April, 2001, they were amended and broken out into individual applications.

[2] The Jena Choctaw submitted a Request for Initial Reservation Proclamation on August 30, 2002.

02/27/2002  16:48    3189928244              JENACHOCTAW                           PAGE  02



# Jena Band of Choctaw Indians

P. O. Drawer 1367 • Jena, Louisiana 71342 • Phone: 318-992-2717 • Fax: 318-992-8244

February 27, 2002

Mr. Franklin Keel
Eastern Regional Director
711 Stewart's Ferry Pike
Nashville, TN 37214

RE:    Jena Band of Choctaw Indians
       Land Acquisition Application-25 CFR Part 151

Dear Mr. Keel:

The Jena Band of Choctaw Indians would like to remove from consideration as trust land
the following tract of land that was included in the above mentioned packet.

  1. Parcel #11 – Tishimingo County, Iuka Mississippi—See attached property
     description

We appreciate your assistance and consideration in this matter.  If you have any questions
concerning this letter please give me a call at the above number.

Sincerely,

B. Cheryl Smith

B. Cheryl Smith
Tribal Chief
Jena Band of Choctaw Indians

The property is described as follows: Commencing at the northeast corner of the SW1/4 of Section 30, Township 3 South, Range 11 East, Tishomingo County, Mississippi, said point being an iron pipe found at a fence intersection and being the point of beginning; thence round South 0 degrees, 19 minutes, 53 seconds East 2182.600 fee to an iron pin set on the North right-of-way line of Mississippi State Highway No. 72; thence run along the North right-of-way line of said state highway No. 72 following; North 57 degrees 12 minutes 00 seconds West 1038.261 fee to a concrete right-of-way marker North 14 degrees 04 minutes 44 seconds West 311.827 feet to an iron pine set ; South 81 degrees 36 minutes 00 seconds West 95.00 fee to an iron pin set; South 4 degrees 54 minutes 02 second West 218.383 feet to a concrete right-of-way marker; North 71 degrees 29 minutes 43 seconds West 231.268 feet to a concrete right-of-way marker; North 38 degrees 03 minutes 51 seconds West 147.647 feet to a concrete right-of-way marker; being on the North right-of-way line of Mississippi State Highway No. 72 and the East right-of-way line of O.E. Barrett Public Road; thence run along the east right-of-way line of said O.E. Barrett Public Road and also being along the right-of-way line of State Highway 72 the following: North 47 degrees, 14 minutes 00 seconds East 241.850 feet to a concrete right-of-way marker; North 38 degrees 13 minutes 30 seconds East 320.841 feet to a concrete right-of-way marker; North 48 degrees 18 minutes 00 seconds West 27.795 feet to an iron pin set, bring on the East right of way line of said O.E. Barrett Public Road; thence continue along the East right-of-way line of the O.E. Barrett Public Road the following; North 38 degrees 20 minutes 24 seconds East 76.957 feet; North 26 degrees 03 minutes 27 seconds East 81.840 feet; North 18 degrees 53 minutes 17 seconds east 50.173 fee; North 6 degrees 40 minutes 16 seconds West247.957 feet; North 9 degrees 52 minutes 09 seconds West 99.991 feet; North 5 degrees 44 minutes 05 seconds West 35.908 feet; North 10 degrees 33 minutes 32 seconds East34.627 feet; North 30 degrees 56 minutes 51 seconds East 58.238 feet; North 46 degrees46 minutes 54 seconds East 34.462 feet; North 44 degrees 37 minutes 22 seconds East 190.099 feet; North 33 degrees 52 minutes 19 seconds East 116.845 feet to an iron pin set; thence run North 88 degrees 06 minutes 13 seconds East along an old fence line 693.543 feet to the point of beginning.



# Jena Band of Choctaw Indians

P. O. Box 14 • Jena, Louisiana 71342-0014 • Phone: 318-992-2717 • Fax: 318-992-8244

## TRIBAL COUNCIL RESOLUTION

### JBC 2002-0227

WHEREAS,   The Jena Band of Choctaw Indians is a federally recognized Indian Tribe, and,

WHEREAS,   The Jena Tribal Council is the governing body of the Jena Band of Choctaw Indians, and,

WHEREAS,   The Jena Tribal Council desires to remove from consideration as trust land, one tract of land herein described as Parcel 11, in Iuka, Tishimingo, Mississippi of approximately 42.14 Acres, submitted to the Bureau of Indian Affairs, Real Property Management Office, Eastern Area Office, that was included in our application titled **Land Acquisition Application - 25 CFR Part 151**, submitted in January 2001.

NOW THEREFORE BE IT RESOLVED   that the Jena Tribal Council does hereby authorize B. Cheryl Smith to notify the Bureau of Indian Affairs of the Tribe's position and identify the tract of land that the tribe would like to remove from consideration as future trust land.

### CERTIFICATION

**The stated resolution was enacted and adopted on the 27th day of February 2002, by the Jena Band of Choctaw Indians Tribal Council, with a quorum present; the vote was __5__ (for), __O__ (against) _____ (abstentions).**

_B. Cheryl Smith_                    _Christine Norris_
B. Cheryl Smith                        Christine Norris

_Jerry D. Jackson_      _Herman Jackson_        _Arthur Fisher_
Jerry D. Jackson            Herman Jackson            Arthur Fisher

# Jena Band of Choctaw Indians

P. O. Box 14 • Jena, Louisiana 71342-0014 • Phone: 318-992-2717 • Fax: 318-992-8244

August 27, 2002

Mr. Franklin Keel
Eastern Regional Director
711 Stewart's Ferry Pike
Nashville, TN 37214

RE:    Jena Band of Choctaw Indians
       Land Acquisition Application - 25 CFR Part 151

Dear Mr. Keel:

This letter is to notify you that, pursuant to Tribal Council Resolution JBC 2002-0820-2, the Tribal Council of the Jena Band of Choctaw Indians resolved to remove from consideration as trust land the following tracts of land that were included in the above mentioned packet.

1.    Parcel # 3 in Tallulah, Madison Parish, Louisiana.  See attached property description.

2.    Parcel # 4 in Cypress Bend, Sabine Parish, Louisiana.  See attached property description.

3.    Parcel # 12 in Terral, Kaufman County, Texas.  See attached property description.

Enclosed is a copy of Resolution JBC 2002-0820-2.  Please take all steps necessary to remove these parcels from our packet.  We appreciate your assistance and consideration in this matter.  If you have any questions concerning this letter, do not hesitate to call me.

Sincerely,

B. Cheryl Smith

B. Cheryl Smith
Tribal Chief
Jena Band of Choctaw Indians

enclosure



# *Jena Band of Choctaw Indians*

P. O. Box 14 • Jena, Louisiana 71342-0014 • Phone: 318-992-2717 • Fax: 318-992-8244

## TRIBAL COUNCIL RESOLUTION

### JBC 2002-0820-2

**WHEREAS,** The Jena Band of Choctaw Indians is a federally recognized Indian Tribe, and,

**WHEREAS,** The Jena Tribal Council is the governing body of the Jena Band of Choctaw Indians, and,

**WHEREAS,** The Jena Tribal Council desires to remove from consideration as trust land, three tracts of land that were included in our application entitled **Land Acquisition Application - 25 CFR Part 151** and that were submitted to the Bureau of Indian Affairs, Real Property Management Office, Eastern Area Office, on January 13, 2001, described herein as follows: Parcel 3 in Tallulah, Madison Parish, Louisiana consisting of approximately 40 acres; Parcel 4 in Cypress Bend, Sabine Parish, Louisiana consisting of approximately 40.19 acres; and Parcel 12 in Terrell, Kaufman County, Texas consisting of approximately 19.8 acres.

**NOW THEREFORE BE IT RESOLVED** that the Jena Tribal Council does hereby authorize Chief B. Cheryl Smith to notify the Bureau of Indian Affairs of the Tribe's removal of the above described tracts of land from consideration as future trust land and to identify the tracts of land.

### CERTIFICATION

The stated resolution was enacted and adopted on the _90th_ day of _August_ 2002, by the Jena Band of Choctaw Indians Tribal Council, with a quorum present, the vote was _5_ (for), _0_ (against).

_B. Cheryl Smith_
B. Cheryl Smith

_Christine Norris_
Christine Norris

_Jerry D. Jackson_
Jerry D. Jackson

_Herman Jackson_
Herman Jackson

_Arthur Fisher_
Arthur Fisher

PARCEL 3

## DESCRIPTION OF A 40.0 +/- ACRE TRACT LOCATED IN SECTIONS 12, 13 AND 14, TOWNSHIP 16 NORTH, RANGE 12 EAST OF THE LOUISIANA MERIDIAN, MADISON PARISH, LOUISIANA

A certain piece, parcel or lot of ground, together with all improvements thereon, rights, ways and privileges thereunto belonging or in any way appertaining, being, lying and situated in Sections 12, 13 and 14, Township 16 North, Range 12 East, Madison Parish, Louisiana; being more particularly described as follows, to wit:

Commencing at the point of intersection of the centerline of an abandoned railroad with the west right of way line of U.S. Hwy. 65; thence proceed in a northeasterly direction along said right of way line, a distance of approximately 2337.90 feet to the POINT OF BEGINNING of the tract to be described;

thence turn left and proceed in a northwesterly direction, a distance of approximately 1320.00 feet to a point;

thence turn right and proceed in a northeasterly direction, a distance of approximately 1320.00 feet to a point;

thence turn right and proceed in a southeasterly direction, a distance of approximately 1320.00 feet to a point located on the west right of way line of U.S. Hwy. 65;

thence turn right and proceed in an southwesterly direction, along said right of way line, a distance of approximately 1320.00 feet to the POINT OF BEGINNING.

The above described tract contains 40.0 acres, more or less, and is more particularly indicated on a drawing by William J. Wood, Jr., dated December 27, 2000. This description was prepared without benefit of a boundary survey.



12-27-00

PARCEL 4

## DESCRIPTION OF A 40.19 +/- ACRE TRACT LOCATED IN THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER AND THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 11, TOWNSHIP 5 NORTH, RANGE 13 WEST OF THE LOUISIANA MERIDIAN, SABINE PARISH, LOUISIANA

A certain piece, parcel or lot of ground together with all improvements thereon, rights, ways and privileges thereunto belonging or in any way appertaining, being, lying and situated in the southwest quarter of the northwest quarter and the northwest quarter of the southwest quarter of Section 11, Township 5 North, Range 13 West, Sabine Parish, Louisiana; being more particularly described as follows, to wit:

Commencing at a concrete post with brass cap marking the northwest corner of Section 11, Township 5 North, Range 13 West; thence proceed South 00 degrees 07 minutes 46 seconds East, bearing assumed, along the west line of the northwest quarter of said Section 11, a distance of 1475.15 feet to a ½" iron rod marking the POINT OF BEGINNING of the tract to be described;

thence turn left and proceed North 89 degrees 37 minutes 07 seconds East, a distance of 1318.31 feet to a ½" iron rod;

thence turn right and proceed South 00 degrees 03 minutes 01 seconds East, a distance of 1332.32 feet to a ½" iron rod;

thence turn right and proceed South 89 degrees 55 minutes 50 seconds West, a distance of 1316.85 feet to a ½" iron rod;

thence turn right and proceed North 00 degrees 01 minutes 20 seconds East, along the west line of the northwest quarter of the southwest quarter, a distance of 150.00 feet to a 2 ½" iron pipe;

thence turn left and proceed North 00 degrees 07 minutes 46 seconds West, along the west line of the northwest quarter of Section 11, Township 5 North, Range 13 West, a distance of 1175.14 feet to the POINT OF BEGINNING.



STATE OF LOUISIANA
WILLIAM J. WOOD, JR.
REG. No. 4637
REGISTERED
PROFESSIONAL
LAND SURVEYOR

11-30-00

The above described tract contains 40.19 acres, more or less, and is more particularly indicated on Certificate of Survey by William J. Wood, Jr., dated November 20, 2000.

PARCEL 12

### DESCRIPTION OF A 19.833 +/- ACRE TRACT LOCATED IN THE RANSOM SOWELL SURVEY, ABSTRACT NUMBER 443, KAUFMAN COUNTY, TEXAS AND A PORTION OF LOT 4, BLOCK 1, POWERS ADDITION TO THE CITY OF TERRELL, KAUFMAN COUNTY, TEXAS ACCORDING TO THE PLAT RECORDED IN CABINET NUMBER 1, PAGE 798 OF THE PLAT RECORDS OF KAUFMAN COUNTY, TEXAS

Commencing at the south corner of the Kenneth Lundberg, trustee tract, being the west corner of the tract of land conveyed to Texas Power and Light Co. by the deed recorded in Volume 617, Page 294 of the deed records of Kaufman County, Texas; said point also lying in the northeast right of way line of State Highway 34; thence North 37 degrees 29 minutes 43 seconds West, a distance of 389.10 feet (chord bearing and distance) to a point; thence proceed North 27 degrees 22 minutes 00 seconds West along the northeasterly right of way line of State Highway 34, a distance of 193.00 feet to a point, thence proceed North 23 degrees 00 minutes 30 seconds West, a distance of 429.36 feet (chord bearing and distance) to a point; thence North 18 degrees 39 minutes 00 seconds West, along said right of way line, a distance of 426.17 feet to the POINT OF BEGINNING of the tract to be described;

Thence North 18 degrees 39 minutes 00 seconds West, along said right of way line, a distance of 95.83 feet to a point;

Thence in a northwesterly direction along a curve in said right of way line, concave to the southwest, having a radius of 2904.93 feet and a chord that bears North 23 degrees 14 minutes 00 seconds West, a distance of 464.26 feet to a point;

Thence North 28 degrees 17 minutes 12 seconds West, along said right of way line, a distance of 429.21 feet to a point;

Thence proceed in a northwesterly direction in a curve in said right of way line concave to the northeast, having a radius of 1392.40 feet and a chord that bears North 27 degrees 02 minutes 13 seconds West, a distance of 60.74 feet to a point;

Thence North 77 degrees 46 minutes 42 seconds East, a distance of 21.68 feet to the most southerly southwest corner of Lot 4, Block 1, Powers Additions to the City of Terrell, Kaufman County, Texas, according to the plat recorded in Cabinet 1, page 798, of the plat records of Kaufman County, Texas;

Thence North 29 degrees 27 minutes 42 seconds West, a distance of 31.14 feet along the most westerly west boundary line of said Lot 4, to the most southerly northwest corner of said Lot 4 and the southwest corner of Lot 3, Block 1 of said Powers Addition;

Thence North 77 degrees 46 minutes 42 seconds East, a distance of 266.69 feet along the south boundary line of said Lot 3, to the southeast corner thereof;

Thence North 18 degrees 35 minutes 00 seconds West, a distance of 428.08 feet along the most easterly west boundary line of said Lot 4 and the east boundary line of Lot 3 and Lot 2 of said Block 1, Powers Addition to the northeast corner of said Lot 2, and being the southeast corner of the 0.598 acre tract of land conveyed to Truman Arnold Companies, Inc., by the deed recorded in Volume 934, Page 381 of the dead records of Kaufman County, Texas;

Thence North 22 degrees 19 minutes 58 seconds East, a distance of 41.71 feet, severing said Lot 4 and running along the southeast boundary line of said Truman Arnold Companies tract to the northeast corner thereof, lying in the southwest right of way line of Interstate Hwy. 20 and the northeast boundary line of the aforesaid Lot 4, Block 1, Powers Addition;

Thence South 71 degrees 21 minutes 37 seconds East, along said right of way line, a distance of 374.15 feet to a point;

Thence South 69 degrees 09 minutes 13 seconds East, along said right of way line, a distance of 308.17 feet to a point;

Thence South 72 degrees 12 minutes 24 seconds East, along said right of way line, a distance of 158.99 feet to a point;

Thence South 07 degrees 04 minutes 36 seconds East, along the 100 year flood limit line, a distance of 216.22 feet to a point;

Thence South 04 degrees 48 minutes 54 seconds West, along said flood limit line, a distance of 200.33 feet to a point;

Thence South 34 degrees 28 minutes 18 seconds West, along said flood limit line, a distance of 201.83 feet to a point;

Thence South 56 degrees 41 minutes 06 seconds West, along said flood limit line, a distance of 68.96 feet to a point;

Thence South 02 degrees 56 minutes 03 seconds West, along said flood limit line, a distance of 159.65 feet to a point;

Thence South 22 degrees 04 minutes 01 seconds East, along said flood limit line, a distance of 147.32 feet to a point;

Thence South 23 degrees 48 minutes 51 seconds East, along said flood limit line, a distance of 140.22 feet to a point;

Thence South 63 degrees 57 minutes 33 seconds West, along said flood limit line, a distance of 181.51 feet to a point;

Thence South 70 degrees 08 minutes 43 seconds West, along said flood limit line, a distance of 130.48 feet to a point;

Thence South 31 degrees 21 minutes 20 seconds West, along said flood limit line, a distance of 103.19 feet to a point;

Thence North 82 degrees 27 minutes 33 seconds West, along said flood limit line, a distance of 57.11 feet to a point;

Thence North 43 degrees 16 minutes 37 seconds West, along said flood limit line, a distance of 59.36 feet to the POINT OF BEGINNING.

This description was prepared from boundary survey map by James L. Brittain for Purvis T. Welch and others, dated December 3, 1999 and delineates the land above the flood hazard area indicated on the aforementioned map.

11/14/03

COPY TO: BRIDGET SEA

THIS BINDER WAS

PROVIDED TO ME BY

STEVE & RICE,

M ROSETTI

**MEMORANDUM**

TO:        Department of Interior/Bureau of Indian Affairs
DATE:    November 10, 2003
RE:        Jena Opposition

**Withheld in Full: 2 Pages**

**Ex. 5**