## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON )
11 Dupont Circle, N.W. )
Washington, D.C. 20036 )
 )
        **Plaintiff,** )
 )
   **v.** )     **Civil Action No. 05-02339 (RBW)**
 )
UNITED STATES DEPARTMENT OF )
THE INTERIOR )
1849 C Street, N.W. )
Washington, D.C. 20240 )
 )
        **Defendant.** )
_____)

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

Defendant hereby replies to Plaintiff CREW's opposition to Defendant's Motion for Partial Judgment on the Pleadings and Partial Summary Judgment. CREW has failed to refute that its failure to exhaust bars judicial review of the bulk of its claims. The purposes of exhaustion would not be served in this case. Specifically, CREW now admits to receiving the OS's August 24, 2005 response to CREW's second request of April 5, 2005 – the request centering on electronic documents. Despite a clear opportunity to bring a timely appeal, CREW failed to appeal the one response that was focused on emails. Contrary to CREW's assertions, therefore, CREW did not act diligently in pursuing its administrative remedies. Even if the Court were to reach the merits of CREW's claims at this late date, CREW has not explained why this Court should deem the challenged searches inadequate.

CREW has also failed to explain why claims relating to its fourth request for four batches

of documents previously released to Ms. Susan Schmidt of the *Washington Post* are not moot, because (1) CREW has not controverted that it received everything within the "four corners" of the request, and (2) CREW has not disputed Defendant's evidence that Ms. Weismann was explicitly informed that CREW's fourth request was unlikely to capture the emails referenced in Ms. Schmidt's August 28, 2005 *Washington Post* article.

Finally, CREW has failed to refute that the BIA responded to CREW's third request of April 21, 2005. It cannot explain why the agency's "file copy" of its final response, and the declaration stating that it was, in fact, "issued" to CREW, is insufficient evidentiary support for the fact that a copy of that response was indeed sent to CREW. Because CREW has challenged the authenticity of the file copy, as well as Defendant's good faith in producing it, Defendant respectfully submits yet another copy of the same letter from the agency's separate "chronological files." This copy reflects both a handwritten signature and letterhead, and its presence in the "chronological files" fully corroborates the previously submitted evidence that Ms. Chism's response was sent to CREW.

## I.     CREW's Failure to Exhaust Bars Judicial Review of the Bulk of its Claims

In its Memorandum, Defendant demonstrated that it is entitled to judgment on the pleadings on most of its claims, because CREW either failed to timely exhaust its administrative remedies or failed to exhaust its remedies at all. *See* Mem. at 15-22. Defendant showed that speculation about the existence and source of responsive documents cannot revive unexhausted claims, as to do so would be to apply a standard more lax than the standard for assessing the adequacy of a challenged search on the merits. *Id.* at 20-22. In its opposition, CREW argues its failure to exhaust should not bar judicial review because it "acted as diligently as possible, given the facts known to it," and "took all reasonable steps to exhaust its administrative remedies." Opp. at 15-20. Plaintiff also argues that the existence of the email referenced in the *Washington Post* article is not speculative, and that

CREW's searches were, accordingly, "clearly inadequate." *See* Opp. at 18-20.

CREW's exhaustion arguments – hinged upon CREW's supposed diligence – fall flat in light of CREW's failure to administratively appeal the OS's response to its second request, the request explicitly focused on electronic documents. Accordingly, the "'purposes of exhaustion'" support a bar to judicial review. *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).

A.     *CREW Did Not Act "As Diligently As Possible"*

CREW justifies its failure to exhaust by repeatedly claiming that it "acted as diligently and in as timely a manner as possible, based on the facts known to it during the initial 30-day period." *E.g.* Opp. at 18. According to CREW, the reference to emails in the *Washington Post* article was the first "extrinsic evidence" alerting CREW that they should challenge the adequacy of the FOIA responses they had received. *Id.* However, in its opposition, CREW admits for the first time to receiving the OS's final response to its second request of April 5, 2005 – the request that focused upon electronic documents. Opp. at 8, 20; Declaration of Linda S. Thomas ¶ 21 (attached to Mem. as Def. Ex. 001) (Ex. F). As Defendant noted, CREW neglected to inform the Court about the August 24 response in its complaint.[1]  *See* Mem. at 7; Opp. at 20. The OS's final response to a request centered upon electronic documents was dated *four days* before Ms. Schmidt's *Washington*

---

[1] Plaintiff's opposition does not acknowledge this void in its complaint. *See* Opp. at 8-9, 20. It should be noted that if CREW had overlooked the August 24, 2005 response, either during its administrative appeals or during the drafting of its complaint, that error would explain why Plaintiff has devoted so much effort to disputing the fact that its April 5, 2005 letter to OS was, by its own terms, a separate FOIA request. *See* Pl. Response to Def. Statement of Undisputed Material Facts ¶ 30 ("Plaintiff disputes the characterization of this letter as a 'second FOIA request.'"). By shoehorning its April 5 request into its March 18 request, CREW apparently hopes to avoid the force of its own exhaustion arguments. *See* Opp. at 15-18 (arguing that CREW acted diligently, thus the Court should ignore its failure to exhaust).

*Post* article was published.  CREW did not file an administrative appeal to this response at all, *see* Mem. at 7 n.3; Opp. at 20; Pl. Ex. BB (appealing five FOIA responses based on the *Washington Post* article's reference to emails, but not the August 24, 2005 response) despite a clear opportunity to do so in a timely manner.  Even under CREW's own theory, it had "extrinsic evidence" of unreleased emails by way of the *Washington Post* article, well within the "initial 30-day period."  In light of Plaintiff's unexplained failure to administratively appeal the OS's August 24, 2005 response to CREW's second request, CREW's entire exhaustion argument collapses.

B.    *CREW's Failure to Exhaust the August 24, 2005 Response Illustrates that Judicial Review Would Not Serve the Purposes of Exhaustion*

CREW correctly notes that "the FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review."  *Hidalgo*, 344 F.3d at 1259; Opp. at 16.  The crux of CREW's argument, therefore, is that "the purposes of exhaustion would not be served if CREW's suit were barred."  Opp. at 16.  CREW claims that "this is not a suit where Plaintiff CREW is attempting to bypass its administrative remedies in favor of judicial review, or seeks to deprive the Court of the "'benefit of the [agency]'s] experience and expertise.'"" *Id.* (quoting *Hidalgo*, 344 F.3d at 1259 (quoting *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993))).

Yet that is precisely what has happened in this suit.  This action is premised upon CREW's allegations that the OS and the BIA failed to uncover emails referenced in Ms. Schmidt's *Washington Post* article of August 28, 2005.  But CREW had already made, through its second FOIA request of April 5, 2005, a FOIA request that centered on electronic documents.[2]  Pl. Ex. X.  The OS

---

[2] CREW belatedly appealed Ms. Chism's July 29, 2005 response on behalf of the BIA to CREW's April 5, 2005 request for documents, in which Ms. Chism stated that responsive records were not located.  Declaration of Willie S. Chism at ¶ 3 (attached to Mem. as Def. Ex. 002) (Ex. B); Pl. Exs. BB, Y.  In describing Ms. Chism's response, CREW states that "Ms. Chism failed to account in any way for the universe of electronic communications CREW is seeking," Opp. at 8,

issued its final response of August 24, 2005 to CREW's request for electronic documents just a few days before Ms. Schmidt's article was published. CREW had a clear opportunity to file a *timely* administrative appeal of the exact request governing the subject matter at hand: emails.

While CREW belatedly appealed previous responses based upon the *Washington Post* article, the agency was fully entitled to rely upon its own FOIA regulations governing the filing of timely appeals as a basis for declining to review the merits of those appeals. *See Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 69 (D.D.C. 2004); Pl. Ex. CC; Mem. at 18-20. By failing to administratively exhaust the OS's response to CREW's request for electronic documents, therefore, CREW deprived the agency of "an opportunity to correct its own errors," has not "afford[ed] the parties and the courts the benefit of [DOI]'s experience and expertise" and has deprived the agency of the opportunity "to compile a record which is adequate for judicial review." *Flowers*, 307 F. Supp. 2d at 66; *see Hidalgo*, 344 F.3d at 1259.

Plaintiff's failure to exhaust this *particular* response illustrates that the purposes of exhaustion would not be served by permitting judicial review of *any* of the unexhausted claims. *See Hidalgo*, 344 F.3d at 1258-59. Indeed, allowing CREW's suit here would run counter to FOIA's purposes, as it would reward a requester's lack of diligence, encourage FOIA requesters to ignore regulatory deadlines, and generally undermine the stability of the agency's regulatory regime governing FOIA requests.

C.    *CREW Narrowed Its First Request to Exclude New Searches for Email*

In a bid to evade the consequences of its own misstep in failing to administratively appeal

---

implying that CREW had viewed Ms. Chism's response to be inadequate at that time. But if CREW had so believed, then even absent the publication of the *Washington Post* article a month later, CREW should have promptly filed a timely administrative appeal.

the August 24 response – so as to foster the illusion of CREW's diligence – CREW has tried to fuse together its first request of March 18, 2005 and its second request of April 5, 2005. *See* Opp. at 20 (arguing that, despite its failure to file an administrative appeal, CREW is not foreclosed from challenging the August 24 response because "the bulk of the records CREW still seeks – most particularly email – are within the scope of CREW's March 18, 2005 request").

When a FOIA requester narrows its request, an agency is fully entitled to rely upon that instruction. *See Lechliter v. Dep't of Defense*, 371 F. Supp. 2d 589, 595 (D. Del. 2005) ("A requestor may not challenge the adequacy of a search after an agency limits the scope of a search in response to direction from the requestor.") (citing *Nation Magazine v. Dep't of State*, No. 92-2303, slip op. at 12 (D.D.C. Aug. 18, 1995)), *aff'd* 2006 WL 1506717 (3d Cir. June 1, 2006). Much of the opposition dwells upon the text of Plaintiff's first request of March 18, 2005, and insists that the broad sweep of the first request's language governed the entirety of the OS's responses. *See, e.g.,* Opp. at 20. However, Defendant submitted a sworn declaration evidencing the fact that CREW *narrowed* that first request in the March 18, 2005 telephone call between Ms. Linda Thomas and Ms. Melanie Sloan. Thomas Dec. ¶ 5.

Ms. Sloan narrowed the scope of CREW's first request by agreeing, *inter alia,* that Ms. Thomas could search for responsive documents within the pool of documents already released pursuant to similar FOIA requests.[3] *See* Thomas Dec. ¶ 5; Mem. at 3-4. Ms. Thomas promised to immediately provide CREW with any responsive documents that Ms. Thomas located within that restricted universe of documents. *See* Thomas Dec. ¶ 5; Mem. at 3. Ms. Sloan indicated that the

---

[3] Ms. Thomas also stated that she would coordinate a search of the Secretary's Automated Correspondence Indexing System, and also search for and provide CREW with any non-exempt Calendar information for Secretary Norton and former Deputy Secretary Griles through November 2004. *See* Thomas Dec. ¶ 5; Mem. at 3-4; Pl. Exs. U, V, W.

agreed-upon search would suffice, and that Ms. Thomas did not need to pursue the electronic records portion of the March 18, 2005 request at that time.  Thomas Dec. ¶ 5; Mem. at 4.

Plaintiff has not adduced a jot of evidence to contradict these facts.  Notably absent, for example, is a sworn declaration from Ms. Sloan narrating a different understanding of that telephone call.  According to this Court's ECF system, Ms. Sloan remains an attorney of record in this case, and was presumably available to provide such a declaration.  Even in the absence of such a declaration, subsequent correspondence – including correspondence from CREW itself – fully corroborates the fact that CREW had narrowed that first request.  *See* Pl. Exs. U, V, W, X.  Ms. Sloan's superiors at CREW may not have been happy with the outcome of Ms. Sloan's telephone call on CREW's behalf, but that does not change the fact that Ms. Sloan narrowed CREW's March 18, 2005 request.

CREW has not controverted Ms. Thomas's account of her April 2005 telephone call with Ms. Weisman regarding electronic documents.  Thomas Dec. ¶ 11; Mem. at 5-6.  In that call, Ms. Thomas advised Ms. Weismann to submit a new FOIA request, because Ms. Sloan had narrowed the March 18, 2005 request to exclude electronic documents, and the narrowed March 18, 2005 request was near to completion.  Thomas Dec. ¶ 11; Mem. at 5-6; Declaration of Anne L. Weismann (attached to Opp. as Ex. 1) (omitting any description of the April telephone call with Ms. Thomas).

CREW also cannot escape the consequences of its own words in its subsequent April 5, 2005 letter seeking electronic documents:

> While we do not agree that a new FOIA request is necessary, we are nevertheless submitting this letter outlining the additional documents we seek and ask that, if necessary, you consider this letter to constitute a FOIA request and process it accordingly.

Pl. Ex. X; Mem. at 6.  It does not matter that CREW disagreed that a new FOIA request was

necessary, or that CREW styled it a "follow up request," or even that CREW expressed its belief that the request would be "combined" with its first request and "processed simultaneously," *see id.*, because ultimately the letter's plain language asks the OS to deem it a separate FOIA request. *Id.* And indeed, that is exactly how the OS treated the April 5 letter - as a second, separate FOIA request for electronic documents.[4] Indeed, in its administrative appeal, CREW itself treated its April 5, 2005 request as a separate FOIA request. *See* Pl. Ex. BB at 2 (CREW treating its April 5, 2005 letter as separate FOIA request from the March 18, 2005 letter, as reflected in its use of the bold-faced heading "CREW's April 5, 2005 FOIA Request").

     D.     *The Narrowed Scope of CREW's First Request Did Not Encompass the Documents Released to Ms. Schmidt and Later Released to CREW*

CREW appears to fundamentally misunderstand how the scope of the March 18 request was narrowed. CREW insinuates that the OS operated in bad faith by recommending that CREW file its fourth request of September 26, 2005, for documents previously released pursuant to four of Ms. Schmidt's FOIA requests. *See* Opp. at 2, 11, 22-23, 24. CREW argues that DOI had from the outset "promised to provide CREW immediately with all responsive documents that it had already produced to other FOIA requesters. Not only did DOI fail to fulfill this promise it inextricably [*sic*] took the position that CREW needed to file a brand new FOIA request for these initially-promised records." Opp. at 22-23.

---

    [4] The OS designated the request with a separate internal number from the March 18 request, conducted additional, separate searches, and provided a separate final response of electronic documents under that distinct FOIA designation under cover of the August 24, 2005 letter from Ms. Sloca. Thomas Dec. ¶¶ 12-21; *id.* (Ex. F); Mem. at 7-8. Upon referral from the OS, the Office of Indian Gaming Management (OIGM) on behalf of the BIA designated the April 5 request with its own internal number, conducted its own search, and provided a final response that no electronic documents were located, under cover of a July 29, 2005 letter from Ms. Chism. Declaration of Thomas H. Hartman at ¶¶ 1-5(attached to Mem. as Def. Ex. 003); Chism Dec. ¶ 3; Chism Dec. (Ex. B); Pl. Ex. Y; Mem. at 8-9.

Contrary to CREW's assertions, the OS acted in demonstrable good faith. During the March 18, 2005 telephone call, Ms. Thomas promised to search for documents responsive to CREW's first request within the pool of documents *previously* released pursuant to prior FOIA requests. Thomas Dec. ¶ 5; Pl. Ex. U; Mem. at 3. Indeed, within days, the OS provided to CREW over five thousand pages from 218 documents from that pool of previously released documents. *See* Pl. Ex. U; Thomas Dec. ¶ 7; Mem. at 4. The OS would go on to make two additional partial responses to the narrowed March 18 request, releasing indices and calendar information in hundreds of additional pages. *See* Pl. Exs. V, W; Mem at 4-5.

The narrowed scope of CREW's first request of March 18, however, did not encompass a promise to immediately provide CREW with *future* documents released pursuant to similar FOIA requests. In other words, any documents released *after* March 18 pursuant to similar FOIA requests did not fall within the scope of CREW's narrowed request. As CREW's own exhibit demonstrates, the OS responded to each of Ms. Schmidt's four FOIA requests on April 14, April 25, April 27 and July 11, 2005. *See* Pl. Ex. CC (attached letters from OS to Ms. Schmidt).[5] Thus, contrary to CREW's assertions, these documents did not fall within the scope of CREW's narrowed request. It should be noted that any responsive electronic documents *within* that previously released pool of documents were promptly released to CREW.[6]

---

[5] Similarly, the fifth batch of documents released to CREW in April 2006 were originally released to Ms. Schmidt under a cover letter dated September 30, 2005. See *Letter of Sue Ellen Sloca, OS to Ms. Susan Schmidt* (September 30, 2005), attached to this Reply as Def. Ex. 004; Thomas Dec. (Ex. I)

[6] Attached as Def. Ex. 005 is an example of electronic documents immediately released in response to the narrowed March 18 request, designated 02c197cq. *See also* Thomas Dec. ¶ 29.

E.    *CREW Has Failed to Explain How the Speculative Existence of Additional Emails Revives their Unexhausted Claims*

Defendant demonstrated that the references to emails in Ms. Schmidt's August 28, 2005 *Washington Post* article was tantamount to speculation, and therefore cannot be the basis for reviving unexhausted claims. Mem. at 20-22. It was that article and that article alone that formed the basis for CREW's administrative appeal. *See* Pl. Ex. BB at 4. CREW now points to "extrinsic evidence" that was not raised in its administrative appeal. Opp. at 19. According to CREW, subsequent newspaper articles reporting "stacks of e-mails" released in connection with an investigation by the Senate Committee on Indian Affairs is "more than sufficient to justify CREW's belated administrative appeals." *Id.* These articles, like the article CREW originally relied upon, do not excuse CREW's failure to bring an administrative appeal.

First, CREW should not be permitted to rely upon additional evidence to revive its unexhausted claims, when it failed to bring that same evidence to the attention of the agency adjudicating its administrative appeal. The Senate Committee hearings, in which the additional references to emails occurred, were held on November 2, 2005 and on November 17, 2005. At that time, CREW's administrative appeal was still pending. Pl. Ex. CC (decision dated November 28, 2005). CREW relies upon newspaper articles that were *all* published during the pendency of its appeal. *See* Pl. Exs. O (Nov. 1, 2005); P (Nov. 3, 2005); Q (Nov. 3, 2005); R (Nov. 18, 2005); S (Nov. 18, 2005). Yet CREW made no effort to supplement its appeal or to otherwise place this alleged "wealth of newly discovered evidence" before the adjudicating agency. Accordingly, the agency relied solely on the grounds originally asserted by CREW: Ms. Schmidt's *Washington Post* article of August 28, 2005, containing speculative references to email exchanges. Pl. Exs. BB, CC, N. Ms. Schmidt's article is plainly insufficient to undermine the adequacy of a search on the merits,

much less to revive unexhausted claims. Mem. at 20-22. CREW should not be allowed to import new evidence into the case at this late date, when it had a clear opportunity to do so administratively. *Cf. Hidalgo*, 344 F.3d at 1259 (explaining purposes of administrative appeals are (i) to permit agency to function efficiently and have the opportunity to correct its own errors, (ii) to afford the parties and courts the benefit of the agency's experience and expertise, and (iii) and to compile a record adequate for judicial review).

Second, CREW has not explained how these additional newspaper articles are not equally speculative on the question of the adequacy of the relevant FOIA searches. The newspaper reports do not "document[] the existence of additional agency records responsive to CREW's FOIA request," *id.,* because it is wholly unclear, for example, whether the e-mails described were even found within DOI and were not derived from other sources.[7] Even if the Senate Committee had uncovered emails from within DOI, where a FOIA search had not done so, Plaintiff has still not explained how later discovery of additional responsive documents revives their unexhausted claims, where such facts are usually insufficient to defeat summary judgment on the merits. Mem. at 20-22; *e.g.*, *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315-16 (D.C. Cir. 2003 (affirming grant of summary judgment to agency where responsive document identified after agency had made final response did not undermine search's adequacy under FOIA).

Third, CREW also ignores the fact that documents uncovered pursuant to the vigorous scrutiny of an investigative body are irrelevant to the question of whether a given FOIA search is adequate. Under FOIA, the touchstone of a search's adequacy is reasonableness. *See Iturralde*, 315

---

[7] The Senate Committee has released hundreds of pages of exhibits in connection with the hearings, including emails manifestly not from the DOI, are publicly available at http://indian.senate.gov/public/index.cfm?FuseAction=Hearings.ByMonth.

F.3d at 315 (observing that "the adequacy of a FOIA search is generally determined not by the fruits

of the search, but by the appropriateness of the methods used to carry out the search"); *Meeropol v.*

*Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) ("[A] search need not be perfect, only adequate, and

adequacy is measured by the reasonableness of the effort in light of the specific request."). *Elec.*

*Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 107 (D.D.C. 2005) ("EPIC")

("The agency need not search every record in the system or conduct a perfect search." (citing

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).  In contrast, investigative

bodies may have access to a larger body of documents than that generally available to the public

through FOIA requests, and the individuals conducting the investigation may have different

resources and authority than that of a FOIA processor attempting to make reasonable searches in

compliance with FOIA.  An investigative body, for example, may uncover documents through

searches that would be deemed "unreasonably burdensome" under FOIA.  *Cf. Nation Magazine v.*

*U.S. Customs Service*, 71 F.3d 885, 891-92 (D.C. Cir. 1995).  In sum, a FOIA search may not be

judged by the standards of an investigative search.[8]

## II.     Defendant has Met Its Burden of Showing that It Conducted a Search Reasonably Calculated To Uncover All Relevant Documents

As noted in its Memorandum, even if the Court reaches the merits of CREW's unexhausted

claims, Defendant has met its burden of demonstrating that it conducted a search reasonably

---

[8]  Unlike CREW, Ms. Schmidt had expressly framed one of her requests as seeking the documents released to the Senate Indian Affairs Committee as of February 11, 2005.  *See* Pl. Ex. CC (Attached letter of April 14, 2005 from Ms. Sloca to Ms. Schmidt).  Ms. Thomas took extra steps in an effort to assist CREW in obtaining everything that the *Washington Post* reporter had received pursuant to FOIA, but that CREW had not.  Thomas Dec. ¶¶ 22-23.  Ms. Thomas recommended to Ms. Weismann that CREW seek the same documents that Ms. Schmidt had obtained pursuant to her request for documents released to the Committee.  *Id.*  And indeed, as a result of Ms. Thomas's good faith advice, CREW has received the same non-exempt documents that had been sent to Ms. Schmidt pursuant to that request.

calculated to uncover all relevant documents.  Mem. at 22 n.7.  *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1984) (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  CREW makes only conclusory assertions, such as "the searches at issue here fall woefully short of [FOIA] standards."  Opp. at 22.  CREW fails to point to any specific infirmity in the searches outlined in the declarations supporting Defendant's motion that would be sufficient to overcome the presumption of good faith attached to an agency's declaration.  *Iturralde*, 315 F.3d at 315; *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) ("Agency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents.").  Defendant satisfied its burden by providing declarations that explained in reasonable detail and in a non-conclusory fashion the scope and method of the different searches.  *See Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982); Mem. at 2-12; Thomas Dec. ¶¶ 2-28; Hartman Dec ¶¶ 3-6; Chism Dec. ¶¶ 2-5.

CREW does not point to any failure to search particular offices or files where the emails might have been found. *Compare Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (holding search inadequate when agency failed to search the federal records office despite (1) agency's affirmative determination that records were most likely to be found there, and (2) agency had a regulatory obligation to "maintain" those records).[9]  Nor does CREW suggest that there was a failure or a refusal to interview particular government officials for whom there was strong evidence that they might have assisted in finding the purportedly missing emails. *Id.* at 327-28.  Nor

---

[9]  The Department of Interior's FOIA regulations expressly provide that a FOIA requester must send their request to the correct office or bureau within the Department. 43 C.F.R. § 2.11 ("Why is it important to send my request to the right office?").  Appendix A to the regulation provides the FOIA Contacts at various bureau offices, including separate departmental listings for the Office of the Secretary and the Bureau of Indian Affairs.  *See id.* Appendix A.

does CREW maintain that the Department ignored indications in documents found in its *initial* search that additional responsive documents existed elsewhere. *Iturralde*, 315 F.3d at 315 (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998)). *See EPIC*, 384 F. Supp. 2d at107 (rejecting argument that FBI's FOIA search was inadequate for failure to uncover records of subpoenas for passenger data despite (1) newspaper report of an anonymous official stating FBI had issued such subpoenas and (2) FBI's acknowledgment, but where Plaintiff had "not demonstrated that the FBI should have proceeded any differently than it did" (quotation marks omitted)).

In fact, CREW's only substantive argument on the merits is that DOI purportedly refused to "'follow through on obvious leads to discover requested documents.'" Opp. at 22 (quoting *Valencia-Lucena*, 180 F.3d at 325). Specifically, CREW asserts that "[t]he *Washington Post* article of August 18, 2005 [*sic*], as well as the subsequent disclosures by the Senate Indian Affairs Committee, put DOI on notice that there were outstanding email within the DOI that the agency had failed to uncover." *Id.* What CREW fails to explain, however, is how an *August* 2005 newspaper article, and a *November* 2005 Senate Committee inquiry, could have put DOI on notice of "positive indications of overlooked materials" nearly half year earlier in *March* and *April* of 2005.

## III.    Claims Relating to CREW's Fourth Request of September 26, 2005 Are Moot.

CREW's version of events is perplexing. According to CREW, it "relied, to its detriment," on Defendant's "repeated promises that if CREW filed yet one more FOIA [*sic*] it would receive what it was seeking." Opp. at 2. Particularly, CREW makes a 'reliance' argument relating to its fourth request of September 26, 2005, for the four batches of documents released pursuant to four requests made by *Washington Post* reporter Susan Schmidt. Defendant demonstrated in its memorandum that any claim relating to CREW's fourth request is moot because Defendant produced all the documents that CREW asked for in that request. Mem. at 24-26. CREW attempts to refute

that its claim is moot, stating that the "contours" of that fourth request "were set by DOI based on representations DOI made to CREW about how best to obtain the email CREW has been seeking from the outset." Opp. at 23-24. CREW has not disputed that it received all the documents previously released to Ms. Schmidt pursuant to the four FOIA requests enumerated in its September 26 request (Request #4), and the OS was under no obligation to look beyond the "four corners" of that fourth request. In addition, CREW cannot show reasonable reliance.

A.       *CREW Received Everything Within the "Four Corners" of its Fourth Request*

As a threshold matter, even if such representations had been made, CREW has not explained how claims relating to their fourth request are not moot. Under FOIA, "federal jurisdiction is dependent upon a showing that an agency has (1) improperly; (2) withheld; (3) agency records. Judicial authority to devise remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by § 552, if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150, 100 S. Ct. 960, 969 (1980) (internal quotation marks omitted). *See also* 5 U.S.C. § 552(a)(4)(B). Once all nonexempt, responsive records have been released, federal courts "have no further judicial function to perform under the FOIA," and "'the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.'" *Perry*, 684 F.2d at 125 (quoting *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980)).

CREW's own exhibit demonstrates that it requested four specific batches of document "that *were* provided" to other FOIA requesters in response to the four numerically designated FOIA requests. Pl. Exs. Z (emphasis added), AA. Plaintiff has not actually disputed that it received those

four specific batches of documents.[10] *See* Opp. at 23. Rather, CREW argues that its fourth request must not be read "divorced from the totality of CREW's requests." *Id.* But this notion that the OS should have looked past the plain text of CREW's fourth request would require this Court to repudiate D.C. Circuit precedent. As the D.C. Circuit has explained, an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents," and need only pursue "a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996); Mem. at 25.

Here, the "four corners" of CREW's fourth request were precise, retrospective, and quite narrow. CREW requested the documents *previously* released pursuant to the four numerically designated FOIA requests. Pl. Exs. Z, AA. Not only was the newspaper reference to the emails far from being a "clear and certain" lead, *Kowalczyk*, 73 F.3d at 389; *see* Mem. at 20-22, but the request itself explicitly sought records released in the past. Under CREW's theory, agencies responding to FOIA requests would need to rewrite the terms of a given FOIA request based on a perceived 'context' of the requester's prior requests. *See* Opp. at 23-24. But CREW's preferred theory is not the law. In the D.C. Circuit, the burden of framing a given FOIA request lies squarely upon the requester's shoulders. *See Kowalczyk*, 73 F.3d at 388 (rejecting plaintiff's argument that "staff

---

[10]  In its response to Defendant's statement of undisputed material facts, Plaintiff admits only that it received a "partial response" to its September 26, 2005 request for the four specific batches of documents. Pl. Response to Def. Statement of Undisputed Material Facts. ¶ 82. CREW has not set forth any evidentiary basis, however, for its statement that the September 27, 2005 response to its fourth request was only "partial." *Id.* In contrast, the response of September 27 was by its own terms, a final response concluding the response within the OS, and outlined CREW's appeal rights. *See* Pl. Ex. AA at 6. CREW's administrative appeal of this response was deemed timely, and scrutiny on appeal confirmed that CREW had indeed received all the documents released in response to the four enumerated FOIA requests previously filed by Ms. Schmidt. *See* Pl. Ex. CC at 2; Thomas Dec. ¶ 26. Therefore, other than its argument that the fourth request may not be read "divorced from the totality of CREW's requests," Opp. at 23, CREW has not explained how or why the response of September 27, 2006 was "partial."

should have realized" plaintiff desired records from New York office even though FOIA request did

not indicate this); *Brophy v. U.S. Dep't of Defense*, No. Civ. 05-360 (Mem. Op.) 2006 WL 571901,

at *7 (D.D.C. March 8, 2006) ("An agency's search must be evaluated in light of the request

made."); *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (rejecting

plaintiff's argument that agency should have interpreted scope of search relating to rule-making to

encompass records relating to pending regulations or to certain last-minute regulations, because "an

agency processing a FOIA request is not required to divine a requester's intent."); *Hudgins v. IRS*,

620 F. Supp. 19, 21 (D.D.C. 1985) ("[A]n agency is not required to have 'clairvoyant capabilities'

to discover the requester's need."). Thus, the OS was not obligated to rewrite the terms of CREW's

fourth request to encompass *new* documents that had not been previously released to Ms. Schmidt.[11]

    In the absence of a dispute that the OS provided CREW with the documents previously

released to Ms. Schmidt pursuant to four of her prior requests, claims relating to CREW's September

26, 2005 request are moot.  *Perry*, 684 F.2d at 125.

    B.    *There is No Dispute That CREW Was Explicitly Informed That Its Fourth Request
          Was Unlikely To Capture the Emails referenced in the* Washington Post *Article*

    CREW's effort to evade mootness relies partly on its assertions that "DOI . . . consistently

led CREW down false paths," decrying "a record of broken promises." Opp. at 24.  With respect to

CREW's fourth request, CREW states that the "contours" of that fourth request "were set by DOI

---

    [11]  CREW did not, for example, request that Ms. Schmidt's four FOIA requests be
processed again in light of the new "evidence" of emails referenced in Ms. Schmidt's
*Washington Post* article. Pl. Ex. Z.  Indeed, CREW's contentions relating to its fourth FOIA
request are fundamentally paradoxical.  CREW either (1) believed that Ms. Schmidt *had*
obtained the email through FOIA where CREW had not, in which case a new search pursuant to
those requests would be unnecessary and counterintuitive, or (2) CREW *did not believe* Ms.
Schmidt received the emails through FOIA, directly undermining its own argument that CREW
relied on purported representations to the contrary.  *See* Opp. at 23-24.

based on representations DOI made to CREW about how best to obtain the email CREW has been seeking from the outset." Opp. at 23-24. CREW's reliance argument fails on its face. CREW cannot have reasonably relied on representations about the documents previously released to Ms. Schmidt as any sort of promise that CREW would be able to "capture" the desired emails if CREW requested those documents. *See* Opp. at 12.

CREW has failed to dispute a crucial piece of Defendant's evidence about the telephone conversation between Ms. Thomas and Ms. Weismann that ultimately led to CREW's fourth request. During that September telephone call, Ms. Weismann complained to Ms. Thomas that CREW had not received the emails referenced in Ms. Schmidt's *Washington Post* article. Thomas Dec. ¶ 22. Ms. Thomas informed Ms. Weismann, however, that it was Ms. Thomas's belief that Ms. Schmidt *did not obtain* the emails referenced in the August 28 article through FOIA requests to the OS. *Id.* Ms. Thomas's belief that the emails were not to be found among those prior requests, was based on her own personal experience processing Ms. Schmidt's prior FOIA requests. *Id.* CREW has not disputed Defendant's evidence that Ms. Thomas so informed Ms. Weismann.[12]

There is no dispute, therefore, that CREW was fully on notice that a request for the records released previously to Ms. Schmidt was unlikely to yield "what [CREW] was seeking." And indeed, just as Ms. Thomas had warned, "none of these documents was an e-mail." Opp. at 11. Nonetheless, even with this advance knowledge about the likely outcome of a request for Ms.

---

[12] *Compare* Def. Statement of Undisputed Material Facts ¶ 75 (stating that Ms. Thomas *informed* Ms. Weismann of her belief, based on her personal experience processing Ms. Schmidt's requests, that Ms. Schmidt had not obtained the emails through a FOIA request to the OS), *and* Thomas Dec. ¶ 22 (same), *with* Pl. Response to Def. Statement of Undisputed Material Facts ¶ 75 (failing to dispute that Ms. Thomas so informed Ms. Weismann, challenging only the basis of Ms. Thomas's belief), *and* Weismann Dec. (omitting any account of her September 2005 telephone call with Ms. Thomas).

Schmidt's documents, CREW chose (1) to request the four batches recommended by Ms. Thomas, and as discussed *supra*, (2) to forego an administrative appeal of the OS's recent August 24, 2005 response to CREW's April 5 request (Request #2) for electronic documents.[13]

## IV.    CREW Has Failed to Refute That the BIA Responded to its Third Request

CREW alleged in its complaint that the BIA failed to respond to its April 21, 2005 request (Request #3).   Comp. ¶¶ 54-57.   Defendant adduced evidence demonstrating that, contrary to CREW's assertion, the BIA did indeed respond to that third request. Mem. at 26; Chism Dec. (Ex. D).   In a letter dated July 29, 2005, Ms. Chism requested that CREW narrow its broad request of April 21, 2005 (1) to indicate with more specificity the geographic location and time frame, and (2) whether the request covered records in headquarters or in field offices as well.  Chism Dec. (Ex. D); Hartman Dec.  ¶ 2-11; *see also* Mem. at 26.  In its opposition, CREW challenges the evidence Defendant submitted to refute CREW's claim that the BIA never responded to the April 21, 2005 request (Request #3).  Opp. at 9-10.  Specifically, Plaintiff disputes that Ms. Chism ever signed or sent the letter, based upon the assertions (1) that CREW does not have the July 29, 2005 letter responding to the April 21, 2005 request (Request #3) in its files, (2) that Ms. Weismann lacks an "independent recollection of ever receiving this letter," and (3) that the authenticity of the file copy submitted by Defendant is in doubt because of the absence of letterhead and the fact that there is a

---

[13] CREW has also expressed outrage over the fact that the OS subsequently released additional records. Opp. at 2, 11, 23**.**  In April of 2006, Ms. Thomas, in reviewing the records released to CREW in connection with this litigation, realized that she had erred: she realized that she should have recommended that CREW request a *fifth* batch of documents that had been released to Ms. Schmidt.  Thomas Dec. ¶ 27; *id.* (Ex. I).  She had mistakenly believed that the documents had already been released to CREW.  *Id.*  In this Circuit, however, an agency's later release of previously withheld documents does not reflect bad faith or undermine the integrity of agency declarations, as that would provide a disincentive to agencies to correct errors.  *See Meeropol v. Meese*, 790 F. 2d 942, 952-53 (D.C. Cir. 1986).

formal signature stamp, rather than Ms. Chism's handwritten signature on the file copy.  *Id.* at 9-10;
*see* Pl. Response to Def. Statement of Undisputed Material Facts ¶ 63.

Ms. Chism's sworn declaration and the attached file copy of her response to CREW's third
request, is more than sufficient evidentiary support for the factual proposition that Ms. Chism signed
and sent the letter.  Her declaration attests that on July 29, 2005, Ms. Chism "issued a response to
[CREW's April 21, 2005] request, which had been prepared for [her] by Mr. Hartman."  Chism. Dec.
¶ 3.  Attached to her declaration is what Ms. Chism attests to be "[a] true and correct copy of the file
copy of the response that [she] issue[d]."  *Id.* ¶ 3; *id.* (Ex. B).

Exhibit B is a formal file copy of her response.  The file copy lacks letterhead, and has a
stamp in lieu of a handwritten signature in the signature line.  Chism Dec. (Ex. B).  However, CREW
has failed to explain how the absence of letterhead and a handwritten signature undermines Ms.
Chism's sworn statement that the exhibit is an authentic, "true and correct copy of the file copy" of
her response.  *Cf.* Fed. R. Ev. 901(a) ("the threshold requirement of authentication or identification
as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that
the matter in question is what its proponent claims."); *Freeman v. United States*, (Mem. Op.) 2005
WL 3132185, at *3 (S.D. Tex. 2005) ("Plaintiff objects to Government's exhibits 2 (Plaintiff's Form
1040) and 3 (notice of refund) on the grounds that they are hearsay and are not competent summary
judgment evidence.  However, the Government avers that these are true and correct copies from the
IRS administrative files, Plaintiff presents no evidence that would call into question their validity
or trustworthiness.").

Indeed, CREW fails to dispute the authenticity of the file copy of Ms. Chism's *other* letter
of July 29, 2005, responding to its second request of April 5, 2005.  *Compare* Chism Dec. (Ex. D)
(dated file copy without letterhead and handwritten signature) *with* Pl. Ex. Y (Plaintiff's copy of

identical letter with both letterhead and handwritten signature).  Like the file copy of Ms. Chism's

letter responding to the third request, the file copy of Ms. Chism's response to the  second request

identically lacks letterhead and a handwritten signature.  *Compare* Chism Dec. (Ex. B) *with* (Ex. D).

Because Plaintiff has questioned the authenticity of Ms. Chism's response to CREW's third

request, *see* Opp. at 24, – and indeed, has impugned Defendant's good faith in preparing the paper

record, *see id.* – Defendant respectfully submits with this Reply another copy of the very same letter.

Declaration of Kawenniiosta Boots (Attached as Def. Ex. 006) (Ex. A).  The version of the letter

submitted in support of Ms. Chism's declaration is a "file copy" of the agency's final response to

CREW's third FOIA request, *see* Chism Dec. ¶ 3. i.e., the copy associated with the particular FOIA

request.  The copy submitted with this Reply was located elsewhere: in the Office of Indian Gaming

Management's (OIGM) "chronological files."  Boots Dec. ¶ 3.

The "chronological files" encompasses copies of the final, signed versions of the letters that

the Office of Indian Game Management prepares and sends, including responses to FOIA requests.

*Id.*  The presence of a final, signed version of a letter in the chronological files indicates that the

letter was deposited in the U.S. mail in an addressed envelope with sufficient postage.  *See id.* at ¶¶

2-4.  This copy of Ms. Chism's response to CREW's third request of April 21, 2005 has *both*

letterhead and a handwritten signature.[14]  Boots Dec. (Ex. A).  This copy fully corroborates Ms.

---

[14] Notably, this copy of Ms. Chism's letter from the "chronological files," responding to
CREW's third request of April 21, 2005, features the identical letterhead as Ms. Chism's other
letter of July 29, 2005, responding to CREW's second request of April 5, 2005.  *Compare* Boots
Dec. (Ex. A) *with* Pls. Ex. Y.  CREW has expressed confusion that Ms. Chism's response to their
April 5 request was on behalf of the BIA, because the letterhead states "Office of the Secretary."
*See* Opp. at 8 n.2.  However, the fact that Plaintiff was confused does not mean that Ms. Chism
was not responding on behalf of the BIA.  Ultimately, CREW's confusion is irrelevant, as (1)
CREW admits that Ms. Chism's response is from the BIA, s*ee* Opp. at 8, and (2) CREW failed to
timely exhaust its administrative remedies with respect to this response.  Mem. at 18-27.
    CREW fully understood that Ms. Chism in the Office of Information and Policy was the

Chism's statement that she issued this response to CREW.

The D.C. Circuit has explained that "[p]roof that mail matter is properly addressed, stamped and deposited in an appropriate receptacle has long been accepted as evidence of delivery to the addressee. On proof of the foundation facts, innumerable cases recognize a presumption to that effect. Some presume more specifically that the delivery occurred in due course of the mails." *Legille v. Dann*, 544 F.2d 1, 4-5 (D.C. Cir. 1976) (footnotes omitted); *see also Henderson v. Carbondale Coal & Coke Co.*, 140 U.S. 25, 37, 11 S. Ct. 691, 695 (1891) ("This presumption, which is not a presumption of law, but one of fact, is based on the proposition that the post-office is a public agency charged with the duty of transmitting letters; and on the assumption that what ordinarily results from the transmission of a letter through the post-office probably resulted in the given case. It is a probability resting on the custom of business and the presumption that the officers of the postal system discharged their duty."); *Lepkowski v. U.S. Dep't of Treasury*, 804 F.2d 1310,

---

FOIA officer responsible for handling FOIA requests related to BIA records. *Compare* Pl. Ex. DD (CREW's April 21 request to Ms. Chism in BIA Office of Information and Policy), *with* Chism Dec. (Exs. B, D); Boots Dec. (Ex. A); Pl. Ex. DD (response from Ms. Chism, "Freedom of Information Act Officer, Office of Information Policy."). The responses on behalf of the OS were all under the signature of Ms. Sue Ellen Sloca "Office of the Secretary, FOIA Officer." *See* Pl. Exs. U, V, W, AA; Thomas Dec. (Exs. F, I).

Furthermore, Ms. Chism's response to CREW's April 5 request was one of *two* letters providing a final response to CREW's April 5 request. *Compare* Pl. Ex. Y *with* Thomas Dec. (Ex. F). Ms. Chism's 1-page response is designated "FOIA #06207," states that no responsive records were located, and outlines CREW's appeal rights. Pl. Ex. Y. As CREW admits in its opposition (after omitting this response in the Complaint), CREW also received Ms. Sloca's separate response to CREW's April 5 request, dated August 24, 2005. Opp. at 8-9; Thomas Dec. (Ex. F). Ms. Sloca's 5-page response is designated FOIA #OS-2005-00331, transmits 54 pages from 11 documents, and outlines CREW's appeal rights. Thomas Dec. (Ex. F). Thus, CREW received two final responses to the same request, with different FOIA designations, different conclusions, and signed by two different FOIA officers. *See also* Pl. Ex. CC (Nov. 28, 2005 response to CREW's October 20, 2005 appeal) (describing CREW's "challenge in [its] appeal the Bureau of Indian Affairs's ("BIA") July 29, 2005 response determination that it was "unable to locate any records [that are] responsive to your [April 5, 2005, FOIA] request.").

1323 (D.C. Cir. 1986) ("Deposits of properly-addressed postage-prepaid matter in the mail are presumed to have been delivered to the addressee, and to have reached him in due course of the mail.") (Robinson, J., concurring) (footnote omitted); *Makuch v. FBI*, (Mem. Op.) No. 99-1094, 2000 WL 915640, at *3 (D.D.C. 2000) ("There is a strong presumption that mails, properly addressed, having fully prepaid postage, and deposited in the proper receptacles, will be received by the addressee in the ordinary course of the mails.") (Urbina, J.) (internal citation and quotation marks omitted); *but see Lepre v. Dep't of Labor*, 275 F.3d 59, 69-71 (D.C. Cir. 2001) (discussing in dicta, without deciding, exceptions to the mailbox rule in context of Due Process).

An agency may invoke the presumption "either by offering the testimony of the person who actually mailed the letter or through indirect evidence[,] such as proof that the mail was sent through office procedures followed in the regular course of business." *Capital Data Corp. v. Capital Nat'l Bank*, 778 F. Supp. 669, 675 (S.D.N.Y. 1991); *see also In re East Coast Brokers & Packers, Inc.*, 961 F.2d 1543, 1545 (11th Cir. 1992). Here, the indirect evidence of the dated "file copy" and Ms. Chism's declaration stating that she "issued" to CREW the response that had been "prepared" for her by Mr. Hartman, suffices to invoke the presumption that delivery occurred. *See* Chism Dec. ¶ 3; *id*. (Ex B). There was no need for Ms. Chism herself to aver that she mailed the letter; the word "issued" itself connotes transmission by the FOIA Officer to the designated recipient in the ordinary course of agency business, *see Capital Data*, 778 F. Supp. at 675, in contrast to such words as "prepare," "draft," or "finalize," which do not signify transmission.

Fully corroborating Ms. Chism's declaration is direct evidence in the form of a statement by the individual directly responsible for mailing OIGM letters during the relevant time period: Ms. Kawenniiosta Boots, OIGM's secretary. *See* Boots Dec. ¶¶ 1-4. When Ms. Boots mails a letter on behalf of OIGM, she places it in an addressed envelope with sufficient postage and deposits it in the

U.S. Mail. *Id.* ¶ 2. She also places a copy of the final, signed version of the mailed letter in the "chronological files," and the presence in the files of a final, signed version indicates that it was mailed. *Id.* ¶ 4. Like the existence of a "file copy," the final signed copy from the "chronological files" of Ms. Chism's response to CREW's April 21, 2005 FOIA request invokes the presumption that the letter was, in fact, mailed and delivered to CREW.

This presumption "is a very strong presumption and can only be rebutted by specific facts." *Makuch*, 2000 WL 915640, at *3 (citation and internal punctuation omitted); *see also Legille*, 544 F.2d at 8 (finding the presumption rebutted when the Patent Commissioner proffered evidence, in the form of a patent office stamp, showing that the plaintiff's patent applications were not timely delivered as would otherwise be presumed); *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996-97 (5th Cir. 1989) (finding, in a suit against an employer, that the presumption was not rebutted by a single employee's testimony that he did not remember receiving the letter in question); *Capital Data*, 778 F. Supp. at 676 (concluding, in response to plaintiff's "simply stat[ing] that there is no record of its having received the Notice" that "[s]uch a conclusory denial of receipt is insufficient to deprive the [federal agency] of the presumption to which it is entitled, and [plaintiff's] effort to present this factual dispute as a 'genuine' one must fail as well"); *Berotti v. West*, 11 Vet. App. 194, 198 (Vet. App. 1998) (finding that there was "insufficient evidence to rebut the presumption of proper notice of foreclosure" of plaintiff's property where "appellant supplied nothing more than his own testimony that he 'received no notice whatsoever' "); *Martin v. Marriott Corp.*, No. 91-2289. (Mem. Op.), 1992 WL 84902, at *3 (D.D.C. 1992) (finding presumption rebutted when party denying receipt pointed to specific fact that letter was sent to incorrect address); *cf. Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985) ("The mere denial of receipt does not rebut [the] presumption. There must be — in addition to denial of receipt — some proof that the regular office practice was

not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable.") (applying New York law).

In the present case, Ms. Weismann merely alleges that CREW does not have the letter in its files, and that Ms. Weismann lacks an independent recollection of ever seeing this letter.[15]  Opp. at 9; Weismann Dec. ¶ 3.  As in *Berotti*, such "bare allegations" provide "nothing of evidentiary value which would support [CREW's] conjecture."  *See Berotti*, 11 Vet. App. at 198;  *Martin*, 1992 WL 84902, at *3.  In sum, Defendant has more than met its burden of showing that Ms. Chism sent CREW a response to its third request of April 21, 2005.  Accordingly, Defendant is entitled to summary judgment on CREW's claims that the BIA never issued a response.

CONCLUSION

For the foregoing reasons, Defendant's motion for partial judgment as a matter of law and for partial judgment on the pleadings should be granted.

Dated: June 16, 2006                        Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            KENNETH L. WAINSTEIN
                                            United States Attorney for the District of Columbia

                                            /s/ Hannah Y.S. Chanoine
                                            ELIZABETH J. SHAPIRO (D.C. Bar 418925)
                                            HANNAH Y.S. CHANOINE
                                            United States Department of Justice, Civil Division
                                            Federal Programs Branch
                                            20 Massachusetts Ave., N.W. Room 7340
                                            Washington, D.C. 20001
                                            (202) 305-2318
                                            *Attorneys for Defendant*

---

[15]  Ms. Weismann's declaration reflects obvious errors. She confusingly avers that the two BIA letters from Ms. Chism were dated <u>March</u> 29, 2005.  Weismann Dec. ¶¶ 3, 5.  In fact, the two letters were dated <u>July</u> 29, 2005.