## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| CITIZENS FOR RESPONSIBILITY AND | ) | |
| ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2339 (RBW) |
| | ) | |
| DEPARTMENT OF THE INTERIOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

The non-profit organization Citizens for Responsibility and Ethics in Washington ("the plaintiff" or "CREW") brings this action against the United States Department of the Interior ("the defendant" or "DOI") seeking disclosure of certain records and information requested pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 et seq. (2000). Complaint ("Compl.") ¶ 1. The documents sought by the plaintiff, which comprise four FOIA requests, see id. ¶¶ 30-42, "relat[e] to contacts between [the] DOI and specified individuals and entities that have been linked to the lobbying activities of Jack Abramoff at [the] DOI on behalf of specific Indian tribes, as well as DOI records related to six Indian tribes on this subject," id. ¶ 1.[1] Currently before the Court is the defendant's motion for partial judgment on the pleadings and

---

[1] CREW submitted its requests to two components of the DOI: the Office of the Secretary ("OS") and the Bureau of Indian Affairs ("BIA"). Defendant's Motion for Judgment on the Pleadings and Partial Summary Judgment ("Def.'s Mot.") at 1. The Bureau of Indian Affairs maintains and manages its own records and is a component of the DOI separate from the OS. Id. at 2 n.1. As explained further below, the plaintiff's April 21, 2005 FOIA request was made directly to the BIA. Compl.¶ 42; Def.'s Mot. at 9.

for partial summary judgment ("Def.'s Mot.").[2]  For the reasons set forth below, the Court grants

the defendant's motion and dismisses the plaintiff's complaint.

## I. Factual Background

The plaintiff alleges the following facts in support of its complaint.[3]  CREW is a non-

profit organization "committed to protecting the right of citizens to be informed about the

activities of government officials and to ensuring the integrity of government officials." Compl. ¶

4.  Under the FOIA, government agencies are required to release requested records to the public

unless there is an applicable statutory exception.  Id. ¶ 8; see 5 U.S.C. § 552 (a)(3)(A) (stating

that each agency shall generally make requested records available to any person).

The impetus behind this litigation can be described as follows:  Over the course of six

months in 2005, CREW made four FOIA requests to two components of the DOI regarding

contacts between lobbyist Jack Abramoff, a number of government officials and six Indian tribes,

following revelations about Abramoff's alleged involvement in various acts of corruption and

influence peddling.  Compl. ¶¶ 14-24.  During the course of the submission of the plaintiff's

FOIA request, Susan Schmidt of the Washington Post wrote an article about the scandal on

---

[2]  The following papers have been submitted in connection with this motion:  (1) Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings and Partial Summary Judgment ("Pl.'s Opp'n"); (2) Reply Memorandum in Support of Defendant's Motion for Partial Judgment on the Pleadings and Partial Summary Judgment ("Def.'s Reply"); (3) Defendant's Statement of Undisputed Material Facts ("Def.'s Stmt."); and (4) Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl.'s Resp.").

[3]  In considering the defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court must "view the complaint's allegations in the light most favorable to the plaintiff." Thompson v. District of Columbia, 428 F.3d 283, 284 (D.C. Cir. 2005) (citation omitted).  Moreover, "[i]n deciding whether there is a genuine issue of material fact [precluding a grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c)], the [C]ourt must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record."  Dist. Intown Props. Ltd. v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999) (citation omitted).  The plaintiff's allegations are undisputed except where noted by the Court.

August 28, 2005, that cited, <u>inter alia</u>, e-mails implicating a former DOI official in Abramoff's

effort to block the development of a casino that would have competed with one of Abramoff's

tribal clients.  <u>Id.</u> ¶ 25.  According to the article, "copies of Abramoff's e-mails referencing [DOI

officials] were obtained from a variety of sources, including the Interior Department."  Compl.,

Exhibit ("Ex.") N (August 28, 2005 <u>Washington Post</u> article by Susan Schmidt) at 2.  Because

the DOI's responses to the plaintiff's FOIA requests did not include any of these e-mails, <u>see</u>

Pl.'s Opp'n at 24 (stating that "the DOI's repeated failure to produce or account for the missing

email alone demonstrates the inadequacy of its searches"), the plaintiff filed the complaint in this

case on December 7, 2005, alleging, <u>inter alia</u>, that the defendant's searches were inadequate, <u>see</u>

Compl. ¶¶ 1, 47 (stating that "[the] DOI has failed to conduct an adequate search, and has failed

to use search methods reasonably expected to produce all documents responsive to plaintiff's

three FOIA requests"); Def.'s Stmt. ¶¶ 100-101 (identifying claims made by the plaintiff in its

December 7, 2005 FOIA action).  The plaintiff also alleges that the BIA is in violation of the

FOIA because it did not respond to the plaintiff's FOIA request of April 21, 2005, within the

statutorily required time period.  Compl. ¶¶ 55-57; <u>see also</u> Def.'s Stmt. ¶ 101.

   **A. The March 18, 2005 FOIA Request**

   On March 18, 2005, the plaintiff requested documents and information from the

defendant under the FOIA, regardless of format and including electronic records, relating, <u>inter</u>

<u>alia</u>, to "any contact, dating from January 1, 2001 to the present, that any office of the

Department of the Interior may have had . . . with Jack Abramoff" and a host of other

individuals, employees of various organizations, firms, and members of Congress.  Compl., Ex.

T (March 18, 2005 FOIA request from CREW to the DOI) at 1; <u>see also</u> Compl. ¶ 30; Def.'s

Stmt. ¶¶ 2-6.  The request also sought "any records, dating from January 1, 2001 to the present, from any office of the Department of the Interior[,] including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs," regarding six Indian tribes.  Compl., Ex. T at 1.  After receiving the request, Linda Thomas, the employee responsible for processing FOIA requests at the OS, telephoned the CREW representative who had filed the request.  Def.'s Mot., Ex. 001 (Declaration of Linda S. Thomas) ("Thomas Decl.") ¶ 5.  Ms. Thomas explained that she would "search through" documents that had been produced through similar FOIA requests and provide CREW with documents from those searches that were responsive to its request.  Id.; see also Pl.'s Resp. ¶ 11 (stating that Ms. Thomas promised to provide CREW with responsive documents that the DOI had already provided to other requesters); Def.'s Mot. at 3; Def.'s Stmt. ¶¶ 9-11.  According to Ms. Thomas, the CREW representative indicated during that telephone call "that the search efforts described [by Thomas] would be sufficient and [that] it would not be necessary for the Department to pursue the electronic records portion of [the March 18, 2005] request at that time."  Thomas Decl. ¶ 5; see Def.'s Mot. at 4.  While admitting that the telephone call took place, Pl.'s Resp. ¶ 10, the plaintiff denies that the conversation limited the scope of its March 18th request by excluding electronic communications, id. ¶ 13.

The DOI issued three responses to the plaintiff's March 18, 2005 FOIA request.  The agency made an initial partial response to the plaintiff's request on March 21, 2005, which produced 218 documents.  Compl. ¶ 31; Def.'s Mot. at 4.  The DOI made a second partial response to the March 18th request on April 12, 2005, which contained the results of a search of

the Secretary's Automated Correspondence Indexing System.[4]  Compl. ¶ 32; Def.'s Mot. at 5.

On April 27, 2005, the defendant provided a final response to the plaintiff's March 18th request.

Compl. ¶ 33; Pl.'s Opp. at 7; Def.'s Mot. at 5.  The April 27th response referenced the purported

agreement to limit the scope of the March 18th request, stating:

> As you will recall, by telephone we agreed that . . . within the Office of the
> Secretary you would accept appointment records for Secretary Norton and
> for former Deputy Secretary Griles . . . and for all of the parties and topics
> mentioned, and the index results of a search of the Secretary's Automated
> Correspondence Indexing System.

Compl., Ex. W (April 27, 2005 response to CREW's March 18th FOIA request) at 2.  The

response also expressly stated that CREW had thirty days to appeal the DOI's response.[5]  Id. at 5.

CREW did not file an administrative appeal within the allotted time period.  Instead, it

collectively appealed all three of the defendant's responses to its March 18th request to the DOI's

FOIA Appeals Officer on October 20, 2005.  Compl., Ex. BB (October 20, 2005 FOIA Appeal).

In its appeal, CREW argued that the DOI had conducted an inadequate search for documents

responsive to its request, citing as support for its assertion the August 28th Washington Post

article as well as multiple references by the Senate Indian Affairs Committee to existing e-mails

that it had allegedly not received from the DOI.  Compl. ¶ 39; Def.'s Stmt. ¶¶ 86, 89.  The DOI

denied the defendant's administrative appeal on November 28, 2005, on the grounds that it was

---

[4] During the telephone conversation with the CREW representative, Ms. Thomas stated that she would "coordinate a search of the Secretary's Automated Correspondence Indexing System" to retrieve documents responsive to CREW's March 18th request.  Thomas Decl. ¶ 5.

[5] Under the DOI's regulations, a FOIA requester has 30 workdays from the receipt of a final response or the receipt of any records provided by the agency to file an appeal.  43 CFR §§ 2.28-2.29 (2007); see also 5 U.S.C. § 552(a)(6)(A)(I) (directing agencies to "notify the person making [a FOIA] request of [its] determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination").

untimely.  Compl., Ex. CC (November 28, 2005 letter from FOIA Appeals Officer Darrell

Strayhorn to CREW) at 1; see also Compl. ¶ 41; Def.'s Stmt. ¶¶ 95-96.

    **B. The April 5, 2005 FOIA Request**

    The plaintiff sent a second FOIA request to the DOI on April 5, 2005, specifically

requesting, inter alia,

> all electronic records relating to any contact . . . that any of [a number of listed
> officials within the DOI] may have had with the individuals and entities outlined in
> [CREW's] March 18, 2005 FOIA request relating to any matter within the
> jurisdiction of the [BIA], and all contacts [these listed officials] had with the six
> Indian Tribes listed in [CREW's] earlier request.

Compl., Ex. X (April 5, 2005 FOIA request from CREW to the DOI); see Compl. ¶ 34.  The

April 5th request also asked for the electronic records of people occupying certain positions at

the BIA from January 1, 2001, until the time of the request, and sought all documents relating to

a meeting conducted by the Secretary of the DOI on November 8, 2002.  Compl., Ex. X at 1-2.

The OS advised the plaintiff to submit this new request because its March 18th request had been

narrowed to exclude electronic records.  Def.'s Mot. at 6-7; see also Thomas Decl. ¶ 11 (stating

that she had "advised [CREW] to submit a new FOIA request because the request of March 18,

2005 has been narrowed by [CREW] to exclude electronic records").  The April 5th FOIA

request stated that the plaintiff thought a new FOIA request was unnecessary, but that the DOI

should, "if necessary, . . . consider this letter to constitute a FOIA request and process it

accordingly."  Compl., Ex. X at 2; see Def.'s Mot. at 6-7; Pl.'s Opp'n at 7 (acknowledging that it

told the DOI that, if necessary, the April 5th letter should be treated as a FOIA request).

    The BIA and the OS issued separate responses to the plaintiff's April 5, 2005 request.  In

a letter dated July 29, 2005, the BIA informed the plaintiff that it was unable to locate any

documents responsive to the request.  Compl., Ex. Y (BIA's July 29, 2005 response to plaintiff's

April 5th FOIA request); see Def.'s Mot. at 8-9; Pl.'s Opp'n at 8.  Then, on August 24, 2005, the

OS produced eleven documents that it deemed responsive to the April 5th request.  Pl.'s Opp'n at

9; Def.'s Mot. at 7-8; Thomas Decl. ¶ 21 (stating that "on August 24, 2005, [she] prepared a

letter to [CREW][,]transmitting to them the responsive, non-exempt portions, which included 11

documents, consisting of 54 pages.")  Additionally, the OS's August 24th response stated that the

plaintiff had the right to appeal the agency's response, and that "[the plaintiff's] appeal letter

must be received no later than 30 calendar days  . . . from [the] receipt of these documents."

Thomas Decl., Ex. F (August 24, 2005 response by the OS to CREW's April 5th FOIA request)

at 5.

    Again, the plaintiff did not file an appeal within the allotted time period.  Instead, CREW

appealed the BIA's response on October 20, 2005, Compl. ¶ 39; Def.'s Stmt. ¶ 86, and did not

appeal the OS's August 24, 2005 response to its April 5th request at all.  Pl.'s Resp. ¶ 87; Def.'s

Stmt. ¶ 44.  CREW's administrative appeal of the BIA's response was denied on November 28,

2005, as untimely filed.  Compl., Ex. CC at 1; see Compl. ¶ 41; Def.'s Stmt. ¶¶ 95-96.

### C. The April 21, 2005 FOIA Request

    At the suggestion of the OS, the plaintiff filed a third FOIA request directly with the BIA

on April 21, 2005.  Compl. ¶ 42; Pl.'s Resp. at 1; Def.'s Mot. at 9.  This request was similar to

the request CREW made on April 5, 2005 to the OS, Compl. ¶ 42, and specifically sought, inter

alia,  "information pertaining to efforts of any and all of the above-delineated tribes to receive

DOI approval for gaming."  Compl., Ex. DD (April 21, 2005 FOIA request from CREW to the

BIA).  According to the defendant, the BIA official responsible for processing the request

determined that the request was too broad and sent a letter to CREW on July 29, 2005,

explaining that CREW needed to narrow its request.  Def.'s Mot. at 8-9 (citing the BIA's July 29,

2005 letter); see also Def.'s Mot., Ex. 003 (Declaration of Thomas H. Hartman) ("Hartman

Decl.") ¶ 10 (stating that he "determined that [the] subject area of [the April 21, 2005] request []

was too broad").  CREW disputes that it received a response to this request, noting that "the copy

included with the defendant's brief is neither signed nor on letterhead," in contrast to the July

29th letter responding to the plaintiff's April 5th request.[6]  Pl.'s Opp'n at 9; Def.'s Mot. at 10.

Because the BIA did not respond to the plaintiff's request within the twenty day period

prescribed by statute, the plaintiff alleges that the BIA is in violation of the FOIA.[7]  Compl. ¶¶

55-57; see 5 U.S.C. § 552(a)(6)(A)(I) (directing an agency, with certain limited exceptions, to

"determine within 20 days . . . [of] the receipt of [a FOIA] request whether to comply with such

request and [thenceforth to] immediately notify the person making such request of [its]

determination and the reasons therefor, and of the right of such person to appeal to the head of

the agency any adverse determination").

### D.  The September 26, 2005 FOIA Request

The plaintiff alleges that it realized that "[the] DOI had still not fulfilled its obligations

under the FOIA" when "[n]one of the documents [the] DOI had provided [to] CREW included

any of the emails referenced in the [August 28, 2005] Washington Post article."  Pl.'s Opp'n at

---

[6] Allegedly, there are two letters that were sent on July 29, 2005, from the BIA to CREW, with one being a response to CREW's April 5th FOIA request and the other being a response to CREW's April 21st FOIA request. The existence of the latter is disputed by the plaintiff.  Pl.'s Opp'n at 9.

[7] The plaintiff states that it does not possess the July 29th response from the BIA, nor does it recall ever receiving it.  Pl.'s Opp'n at 9.  The defendant claims that the letter was sent and has included, as evidentiary support, the declarations of three employees who attest to this fact.  See Hartman Decl.; Def.'s Mot., Ex. 002 (Declaration of Willie S. Chism) ("Chism Decl."); Def.'s Mot., Ex. 006 (Declaration of Kawenniiosta Boots) ("Boots Decl.").

10; see also id. at 12 (alleging that the plaintiff "had no reason to doubt the adequacy of [the] DOI's prior searches until [the] . . . August 28, 2005 article").  CREW then contacted Linda Thomas at the OS to obtain "copies of the electronic mail messages . . . that were cited in the article."  Def.'s Stmt. ¶ 73; see also Pl.'s Resp. ¶ 73.  Ms. Thomas advised CREW that the author of the Post article "had herself made FOIA requests to the OS" prior to the article's publication, Def.'s Stmt. ¶ 74; see also Pl.'s Resp. ¶ 74,  and "suggested that [the plaintiff] make another FOIA request for documents, other than those already provided to CREW, that were provided by [the] DOI to Ms. Schmidt, prior to the publication of the August 28, 2005 article," Def.'s Stmt. ¶ 76; see Pl.'s Resp. ¶ 76; see also Thomas Decl. ¶ 22.  Specifically, Ms. Thomas recommended that the plaintiff "should request copies of the documents Ms. Schmidt received in response to the FOIA requests numbered . . . OS-2005-02288, OS-2005-00249, OS-2005-00272, and OS-2005-00413."  Def.'s Stmt. ¶ 78; see also Pl.'s Resp. ¶ 78.  However, Ms. Thomas cautioned the plaintiff that she "did not believe that Ms. Schmidt had obtained the emails referenced in the article through a FOIA request to the OS."  Def.'s Stmt. ¶ 75; see Pl.'s Resp. ¶ 75 (contending that "Ms. Thomas has failed to explain sufficiently the underlying basis for this belief").  Accordingly, the plaintiff filed another FOIA request on September 26, 2005, seeking those documents referenced by Ms. Thomas.  Compl. ¶ 37; Def.'s Stmt. ¶ 80; see Compl., Ex. Z (September 26, 2005 e-mail from CREW to the DOI).  The defendant responded to the plaintiff's final request on September 27, 2005, providing 146 pages of documents.[8]  Def.'s Stmt. ¶ 83; Pl.'s Resp. ¶ 82; see Compl., Ex. AA (September 27, 2005 letter from the DOI to CREW).  The

---

[8] After realizing that it had "inadvertently failed to recommend that CREW request a second partial response [to a previous FOIA request]," the defendant issued an amended response to the request of September 26th on April 19, 2006.  Def.'s Stmt. ¶ 104; see also Pl.'s Resp. ¶ 103.

response stated, inter alia, that the records produced in connection with CREW's September 26, 2005 FOIA request "were selected because of [the] phone conversation in which [CREW] asked for any documents which [it] had not yet received but which had been sent to a particular author of a news story." Compl., Ex. AA at 1; see Def.'s Stmt. ¶ 84; Pl.'s Resp. ¶ 84. It further stated that "[a]n examination of [DOI] records identified the [four listed] FOIA requests as those containing such requests." Compl., Ex. AA at 1. The e-mails referenced in the August 2005 Post article were not among the records produced by the DOI in connection with CREW's request. See Compl. ¶ 38. Accordingly, the plaintiff filed a timely appeal of the DOI's September 27th response on October 20, 2005. Id. ¶ 39.

### E. Summary of CREW's Administrative Appeals to the DOI

As mentioned above, the plaintiff filed an administrative appeal on Oct. 20, 2005, alleging that the DOI searches in response to its various FOIA requests were inadequate. CREW specifically appealed (1) the OS's three responses to its FOIA request of March 18, 2005; (2) the BIA's response to its April 5, 2005 request and; (3) the OS's response to its September 26, 2005 request.[9] Pl.'s Opp'n at 12; Def.'s Stmt. ¶ 86 n.6; see also Compl., Ex. BB. According to the plaintiff, the contents of the August 28, 2005 Washington Post article clearly establishes that e-mails were exchanged that were (1) within the scope of the plaintiff's FOIA requests; and (2) not produced by the defendant. See Pl.'s Opp'n at 12. Thus, the plaintiff contends that the defendant's searches were inadequate. See id. On November 28, 2005, the defendant denied CREW's appeal of the March 18, 2005 and April 5, 2005 responses as untimely filed and denied

---

[9] The plaintiff did not appeal the OS's August 24th response to its April 5th request or the BIA's July 29, 2005 response to its April 21st request. Pl.'s Opp'n at 8-9; Def.'s Stmt. ¶ 87; see Compl., Ex. BB.

the plaintiff's appeal of the September 26th response on the grounds that the search was adequate.  Pl.'s Opp'n at 13-14; Def.'s Stmt. ¶¶ 96-97.

###### F.  Commencement of the Present Litigation

As noted above, the plaintiff filed this FOIA action on December 7, 2005, alleging that (1) the DOI failed to conduct an adequate search and has failed to use search methods reasonably expected to produce all documents responsive to its three FOIA requests; (2) the BIA failed to release records in violation of the FOIA; and (3) the BIA is in violation of the FOIA for failing to respond to the plaintiff's April 21st request within the statutory time period.  Compl. ¶¶ 45-57; Def.'s Stmt. ¶¶ 100-101.  In response, the defendant filed a motion for partial judgment on the pleadings and for partial summary judgment on April 21, 2006, claiming that (1) the plaintiff failed to exhaust its administrative remedies by filing untimely administrative appeals or neglecting to file appeals; (2) the defendant provided the plaintiff with all of the information requested in the September 26th FOIA request, thus rendering the plaintiff's request for production moot; and (3) one of the challenged FOIA requests remains open because the plaintiff never responded to a letter BIA allegedly sent on July 29, 2005, asking the plaintiff to narrow the scope of its April 21st FOIA request.  Def.'s Mot. at 1-2.  The plaintiff replied to the defendant's motion on May 18, 2006, arguing that its diligence in pursuing administrative remedies made this a proper matter for the Court's review and that the defendant has not met its burden of proving that it conducted an adequate search for all responsive documents.  Pl.'s Opp'n at 15, 21.

## II. Standards of Review

### A. Motions for Judgment on the Pleadings

Courts will grant judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations [in the complaint]." Longwood Vill. Rest., Ltd. v. Ashcroft, 157 F. Supp. 2d 61, 66 (D.D.C. 2001) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Fed. R. Civ. P. 12(c). "[I]f there are allegations in the complaint which, if proved, would provide a basis for recovery[,]" the Court cannot grant judgment on the pleadings. Bradley v. Smith, 235 F.R.D. 125, 126 (D.D.C. 2006) (internal quotation marks and citation omitted). "[A]ll factual doubts [must therefore be] resolved in favor of the plaintiff[]." Chang v. United States, 338 F. Supp. 2d 20, 21 (D.D.C. 2004) (citation omitted). The standard of review under Rule 12(c) is thus essentially the same as that for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plain v. AT&T Corp., 424 F. Supp. 2d 11, 20 n.11 (D.D.C. 2006).

### B. Motions for Summary Judgment

Courts will grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's

favor and accept the non-moving party's evidence as true.  <u>Anderson v. Liberty Lobby</u>, 477 U.S.

242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials,"

<u>Burke v. Gould</u>, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 248)

(quotation marks omitted), and "conclusory allegations unsupported by factual data will not

create a triable issue of fact," <u>Pub. Citizen Health Research Group v. FDA</u>, 185 F.3d 898, 908

(D.C. Cir. 1999) (internal quotation marks and citations omitted).   If the Court concludes that

"the non-moving party has failed to make a sufficient showing on an essential element of [its]

case with respect to which [it] has the burden of proof," then the moving party is entitled to

summary judgment.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

"[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency

records unless the records are covered by the statute's exemptions."  <u>Students Against Genocide</u>

<u>v. Dep't of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted).  The Court will grant

summary judgment to the government in a FOIA case only if the agency can prove "that it has

fully discharged its obligations under the FOIA, after the underlying facts and the inferences to

be drawn from them are construed in the light most favorable to the FOIA requester."  <u>Friends of</u>

<u>Blackwater v. Dep't of Interior</u>, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (internal quotation

marks and citations omitted).  Thus, in a lawsuit brought to compel the production of documents

under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute

and if it demonstrates that each document that falls within the class requested either has been

produced . . . or is wholly[, or partially,] exempt [from disclosure]."  <u>Students Against Genocide</u>,

257 F.3d at 833 (internal quotation marks and citation omitted).

### III. Legal Analysis

### A.  The Defendant's Motion for Partial Judgment on the Pleadings

The defendant claims that it is entitled to partial summary judgment on the pleadings because it is undisputed that the plaintiff failed to exhaust its administrative remedies as to the agency responses to its FOIA requests of March 18, 2005, April 5, 2005, and April 21, 2005. Def.'s Mot. at 17.  While the plaintiff acknowledges that it did not file an administrative appeal pertaining to its March 18th and April 5th FOIA requests until months after receiving the DOI's responses, see Pl.'s Opp'n at 12, and although it admits that it never appealed the OS's August 24, 2005 response to its April 5th request or the DOI's alleged failure to respond to its April 21st request, Pl.'s Resp. ¶ 87, it nevertheless contends that judicial review of its claims is proper because "it acted diligently and in as timely a manner as possible, based on the facts known to it during the initial thirty day appeal period[s]," Pl.'s Opp. at 18.  Thus, the plaintiff posits that the purposes of exhaustion would not be served by barring its claims.  Id. at 16.  The Court disagrees.

The District of Columbia Circuit has conclusively held that "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under [the] FOIA."  Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004) (internal quotation marks and citation omitted); see also Spannaus v. Dep't of Justice, 824 F.2d 52, 57-58 (D.C. Cir. 1987) (stating that "[i]t goes without saying that exhaustion is required in FOIA cases").  As a result of this requirement, "a [FOIA] requester . . . must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response."  Wilbur, 355 F.3d at 676 (internal quotation marks and citation omitted).  Here, DOI regulations state that an appeal on the grounds that a search pursuant to a FOIA request was inadequate "must be

14

received by the FOIA Appeals Officer no later than 30 workdays after the date of the final

response." 43 CFR § 2.29(a) (2007). Therefore, the plaintiff's October 20, 2005 attempt to

exhaust its administrative remedies in connection with FOIA requests for which final responses

were provided in April and July 2005 is indisputably untimely. See Compl., Exs. W & Y.

The exhaustion of administrative remedies does not constitute a jurisdictional prerequisite

for plaintiffs seeking to challenge the adequacy of an agency's response to a FOIA request in

federal court. Wilbur, 355 F.3d at 677 (stating that "[administrative] exhaustion of a FOIA

request is not jurisdictional because the FOIA does not unequivocally make it so") (internal

quotation marks and citation omitted); see Avocados Plus v. Veneman, 370 F.3d 1243, 1248

(D.C. Cir. 2004) (holding that only where "a statute . . . contain[s] sweeping and direct statutory

language indicating that there is no federal jurisdiction prior to exhaustion" may courts conclude

that a particular exhaustion requirement is jurisdictional). Nevertheless, "as a jurisprudential

doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the

particular administrative scheme support such a bar." Wilbur, 355 F.3d at 677 (internal

quotation marks and citation omitted). The Court must therefore "balanc[e] the interest of the

[plaintiff] in retaining prompt access to a federal judicial forum against the countervailing

institutional interests favoring exhaustion." Avocados Plus, 370 F.3d at 1251 (internal quotation

marks and citation omitted). In this case, a balancing of the interests does not weigh in the

plaintiff's favor for several reasons, and consequently the exhaustion requirement should not be

excused.

First, "the FOIA's administrative scheme favors treating failure to exhaust as a bar to

judicial review." Wilbur, 355 F.3d at 677 (internal quotation marks and citation omitted). Under

the FOIA, no less than any other challenge to agency action, "[e]xhaustion of administrative remedies is generally required before seeking judicial review to that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Id. (internal quotation marks and citation omitted). The DOI was given no such opportunity in this instance. Moreover, "[a] district court may, in its discretion, excuse exhaustion if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." Avocados Plus, 370 F.3d at 1247 (internal quotations and citation omitted); see also id. (stating that "[n]on-jurisdictional exhaustion serves three functions: giving agencies the opportunity to correct their own errors, affording parties and courts the benefit of agencies' expertise, [and] compiling a record adequate for judicial review") (internal quotation marks and citations omitted). Here, however, the purposes of exhaustion would be substantially ill-served by allowing the plaintiff to contest the adequacy of the DOI's responses in court without first having proceeded through the proper administrative channels. The plaintiff did not "pursue the administrative process to its end," as it claims, Pl.'s Opp'n at 18 (citing Wilbur, 355 F.3d at 677), despite having ample time to do so. Instead, the plaintiff filed late administrative appeals of certain agency responses to its FOIA requests and failed to appeal others at all. Excusing exhaustion in this case would therefore interfere with the defendant agency's autonomy and would deprive it of "the opportunity to correct [its] own errors." Avocados Plus, 370 F.3d at 1247. Although the plaintiff has repeatedly represented, as justification for the late filing of its appeal, that it did not become aware of the potential inadequacies of the defendant's search until the Washington Post article of August 28, 2005, Comp. ¶ 36; Pl.'s Opp'n at 18, it conveniently

16

omits from its complaint the fact that the OS issued a final response to the plaintiff's April 5th

request, a request specifically asking for electronic records, on August 24, 2005. CREW

therefore had until October 5, 2005, thirty workdays from the defendant's final response, to

appeal and challenge the adequacy of the DOI's search.[10]  The plaintiff's revelation about the

potential inadequacy of the defendant's searches occurred on August 28, 2005, within four days

after the final response was issued and well within the 30 day time period to file an appeal. See

Def.'s Reply at 3-4.  However, the plaintiff never appealed this response, nor has it provided a

satisfactory explanation for its inaction.  Accordingly, the Court agrees with the defendant that on

this record, the plaintiff has not demonstrated diligence in exhausting its administrative remedies.

Id.

The plaintiff argues that its lawsuit "presents no risk of undermining the purposes and

policies underlying the exhaustion requirement" because the plaintiff has not tried to bypass the

administrative review process, "but has pursued it to its end."  Pl.'s Opp'n at 17-18 (citing

Wilbur, 355 F.3d at 677).   According to the plaintiff, barring its claims from judicial review

would "encourage FOIA requesters to file potentially non-meritorious appeals within the initial

30-day period."  Id. at 18.  Again, plaintiff ignores the fact that it had adequate opportunity to

appeal the agency's response to its request for emails within the 30-day time period after learning

---

[10]  CREW also posits that it is immaterial that it did not file an administrative appeal to the defendant's August 28th response because the records that it seeks are within the scope of the March 18th request and the agency's response to that request is subject to judicial review. Pl.'s Opp'n at 20.  This argument is not compelling. The plaintiff stated in its April 5th request that, while it disagreed that this request needed to be treated as a new request because its March 18th request had been narrowed, "it should be treated as such if necessary." Def.'s Stmt.¶ 36; Compl., Ex. X at 2.  Accordingly, the plaintiff was on notice that the April 5th request was being treated as a new request and should have properly appealed the defendant's response of August 24, 2005 in order to satisfy the exhaustion requirement.

of the existence of possible responsive emails, and failed to do so.  As stated by the District of

Columbia Circuit in Avocados Plus, one of the purposes of the exhaustion requirement is to

allow an agency to correct its own mistakes.  Avocados Plus, 370 F. 3d at 1247.  The focus of

this litigation is whether the DOI conducted an adequate search, see Compl. ¶ 47 (stating in the

Claim for Relief that "[the] DOI has failed to conduct an adequate search, and has failed to use

search methods reasonably expected to produce all documents responsive to [the] [p]laintiff's

three FOIA requests"), and the Court agrees with the defendant that the plaintiff's failure to

appeal the August 24th final response deprived it of the  opportunity to correct the errors alleged

by the plaintiff.  The Court fails to appreciate how excusing the exhaustion requirement in this

case would further the interest in agency autonomy that the requirement is designed to promote.

Furthermore, the Avocados Plus Court identified "the government's interest in

efficiency" as a factor in determining whether a district court should excuse exhaustion.

Avocados Plus, 370 F.3d at 1247.  Here, the interest in efficiency weighs heavily in favor of the

defendant.  The plaintiff emphatically states that

> [t]he DOI . . . has seemingly stymied CREW's efforts to learn the truth.  Despite the growing
> evidence uncovered by the news media and the U.S. Senate Indian Affairs Committee during
> its multiple hearings on the Indian gaming scandal . . . DOI has refused to conduct an
> adequate search for the email.  When external evidence . . . made apparent that [the] DOI had
> failed to produce critical documents, including internal email, CREW gave [the] DOI more
> chances to address the gross inadequacies in its responses by filing administrative appeals.

Pl.'s Opp'n at 2-3.  As noted previously, the plaintiff contends that the DOI's searches were

inadequate because they failed to produce e-mails referenced in the August 28th Washington

Post article.  But these disclosures, which the plaintiff describes as "obvious leads," id. at 22,

came after the agency conducted its searches in March and April of 2005.  Def.'s Reply at 14.

18

The Court disagrees with the plaintiff that an agency's hesitancy to pursue potential leads <u>after</u> its search has been completed deems the search inadequate and justifies reviving unexhausted claims.  In <u>Kowalczyk v. Department of Justice</u>, the District of Columbia Circuit stated that a "reasonable effort to satisfy [a] request does not entail an obligation to search anew based upon a subsequent clarification."  73 F.3d 386, 388 (D.C. Cir. 1996). An agency need only pursue "a lead it cannot in good faith ignore."  <u>Id.</u> at 389.  If the agency were required to undertake an additional search every time information became available that clarified a prior request, it "could extend indefinitely the delay in processing new requests."  <u>Id.</u> at 388.  The interest in governmental efficiency in processing requests is therefore applicable to this case.  If the DOI were required to conduct new searches <u>after</u> they had issued final responses, it would delay the processing of new requests and create a substantial backlog.

The more efficient method of obtaining information, rather than attempting to revive an unexhausted claim by filing a late appeal, would be for the plaintiff to file an additional FOIA request.  The plaintiff has the ability to file additional FOIA requests at relatively little inconvenience and cost.  Indeed, there is nothing to prevent the plaintiff from filing a second, more specific FOIA request, which by its terms would be likely to encompass the documents it now seeks.[11]  <u>See id.</u> at 389 (noting that "if the [FOIA] requester discovers leads in documents [it] receives from the agency, [it] may pursue those leads through a second FOIA request"); <u>see also</u> <u>Spannaus</u>, 824 F.2d at 61 (affirming a district court's dismissal of a FOIA action as untimely

---

[11] While it is true that CREW filed a subsequent FOIA request on September 26, 2005, it narrowed its request to include only those documents given to other requesters in four specific previous requests.  As discussed further below, the DOI was "not obliged to look beyond the four corners of the request for leads to the location of responsive documents."  <u>Kowalczyk</u>, 73 F.3d at 389.

and observing that the plaintiff "can simply refile his FOIA request tomorrow and restart the

process").

    Because the plaintiff failed to exhaust all administrative remedies by filing late

administrative appeals, or in some instances, by declining to appeal at all, and in light of the fact

that the plaintiff has the opportunity to file another FOIA request to obtain the information they

are seeking, a balancing of the interests does not weigh in the plaintiff's favor.  See Avocados

Plus, 370 F.3d at 1251; Wilbur, 355 F.3d at 677.  The Court therefore declines to exercise its

discretion and excuse the plaintiff's failure to exhaust its administrative remedies.  Accordingly,

the defendant's motion for judgment on the pleadings with respect to the plaintiff's claims as to

the March 18th and April 5th searches is granted.

### B. The Defendant's Motion for Partial Summary Judgment

    The plaintiff claims that the defendant's search for documents responsive to its FOIA

requests was inadequate because (1) there exist "positive indicia of overlooked material"; and (2)

despite this evidence, "[the] DOI failed to undertake a systematic approach in locating

[additional] responsive documents."  Pl.'s Opp'n at 22; see also id. (arguing that the defendant

"repeated[ly] refus[ed] to follow through on obvious leads to discover requested documents")

(internal quotation marks and citation omitted).  Therefore, the plaintiff argues that the

defendant's motion for summary judgment must be denied.  As support for its position, the

plaintiff alleges that "[t]he Washington Post article of August [2]8, 2005, as well as subsequent

disclosures by the Senate Indian Affairs Committee, put [the] DOI on notice that there were

outstanding email[s] within DOI that the agency had failed to uncover," which should have

caused the defendant to "renew its search for those clearly responsive documents." Id. The Court disagrees.

The District of Columbia Circuit has held that "once all requested records [have been] surrendered [by an agency in response to a FOIA request], federal courts have no further statutory duty to perform." Perry v. Block, 684 F.2d 121,125 (D.C. Cir. 1982) (also stating that federal courts are "authorized only to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld") (internal quotation marks and citation omitted). Here, the plaintiff's September 26th FOIA request asked for documents that were previously provided to other FOIA requesters (but not to the plaintiff) in four similar requests, specifically, OS-2005-00-288, OS-2005-00-249, OS-2005-00-272, and OS-2005-00-413. Compl. ¶ 37; Def.'s Mot. at 24. These documents were provided to the plaintiff in the DOI's final response of September 27, 2005. Def.'s Stmt. ¶¶ 82-84; Pl.'s Resp.¶ 82; Compl., Ex. Z. The plaintiff does not dispute that it received all documents specifically responsive to its request, but maintains that considering this particular request and the response to it in isolation "seriously misstates what is at issue" because the inadequacy of the DOI's search must be viewed in broader terms.[12] Pl.'s Opp'n at 23. However, an agency's duty is simply to conduct a

_____

[12] The plaintiff argues that "the contours of [the September 26th] request, like the contours of earlier requests [the] DOI advised CREW to make, were set by [the] DOI based on representations [the] DOI made to CREW about how to best obtain the email CREW has been seeking," and that "[the] DOI has . . . consistently led CREW down false paths." Pl.'s Opp'n at 23-24. While it is true that the DOI made recommendations to CREW regarding what its FOIA requests should encompass, the Court does not see this as an intentional effort to lead CREW astray. As stated above, the Washington Post article of August 28th was published after the DOI had issued final responses to CREW's March 18th and April 5th FOIA requests, and thus, contrary to the plaintiff's contention, there was no "refusal to follow obvious leads." Pl.'s Opp'n at 22 (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999)). Additionally, Ms. Thomas, who handled CREW's September 26th FOIA request, stated that she told CREW at the time of its request that "[b]ased on my experience processing previous FOIA requests from Ms. Schmidt, [the author of the August 28th Washington Post article], I did not believe that [Ms. Schmidt] had obtained the electronic mail messages she referenced in her article through a FOIA request to the
(continued...)

reasonable search, and "[the agency] is not obliged to look beyond the four corners of the [FOIA]

request for leads to the location of responsive documents." Kowalczyk, 73 F.3d at 389. Because

the defendant fulfilled the plaintiff's request by producing, as the plaintiff had asked, all

documents previously provided to Ms. Schmidt in FOIA requests OS-2005-00-288, OS-2005-00-

249, OS-2005-00-272, and OS-2005-00-413, there can be no question as to the adequacy of the

defendant's search. See Def.'s Stmt. ¶¶ 73-80; Pl.'s Resp. ¶¶ 73-80; Compl., Ex. Z (September

26, 2005 e-mail from CREW to the DOI). Furthermore, as stated above, to the extent that the

plaintiff feels that there remain certain responsive documents in the defendant's possession that

other, broader searches might be likely to uncover, it is perfectly free to file an additional FOIA

request specifically tailored to target those documents. See Kowalczyk, 73 F.3d at 389 (noting

that "if the [FOIA] requester discovers leads in documents [it] receives from the agency, [it] may

pursue those leads through a second FOIA request").

    The defendant further asserts that it "is entitled to summary judgment on [c]laim [t]hree

of the plaintiff's complaint" because the plaintiff failed to respond to the BIA's letter of July 29,

2005, and, thus, the claim "remains open at the BIA." Def.'s Mot. at 26. Willie Chism, the

FOIA officer for the BIA, represented in a sworn declaration that she responded to the plaintiff's

April 21st request in a letter dated July 29, 2005. Def.'s Stmt. ¶ 63; Chism Decl. ¶ 5. Ms. Chism

stated that the document attached to her declaration is "[a] true and correct copy of the file copy

---

[12](...continued)
OS." Thomas Decl. ¶ 22. CREW has not disputed Ms. Thomas's statement. Def.'s Reply at 18. Furthermore, the
defendant identifies the problem with the plaintiff's September 26th request, explaining that "CREW did not . . .
request that Ms. Schmidt's four FOIA requests be processed again in light of the new 'evidence' of emails referenced
[in her article]." Id. at 17 n.11. On this record, the Court fails to see how the defendant has misled CREW or acted
in bad faith.

of that response." Id.; see Def.'s Reply at 20. In addition, Thomas Hartman, the FOIA

Coordinator for the Office of Indian Gaming Management, represented that he drafted a letter for

Ms. Chism to sign asking CREW to narrow their request. Hartman Decl. ¶ 11. According to Mr.

Hartman, he gave the drafted response to his secretary to finalize and transmit to Ms. Chism for

her signature. Id. ¶ 12. Moreover, according to the defendant, a copy of the BIA's July 29, 2005

reply to CREW was located in the Office of Indian Gaming Management's ("OIGM")

chronological files. Def.'s Reply at 21; Boots Decl. ¶¶ 3-4 (stating that "the presence in the files

of a final, signed version of the letter indicates that it was mailed").

The plaintiff nonetheless disputes the BIA's claim that it sent a letter to CREW on July

29, 2005. Pl.'s Opp'n at 25 (arguing that the record indicates the letter was "never in fact sent").

CREW has been unable to locate the letter in its files and alleges that "[the] defendant has not

provided [] a signed copy of the letter, on letterhead, or any proof that CREW actually received

the letter." Id. To support its argument, the plaintiff points out that the OIGM's file copy lacks

a letterhead and a handwritten signature. Pl.'s Opp'n at 25 n.14; see also Def.'s Reply at 20

(stating that "CREW has failed to explain how the absence of letterhead and a handwritten

signature undermines Ms. Chism's sworn statement that the exhibit is an authentic, true and

correct file copy of her response") (internal quotation marks and citation omitted).

As previously stated, in opposing a motion for summary judgment, the non-moving party

cannot rely on "mere allegations or denials." Burke 286 F.3d at 517 (quoting Anderson, 477

U.S. at 248) (internal quotation marks omitted). Thus, "conclusory allegations unsupported by

factual data will not create a triable issue of fact." Pub. Citizen Health Research Group, 185 F.3d

at 908 (internal quotation marks and citations omitted).   If the Court can conclude that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp., 477 U.S. at 323.  Here, the non-moving party, CREW, has failed to sufficiently prove that the BIA never actually sent a letter on July 29, 2005, responding to CREW's April 21st FOIA request.  The Court agrees with the defendant that the sworn declarations by the DOI employees who were involved in the process of sending the letter provides sufficient evidentiary support for its position that the letter was signed and sent.  See Reply at 20.  Thus, the request "remains open at the BIA," Def.'s Mot. at 26, and the defendant is therefore entitled to summary judgment on the third claim of the plaintiff's complaint.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the defendant is entitled to partial judgment on the pleadings and partial summary judgment at this time.  Additionally, the Court notes that there is nothing preventing the plaintiff from filing additional FOIA requests specifically tailored to obtain the information they are seeking.  Indeed, it is in the interests of judicial efficiency and agency autonomy that it be required to pursue that course.

**SO ORDERED** this 31st day of July, 2007.[13]

REGGIE B. WALTON
United States District Judge

---

[13]  An Order consistent with the Court's ruling was issued on July 30, 2007.

24